UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT E. TORRES, JR.,

      Petitioner,

v.                                    No. _____

ANTHONY ROMERO, Warden,
Central New Mexico Correctional Facility,

      Respondent.

### PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

Petitioner, GILBERT TORRES, JR., by and through his attorney, Todd Hotchkiss of Frechette & Associates, P.C., files under 28 U.S.C. § 2254 this petition for a writ of habeas corpus.

GILBERT E. TORRES, JR., Inmate #58623, is imprisoned or otherwise restrained at Central New Mexico Correctional Facility, Geriatric Unit, B 212, P.O. Box 1328, Los Lunas, New Mexico 87031, by Respondent Anthony Romero, Warden of said facility.

This petition seeks to vacate or set aside an order of confinement for second-degree murder and tampering with evidence convictions on the grounds that Petitioner was denied his federal constitutional rights to adequate and effective assistance of counsel, due process of law, protections against unlawful searches and seizures, and a fair trial.  Petitioner seeks to

1

obtain a new trial on all of the charges contained in the original indictment which resulted in a conviction.

**PROCEDURAL HISTORY**

In support of this petition, counsel states:

1. **Name and location of court which entered judgment of conviction being challenged:** Thirteenth Judicial District Court, Valencia County Courthouse, 1835 Hwy. 314 S.W., P.O. Box 1089, Los Lunas, New Mexico 87031. The case was captioned and cited as: State of New Mexico v. Gilbert Torres, Thirteenth Judicial District Court No. D-1314-CR-2001-483.

2. **Date of judgment of conviction:** The June 20, 2003 judgment, sentence and commitment stated Petitioner was convicted in February 14, 2003 by a jury of the second-degree murder of Ms. Pamela Pace and tampering with evidence and was sentenced on May 19, 2003. (Exhibit B)

3. **Length of sentence:** 15 years on second-degree murder and 1½ years for tampering with evidence consecutively for a total of 16½ years in prison.

4. **Multiple counts and crimes of convictions:** Petitioner was convicted of one count of second-degree murder in violation of N.M.S.A. 1978, § 30-2-1(B) and one count of tampering with evidence in violation of N.M.S.A. 1978, § 30-22-5.

5. **Plea:** Defendant entered a plea of not guilty and was convicted by a jury at the February 10-14, 2003 trial.

6.   **Testimony by Petitioner:** Petitioner did not testify at a pre-trial hearing, trial, or post-trial hearing.

7.   **Appeal of convictions:**

A.   Petitioner appealed to the New Mexico Court of Appeals (NMCOA) in <u>State v. Torres</u>, No. 24,103 (Exhibit C), which resulted in a published opinion on April 7, 2005, reported at 2005-NMCA-070, 137 N.M. 607, 113 P.3d 877, in which the NMCOA affirmed Petitioner's convictions and sentence.

B.   The grounds upon which Petitioner appealed were:

> On appeal, Defendant argues that plain error occurred due to his trial counsel's failure to file a motion to suppress evidence because the police did not obtain a search warrant prior to collecting evidence from Defendant's home.  In the alternative, Defendant argues that his counsel was ineffective in failing to file the motion. Additionally, Defendant argues that the trial court erred in allowing a witness to testify to a statement made by the victim over Defendant's hearsay objection, that it erroneously admitted testimony of two police officers, and that statements made by the prosecutor during opening statements and closing arguments constituted fundamental error.

> <u>State v. Torres</u>, 2005-NMCA-070, ¶1.

C.   On April 27, 2005, Petitioner filed in the New Mexico Supreme Court (NMSC) a petition for writ of certiorari to the NMCOA in No. 29,194.  The State filed a response on May 13, 2005.  On May 20, 2005, the NMSC denied Petitioner's petition for writ of certiorari.  That denial is reported at 2005-NMCERT-5, 137 N.M. 522, 113 P.3d 345. (Exhibit D)

D.   The grounds raised in the petition for writ of certiorari were:

1.   Whether the NMCOA erroneously held the trial court did not abuse its discretion by admitting victim's statement two months before her death that "next time you guys see me you're going to find me dead" as a state of mind exception to hearsay and relevant under Rules 11-803©, 11-403 and 11-404, N.M.R.A. 2003?

2.   Whether the NMCOA erroneously held the trial court did not abuse its discretion by overruling defendant's objection to the prosecutor's closing argument that defendant "continues to disgrace and deface [the victim's] memory.  Shame on you, Gilbert Torres.  And I hope you feel my rage.  I hope that as a society ...."?

3.   Whether the NMCOA erroneously held the trial court abused its discretion in overruling defendant's objection regarding the scope of opinion testimony by the State's proffered expert as blood stain pattern analysis and accident reconstruction was beyond his qualified opinion that the victim did not commit suicide and detailing how he believed the entire murder circumstances occurred?

4.   Whether the NMCOA erroneously held fundamental error did not occur when the prosecutor said in opening statement, "Just as you have taken an oath and have raised your hand to fairly and truthfully judge this case, on behalf of the People of the State of New Mexico, I promise you that Ms. Garcia

4

and myself will conduct our case as fairly and as honestly and as truthfully as possible"?

5. Whether the NMCOA erroneously held plain error did not occur when defense counsel failed to file a motion to suppress?

6. Whether the NMCOA erroneously held trial counsel did not provide ineffective assistance of counsel when counsel failed to move for the suppression of evidence?

7. Whether the NMCOA erroneously found no cumulative error?

E. No petition for a write of certiorari was filed in the United States Supreme Court.

8. **Other petitions, applications, or motions concerning this judgment of conviction in any state court:** Petitioner on April 17, 2006 filed a petition for a writ of habeas corpus pursuant to Rule 5-802, N.M.R.A. 2006 in State of New Mexico v. Gilbert Torres, Thirteenth Judicial District Court No. D-1314-CR-2001-483. (Exhibit E) The grounds raised in that petition at pages 23-25 were that:

A. Trial counsel rendered ineffective assistance of counsel as required by the Sixth Amendment to the United States Constitution by failing to file and litigate a motion to suppress evidence under the Fourth Amendment to the United States Constitution and consequently denied Petitioner his rights to prepare a defense, including denial of a fair trial under the

5

Sixth Amendment and to due process of law under the Fifth and
Fourteenth Amendments.

B.  Trial counsel, Mr. Joseph Campbell, failed to
provide adequate and effective assistance of counsel to
Petitioner as required by the Sixth Amendment to the United
States Constitution by not objecting to a prior statement by the
decedent based on the confrontation clause of the Sixth Amendment
to the United States Constitution.

C.  For any combination of the foregoing allegations,
trial counsel Mr. Campbell provided inadequate and ineffective
assistance of counsel under the Sixth Amendment, and denied
Petitioner a fair trial and due process of law under the Fifth,
Sixth and Fourteenth Amendments to the United States
Constitution, and improperly contributed to Petitioner's
convictions.

The State responded on to the habeas corpus petition on May
18, 2009. (Exhibit F)

Stipulated Facts were signed and filed by the District Court
on October 6, 2009. (Exhibit G)

Petitioner received a hearing on his state court habeas
petition on October 6 and December 7, 2009.  On May 27, 2010,
Thirteenth Judicial District Court Judge John W. Pope entered an
order denying Petitioner's state court petition. (Exhibit H)

Petitioner filed a petition for writ of certiorari in the

NMSC on June 28, 2010. (Exhibit I) The State responded on August 13, 2010. (Exhibit J)  The NMSC denied Petitioner's petition for writ of certiorari on August 19, 2010. (Exhibit K)

Petitioner has not filed a subsequent state court petition for writ of habeas corpus.

### GROUND ONE OF THIS PETITION

9. **Supporting facts:**

Petitioner called Los Lunas Police Department (LLPD) on December 3, 2001 and reported to LLPD that his ex-wife, Pamela Pace, committed suicide in his residence.

There was no evidence that Petitioner, in his report of the suicide, requested that the LLPD enter his residence to search his residence.  There was no evidence Petitioner committed murder.

The only indication in the pre-habeas record regarding the failure to seek a search warrant before entering Petitioner's residence after he left his residence for the police station was Petitioner's counsel asking New Mexico State Police (NMSP) Crime Scene Team Agent Art Ortiz at trial, "Gilbert had given consent to search his house, correct?" and Ortiz responded, "That's correct." (T.03-102,392-93)

Officer Dino Wroten responded to the LLPD dispatch about the reported suicide and arrived first, contacted Petitioner inside the residence, Petitioner took Wroten to the back bedroom, Wroten

7

observed Pace's dead body, determined the woman was dead, made other observations, did not seize any evidence at that time, and knew Petitioner was the only other person at the residence.

After Wroten determined the female was deceased, there was no further emergency, there was no imminent danger to anyone, no aid to render, no further life to save.

LLPD Officer Perea arrived after Wroten had exited, and, without allowance by Petitioner, walked through the residence to the back bedroom where the dead body laid, made other observations, did not seize any evidence during his warrantless entry, secured the scene, and called LLPD Detective Harris.

LLPD Officers Wroten, Perea and Torres were the only officers to respond to the LLPD dispatch about Petitioner's report that his ex-wife committed suicide in his residence.

LLPD Detective Harris responded and arrived, Perea let Harris into the residence, and Harris walked through the residence to the back bedroom where he observed the dead body, made other observations, exited, and spoke with Perea and Wroten.

LLPD officers then requested Petitioner leave the scene without being under arrest to go to LLPD to wait there for questioning and removed Petitioner from the scene by 7:30 p.m.

LLPD Officers Wroten, Perea, and Harris agreed that each did not request oral or written consent from Petitioner to search his residence, each did not see any purported written consent by

8

Petitioner to search his residence, and did not then discuss or seek a search warrant then because probable cause did not exist to believe a crime occurred.

No written consent to search was introduced into evidence.

No NMSP Crime Scene Team agent had contact with Petitioner until after 12:30 a.m. on December 4, 2001 at the LLPD.

During the approximately 1½ to 4 hours after Petitioner left the residence, NMSP Crime Scene Team agent Shane Arthur arrived at 9:01 p.m., Mike Applegate at 9:22 p.m., Ramon Casaus at 11:00 p.m., and Art Ortiz at 11:30 p.m.

According to Agent Applegate, he remained in the residence for hours collecting and evaluating evidence along with all of the other NMSP agents trying to figure out what happened.

The NMSP Crime Scene Team agents, despite acknowledged training on the legality of warrantless entries to residences, had no knowledge of the holdings of Flippo v. West Virginia, 528 U.S. 11, 13, 120 S.Ct. 7 (1999)(per curiam); Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, *reh'g denied*, (1984); or Mincey v. Arizona, 437 U.S. 385, 390, 98 S.Ct. 2408 (1978).

Trial defense counsel, while representing Petitioner, had no knowledge of the holdings of Flippo, Thompson, or Mincey.

There is no evidence any of the NMSP Crime Scene Team agents requested Petitioner consent to an ongoing search of his house.

NMSP Agent Arthur believed LLPD Lieutenant Charles Nuanes

had acquired written consent from Petitioner to search his residence.  Nuanes testified he never spoke with Petitioner, never requested oral or written consent from Petitioner to search his residence, and never saw any purported written consent by Petitioner to search his residence.

NMSP Agent Ortiz believed Petitioner consented to the ongoing search of his residence when he initially called LLPD reporting his ex-wife had committed suicide in his residence.

Agent Ortiz did not see any written consent by TORRES.

Ortiz also testified he understood that Agent Applegate had secured oral consent from Petitioner to search his residence.

NMSP Agent Applegate did not speak with Petitioner until at LLPD at approximately 3:30 a.m. on December 4, 2001.

Ortiz testified the consent about which Ortiz testified at trial in response to Attorney Campbell's question was the alleged consent Agent Applegate told Ortiz about.

Agent Ortiz also testified that he thought LLPD had received consent from Petitioner to search his residence.  There was no evidence that anyone from LLPD secured Petitioner's consent.

Ortiz was in Petitioner's residence for no more than an hour after his 11:30 p.m. arrival there.

The investigation at and in Petitioner's residence by LLPD officers and NMSP agents was a suicide investigation until after midnight when it turned into a homicide investigation, according

to the NMSP Crime Scene Team agents.

After midnight, LLPD Detective Harris and NMSP Agents Arthur, Ortiz and Casaus traveled to LLPD to question Petitioner while the investigation at Petitioner's residence continued.

Harris, Arthur, Casaus and Ortiz questioned Petitioner about what LLPD and NMSP reviewed and evaluated inside Petitioner's residence, the questioning concluded, and Petitioner was arrested for tampering with evidence.

According to Arthur's and Ortiz's testimonies, the warrantless searches of Petitioner's residence stopped at 3:00 a.m. when, according to Arthur, officers reached the consensus they finally had probable cause to believe a crime occurred.

Petitioner then made another, his first post-arrest, statement to police.

NMSP Agent Applegate testified about going to LLPD to question Petitioner at approximately 3:30 a.m., never requested oral or written consent of Petitioner to search his residence, and never saw any written consent by Petitioner.

Agent Applegate admitted, during his questioning of Petitioner, that he "presented Petitioner with the facts" determined from the warrantless searching in his residence.

The December 4, 2001 Affidavit for Search Warrant (Exhibit A) did not proffer a basis for probable cause until more than 12 hours after Petitioner was taken from the scene to the police

station.

The Affiant testified that, before the NMSP Crime Scene Team began its warrantless investigation in Petitioner's residence, LLPD was "developing probable cause" because the State then lacked probable cause to believe a crime occurred.

The remaining allegations in the Affidavit at 2 were conclusions by LLPD and the NMSP Crime Scene Team as a result of the warrantless intrusions of Petitioner's residence after Officer Dino Wroten initially exited the residence and through approximately 3:00 a.m., according to Shane Arthur's testimony.

Joseph Campbell, Petitioner's trial counsel, reviewed all discovery produced by the State, never found any written consent by Petitioner to search his residence, and did not discuss with Petitioner whether TORRES consented to search the residence.

Campbell conceded that he did not think about suppression, believing Petitioner consented to the warrantless searching of his residence because Petitioner reported his ex-wife's suicide and believed, "my gut feeling", Petitioner thus requested or invited LLPD to conduct warrantless searches of his residence.

Campbell admitted his belief that Petitioner's consent due to his initial telephone report of the suicide, was the consent about which he asked NMSP Agent Ortiz at trial.  Campbell and Ortiz agree on that.

Campbell considered filing a motion to suppress evidence

12

because it is an option in all criminal cases, but believed that the motion did not carry much weight because he believed Petitioner, by reporting his ex-wife's suicide, had consented to the warrantless searching of his residence by LLPD and NMSP.

Based on Campbell's belief a motion to suppress was not merited, he made the tactical decision to focus exclusively on preparing for trial and conceded to the admission of all of the physical evidence and Petitioner's statements in response to LLPD questioning based on the warrantless searching.

Thereafter, Campbell put his "trial blinders on" and prepared to defend against what he considered "(r)ather strong" evidence against Petitioner.

Campbell acknowledged that LLPD and NMSP questioning of Petitioner involved their observations and conclusions regarding their investigation inside Petitioner's residence.

Campbell admitted he made the tactical decision to not consider the value of seeking the suppression of fruit of the poisoned tree because of his prevailing belief that the motion did not carry much weight and Petitioner's report of his ex-wife's suicide was consent to the warrantless searching of his residence.

Campbell admitted if he sought suppression of the physical evidence and the fruits of the illegally obtained evidence, the case would not have gone to trial.

Campbell admitted it was not reasonable for him not to file a motion to suppress when he had not reviewed Mincey, Thompson and Flippo, making his decision "uninformed", and in light of the holdings in Mincey, Thompson and Flippo.

### Affidavit for Search Warrant

Affiant James Harris' Affidavit for Search Warrant (Exhibit A) was filed in the Valencia County Magistrate Court at 8:48 a.m. on December 4, 2001.  The Affidavit at 1 specifically requested permission to search the following:

1.  ANY AREAS OF BLOOD STAINED CARPET AND OR FLOOR TILING LOCATED THROUGHOUT THE RESIDENCE.
2.  THE BEDDING LOCATED IN THE FAR EAST BEDROOM OF THE RESIDENCE.
3.  THE 12-GAUGE SHOTGUN, AMMUNITION, AND ANY OTHER WEAPONS POSSIBLY USED IN THE HOMICIDE.
4.  A COMPLETE COMPUTER SYSTEM WITH MONITOR TO INCLUDE ANY SOFTWARE.
5.  ANY BROKEN GLASS.
6.  ANY BROKEN POTTERY.
7.  ANY FURNITURE ITEMS THAT HAS BLOODSTAIN PRESENT.
8.  A SECTION OF CEILING IN THE FAR EAST BEDROOM OF THE RESIDENCE APPROXIMATELY 8 FT. BY 8 FT.
9.  ANY ITEMS DISCARDED IN TRASH RECEPTACLES.
10. ANY CUTTING INSTRUMENTS.
11. ANY POTATOES, EITHER HOLE OR PORTIONED.
12. ANY LOCKED CONTAINERS.
13. ANY OTHER ITEMS THAT CAN BE DIRECTLY OR INDIRECTLY LINKED TO THE OFFENSE LISTED.

The Affidavit did not contain any assertion that Petitioner provided any consent for police officers to search his residence after he left the property.

The Affidavit alleged the officers did search and evaluate evidence inside Petitioner's home before acquiring the search

warrant.  The Affidavit at 2 alleged, "Upon further investigation
of the crime scene, by officers, they learned that a domestic
dispute occurred between the victim and TORRES."  The Affidavit
at 2 alleged the blue cloth and tape found beyond the neighbor's
fence "appeared to be the same as a piece of cloth and tape that
was found on the butt" of the shotgun.  The Affidavit at 2
alleged that "found near the cloth was another amount of duct
tape that had been wrapped around a potato."  The Affidavit at 2
alleged, "An apparent explosion of some kind had blown the potato
apart."  The Affidavit at 2 alleged inside the room where Pace
laid dead "officers discovered the remains of potato on the floor
and what papered (sic) to be potato in the hair of the victim."

     The District Court thereafter issued a Search Warrant for
the search of Petitioner's residence. (Exhibit A)  An inventory
of search warrant was also prepared. (Exhibit A)

### State District Court Denial of Habeas Petition

     In the Thirteenth Judicial District Court's May 27, 2010
Order Denying Petition for Writ of Habeas Corpus at 1-2, the
court found Petitioner's call to LLPD to report Ms. Pace's
suicide "is conceded by both defense and prosecution to have
triggered the police officer's right to enter the property of the
Petitioner."  "The officers entered the premises of the
Petitioner in furtherance of their duties under the caretaker
exception to the Search Warrant requirement and looked for

evidence of the alleged suicide.  Their primary motivation was
that of community caretaker, and as such, they did not have to
completely abandon their investigative function." (Order at 2)

"The officers' presence on the Petitioner's premises was
within the scope of their function as community caretakers and
was consensual." (Order at 2)  "Any investigative functions
undertaken while on the premises was incidental to the consent
given when the Petitioner called to report a suicide." (Order at
2)

"Given the totality of the circumstances, the Petitioner's
Fourth Amendment rights were not violated." (Order at 2)

The failure of trial counsel to file and litigate a motion
to suppress did "not amount to ineffective assistance of counsel"
and "did not prejudice the Petitioner in that there is a high
probability that the motion would have failed." (Order at 2)

10. **Previously Raised Claim:**  This claim herein was raised
on direct appeal from the conviction in state court.  Regarding
the claim of ineffective assistance of counsel, because trial
counsel did not file a motion to suppress evidence, the NMCOA
ruled that the record "is devoid of facts from which we could
determine the effectiveness of Defendant's counsel" and "he has
also not shown that his counsel's failure to file the motion
prejudiced his defense". State v. Torres, 2005-NMCA-070, ¶¶ 14 &
18.  The NMCOA refused to address the issue on direct appeal

16

because the record was insufficient. (Exhibit C)

Petitioner also raised this issue in his April 27, 2005 petition for writ of certiorari to the NMSC. On May 20, 2005, the NMSC denied that petition. (Exhibit D)

Petitioner then raised the issue in his April 17, 2006 state court petition for writ of habeas corpus. The Thirteenth Judicial District Court denied that petition on May 27, 2010. (Exhibit H)

Petitioner raised the issue in his June 28, 2010 petition for writ of certiorari to the NMSC, which denied that petition on August 19, 2010. (Exhibit K)

11. **Other remedies:** No other remedies have been sought other than those represented in this petition.

12. **Additional information:** All grounds for relief have been presented to the NMSC. There is no ground in this petition that has not been presented in and ruled on by the state courts. Petitioner has not previously filed any type of petition, application or motion in a federal court regarding the conviction that he challenges in this petition. Petitioner does not have any petition or appeal pending in any court, either state or federal, for the judgment he is challenging.

13. **Prior Counsel:** The name and address of the attorney who represented Petitioner at trial and sentencing was Mr. Joseph M. Campbell, Esq., Office of the Public Defender, 301 N. Guadalupe

Street, #101, Santa Fe, New Mexico  87501-5505.  A defense
attorney who represented Petitioner before trial was Ms. Trienah
Meyers Gorman, present address unknown.  The prosecutors at trial
were Mr. John J. Bogren, Esq., 230 West Walnut, Apartment D, San
Diego, California  92103-4846 and Elizabeth A. Garcia, P.O. Box
27248, Albuquerque, New Mexico  87125-7248.  The name and address
of the attorney who represented Petitioner on the direct appeal
in the NMCOA and the NMSC and the state court habeas proceedings
in the Thirteenth Judicial District Court and the NMSC is Todd
Hotchkiss, Frechette & Associates, P.C., P.O. Box 26807,
Albuquerque, New Mexico 87125.  Ms. M. Anne Kelly, Assistant
Attorney General, 111 Lomas Boulevard N.W., Suite 300,
Albuquerque, New Mexico  87102, represented the State of New
Mexico on direct appeal to the NMCOA and the NMSC.  Mr. Michael
Martinez, Special Assistant Thirteenth Judicial District
Attorney, 2160 Gazelle N.E., Albuquerque, New Mexico  87124
represented Respondent in the state court habeas proceeding in
the Thirteenth Judicial District Court.  Ms. Margaret McLean,
Assistant New Mexico Attorney General, P.O. Drawer 1508, Santa
Fe, New Mexico  87504-1508 represented Respondent in the state
court habeas proceeding in the NMSC.

14.  **Future sentence:**  Petitioner has no future sentence to
serve after he completes the sentence for the judgment that he is
challenging.

18

15.  **Timeliness of Petition:** Because the June 20, 2003 judgment, sentence and commitment became final more than one year ago, the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar this petition.  Petitioner directly appealed his conviction, which was denied by the NMCOA on April 7, 2005.  Petitioner then filed a petition for a writ of certiorari with the NMSC on April 27, 2005, which denied it on May 20, 2005.  Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.  Petitioner then filed his Rule 5-802 petition for a writ of habeas corpus in the Thirteenth Judicial District Court on April 17, 2006.  That petition remained pending until May 27, 2010 when the Thirteenth Judicial District filed its order denying that petition. Petitioner then timely filed a June 28, 2010 petition for a writ of certiorari in the NMSC, which denied it on August 19, 2010. No petition for writ of certiorari was filed in the NMSC.

Therefore, the one-year statute of limitation was tolled while the case was pending on direct appeal through May 20, 2005, and for the 90-day period thereafter through August 18, 2005 to file a petition for a writ of certiorari in the United States Supreme Court under 28 U.S.C. § 2244(d)(1)(A).  The one-year period began running on August 19, 2005 to April 17, 2006.  The one-year statute of limitation was tolled while the case was pending habeas review from April 17, 2006 through the NMSC's

denial of the timely filed petition for writ of certiorari on August 19, 2010 under 28 U.S.C. § 2244(d)(2).  Consequently, the one-year statute of limitation has not expired at the time of the filing of this petition.

16.  **Grounds for Petition:**  The grounds and law, or other legal authorities on which Petitioner is confined and which support the bases for his claims are as follows:

1.

Trial counsel failed to provide adequate and effective assistance of counsel to Petitioner as required by the Sixth Amendment to the United States Constitution by failing to file and litigate a motion to suppress evidence under the Fourth Amendment to the United States Constitution and consequently denied Petitioner his rights to prepare a defense, including denial of a fair trial, under the Sixth Amendment, and to due process of law under the Fifth and Fourteenth Amendments. Kimmelman v. Morrison, 477 U.S. 365, 106 S.Ct. 2574 (1986).

Petitioner called the LLPD to report the suicide of his ex-wife and LLPD went to his residence regarding an apparent suicide.  He showed Wroten the body of Pace inside his residence, agreed to remain outside his residence, and then was transported to the LLPD.  After Petitioner departed the scene, no exigent circumstances existed, no consent was provided by Petitioner for the night-long search of his residence, and a warrant was not

acquired until approximately 8:30 a.m. the next day on December 4
based on information learned by police during the unreasonable,
warrantless night-long search of Petitioner's residence.

Without any evidence of any specific, voluntary consent by
Petitioner or probable cause Petitioner committed a crime plus
exigent circumstances or exigent circumstances for police to
enter his residence after he left the scene, the scene was
processed, photographs and videotape taken, evidence markers
placed, blood patterns analyzed, evidence seized, and the murder
theory established by LLPD and NMSP.

Based on these actions, and relying on information learned
during the unreasonable nighttime search of his residence, LLPD
and NMSP questioned Petitioner at LLPD with investigatory
determinations.  Based on the investigation, Petitioner was
arrested for tampering with evidence.

**ARGUMENT**

**Trial Counsel Provided Inadequate Assistance of Counsel
Under the Sixth Amendment to the United States Constitution,
And Denied Petitioner a Fair Trial and Due Process of Law
Under the Fifth, Sixth and Fourteenth Amendments, By Not
Filing a Motion to Suppress Evidence Under the Fourth
Amendment When Law Enforcement Officers Conducted
Warrantless Searching of Petitioner's Residence Without
Consent, Probable Cause, Exigent Circumstances, or Any Other**

**Exception to the Warrant Requirement of the Fourth Amendment.**

To prevail on a claim of ineffective assistance of counsel, Petitioner must prove that trial defense counsel did not exercise the skill of a reasonably competent attorney and that this unreasonable representation prejudiced Petitioner's case, rendering the trial court's results unreliable. Kimmelman v. Morrison, 477 U.S. 365, 374-75, 106 S.Ct. 2574, 2582-83 (1986); Strickland v. Washington, 466 U.S. 668, 688 & 694, 104 S.Ct. 2052, 2064 & 2068 (1984). "The defendant shows that he was prejudiced by his attorney's ineffectiveness by demonstrating that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Kimmelman v. Morrison, 477 U.S. at 381, 106 S.Ct. at 2586 (quoting Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. "The essences of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." Kimmelman v. Morrison, 477 U.S. at 374, 106 S.Ct. at 2582. "Only those habeas petitioners who can prove under Strickland that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence." Kimmelman v. Morrison, 477 U.S. at 382, 106 S.Ct. at 2586-87.

A "strong presumption" exists that counsel acted reasonably, and Petitioner has the burden of proving "counsel's representation was unreasonable under prevailing professional norms and the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. at 381, 106 S.Ct. at 2586.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 477 U.S. at 375, 106 S.Ct. at 2583.   The role of defense counsel is to "ensure that the trial is fair." Strickland, 466 U.S. at 685, 104 S.Ct. at 2063.

A "sound" strategy or tactic cannot explain the conduct of defense counsel, and, as a result, defendant  was prejudiced. Mr. Campbell, the trial attorney, admitted that he did not know the case law of Flippo v. West Virginia, Mincey v. Arizona, or Thompson v. Louisiana and mistakenly believed that Petitioner's telephone call to report his ex-wife's suicide was consent by Petitioner to the night-long warrantless searching of his residence.   This "startling ignorance of the law" by Petitioner's trial counsel made "counsel's decision [not to file a motion to suppress] unreasonable, that is, contrary to prevailing

professional norms." <u>Kimmelman v. Morrison</u>, 477 U.S. at 385, 106 S.Ct. at 2588.

TORRES was prejudiced because the motion to suppress "was crucial because it would have excluded key evidence", as admitted by Mr. Campbell, undermining the jury's verdict.  Petitioner's trial counsel, by failing to file a motion to suppress evidence, rendered inadequate and ineffective assistance in violation of the Fourth and Sixth Amendments.

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." <u>Armijo v. Peterson</u>, 601 F.3d 1065, 1070 (10th Cir. 2010)(quoting U.S. Const. amend VI).  "Warrantless searches and seizures inside a home are presumptively unreasonable, subject to only a few specific, narrowly defined exceptions." <u>Flippo v. West Virginia</u>, 528 U.S. at 13; <u>Mincey v. Arizona</u>, 437 U.S. at 390.  The Tenth Circuit has also referred to the warrantless limits as "strict limits" or "carefully delineated". <u>United States v. Martin</u>, 613 F.3d 1295, 1299 (10th Cir. 2010).  "[W]arrants are generally required to search a person's home or his person unless 'the exigencies of the situation' make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the Fourth Amendment." <u>Armijo v. Peterson</u>, 601 F.3d at 1070 (quoting <u>Mincey v. Arizona</u>, 437 U.S. at 393-94).

24

### No Consent by Petitioner Existed

The district court relied on the fact that Petitioner called LLPD to report his ex-wife committed suicide in his residence as the factual basis for its legal conclusion that Petitioner consented to the night-long warrantless search of his house. That reliance in contrary to the precedent of the U.S. Supreme Court.

Under Mincey, Thompson, and Flippo, Petitioner's report to police of his ex-wife's suicide in his residence and Wroten briefly being in the residence to check on the reported suicide, was not consent to an all-night, ongoing search and seizure.

The call by TORRES to the police to report his ex-wife's suicide in his residence did not "evidence a diminished expectation of privacy" on his part or constitute consent for police to search his residence after he was removed from the premises. Thompson v. Louisiana, 469 U.S. at 22-23; Mincey v. Arizona, 437 U.S. at 391-92 ("On one hand, the State urges that by shooting Officer Headricks, Mincey forfeited any reasonable expectation of privacy in his apartment.  We have recently rejected a similar waiver argument in Michigan v. Tyler, 436 U.S. [at] 505-506, 98 S.Ct. [at] 1948").  This is particularly true under the New Mexico statutory requirement under N.M.S.A. 1978, § 24-11-5 for Petitioner to report such a death to authorities.

At the time of the December 3-4, 2001 investigation,

February, 2003 trial, and today, United States Supreme Court
precedents in Mincey, Thompson, and Flippo governed for trial
defense counsel, trial prosecutors and the NMSP Crime Scene Team.

The circumstances of this case show the LLPD and NMSP Crime
Scene Team acted at the scene contrary to the holdings of
Thompson and Mincey by believing Petitioner had consented to the
unlimited warrantless searching of his residence by reporting his
ex-wife's suicide in his residence, Petitioner's trial counsel
felt Petitioner by reporting the suicide had consented to the
warrantless searching, Petitioner's trial counsel therefore acted
unreasonably and prejudiced Petitioner by not seeking to suppress
evidence based on governing U.S. Supreme Court precedent.

Also, the state district court's reliance on the phone call
without citing any specific language that Petitioner consented to
the night-long warrantless searching of his house also violates
the Fourth Amendment.  Petitioner's report by telephone of his
ex-wife's suicide in his residence was not requisite "clear and
positive testimony that consent was clear and unequivocal", was
made under "duress", and not voluntary. United States v. Benitez-
Arrequin, 973 F.2d 823, 829 (10th Cir. 1992)(search of
defendant's bag containing controlled substance was not
consensual when based on police officer's pantomime gestures to
defendant); United States v. Medlin, 842 F.2d 1194, 1197 (10th
Cir. 1988); United States v. Digiacomo, 579 F.2d 1211, 1216 (10th

Cir. 1978); <u>Harless v. Turner</u>, 456 F.2d 1337, 1338-39 (10th Cir. 1972).   Neither the state district court nor Respondent did not proffer what the "clear and positive testimony" was which showed voluntary consent by Petitioner, because it does not exist.

There was no evidence presented Petitioner orally or in writing consented to the warrantless searching of his residence after Officer Wroten determined Petitioner's ex-wife was dead in the residence.   Petitioner had the duty, required under N.M.S.A. 1978, § 24-11-5, to report the "sudden, violent or untimely death" of his ex-wife, which was not a general consent for LLPD and NMSP to engage in warrantless searches in Petitioner's residence.

### No Probable Cause Existed

The state district court's May 27, 2010 Order failed to find that police had probable cause to believe a crime occurred.

Detective Harris testified without dispute that probable cause to believe Petitioner committed a crime did not exist after Ms. Pace's deceased body was found and Petitioner was removed from the scene.   Agent Arthur testified without dispute that probable cause did not exist until 3:00 a.m. the next day, 7½ hours after Ms. Pace's deceased body was found and Petitioner had been removed from the scene.   No warrant was sought until approximately 8:30 a.m. the next day.

Furthermore, because Petitioner reported a suicide, which is

27

not a crime under New Mexico state law, there was no probable cause to believe Petitioner committed a crime or a crime had occurred. <u>Beck v. Ohio</u>, 379 U.S. 89, 96, 85 S.Ct. 223, 228 (1964); <u>State v. Arellano</u>, 91 N.M. 195, 196, 572 P.2d 223, 224 (Ct. App. 1977).

## No Exigent Circumstances Existed

When Officer Wroten found Petitioner's ex-wife, Ms. Pace, dead in the residence as reported, no emergency continued to exist, no assistance could be rendered, and the "threshold [to the residence] may not reasonably be crossed without a warrant." <u>Payton v. New York</u>, 445 U.S. 573, 589-90, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

The state district court denied Petitioner's state court petition by finding that police acted as "community caretakers" after Ms. Pace was indisputably dead and when no exigent circumstances existed.  Looking for evidence of suicide is not an exigent circumstance and it is not probable cause to believe a crime occurred.

Since the privacy expectation is strongest in the home only a genuine emergency will justify entering and searching a home without a warrant and without consent. <u>Mincey</u>, 437 U.S. at 392, 98 S.Ct. 2408.  A factor that develops post-warrantless entry cannot be used to show exigent circumstances to justify the warrantless entry into defendant's home. <u>United States . Reeves</u>,

524 F.3d 1161, 1169-70 (10th Cir. 2008).  No emergency existed after Wroten discovered the ex-wife's dead body.  Officer Perea's and subsequent LLPD officers' and NMSP agents' warrantless intrusions into Petitioner's residence were not justified by the exigent circumstances exception, including the emergency assistance doctrine as a "narrowly defined" exception to the warrant requirement for a search of a home when the emergency ceased to exist.

The emergency aid doctrine, which otherwise applies when police "reasonably believe that a person within is in need of immediate aid" or at "the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises", Mincey, 437 U.S. at 392 (citing to Michigan v. Tyler, 436 U.S. 499, 509-510, 98 S.Ct. 1942, 56 L.Ed.2d 486 (1978)), did not apply after Wroten determined Ms. Pace was dead and after Petitioner left.

Exigent circumstances "cannot be used merely to make law enforcement more efficient, to safeguard evidence that could be protected in another manner, or simply because a serious crime has been committed." United States v. Porter, 594 F.3d 1251, 1255 (10th Cir. 2010).  "The government bears the burden of proof and '[t]hat burden is especially heavy when the exception must justify the warrantless entry of a home." U.S. v. Porter, 594 F.3d at 1256 (quoting United States v. Najar, 451 F.3d 710, 717

(10th Cir. 2006)).

Under the precedent of the United States Court of Appeals
for the Tenth Circuit, the community caretaking doctrine does not
apply to residences and only applies to motor vehicles. United
States v. Maddox, 388 F.3d 1356, 1366 n.5 (10th Cir. 2004);
United States v. Bute, 43 F.3d 531, 534-35 (10th Cir.
1994)(reversed warrantless search of building); United States v.
Lugo, 978 F.2d 631, 635-36 (10th Cir. 1992).

No exigent circumstances existed which would justify the
continuing search of the residence because no need existed to
assist persons who were seriously injured or threatened with such
injury when Ms. Pace's deceased body was found. Lundstrom v.
Romero, 616 F.3d 1108, 1124 (10th Cir. 2010).  Exigent
circumstances are determined by "(1) whether the officer had an
objectively reasonable basis to believe there was an immediate
need to protect the lives or safety of himself or others; and (2)
whether the manner and scope of the search or seizure was
reasonable." Id.  Exigent circumstances did not exist. Id. at
1124-25.

The record of evidence is also clear that after the
emergency ended when Wroten found Ms. Pace dead and Petitioner
departed the premises, a search warrant was not sought at that
time because the officers lacked probable cause to believe a
crime had been committed, no officer asked Petitioner to consent

30

to a search of his residence, no officer possessed or saw a
written consent to search, and no exigent circumstances existed.

Any possible exigency created by Petitioner's telephone call
to LLPD that his ex-wife committed suicide in his residence
dissipated when Officer Wroten arrived, determined that Ms. Pace
was dead, and that Petitioner was the only other person at the
residence. DiCesare v. Stuart, 12 F.3d 973, 978 (10th Cir.
1993)("Although the initial entry may have been supported by the
exigency of locating the stray horse's owner, this exigency
dissipated when the officer decided to return to the premises for
the purpose of seizing the horses")(citing to Michigan v. Tyler,
436 U.S. 499 (1978)(subsequent entries to home after initial
exigence dissipated required warrant); Winters v. Board of County
Comm'rs, 4 F.3d 848, 854 (10th Cir. 1993)("[T]he exigent
circumstances allowing a warrantless ... search evaporate when
the police intend to seize particular ... evidence.")).

There was no concern that evidence could be destroyed,
especially after Petitioner was located and removed from the
scene. Contra United States v. Aquino, 836 F.2d 1268, 1273 (10th
Cir. 1988). Upon determination that Ms. Pace was dead, there was
no continuing exigency pertaining to providing immediate aid to
Ms. Pace. Contra United States v. Riccio, 726 F.2d 638, 643 (10th
Cir. 1984)(police reasonably believed that defendant was shot and
might be in need of immediate aid). There were no circumstances

suggesting any type of continuing emergency. <u>Franz v. Lytle</u>, 997
F.2d 784, 788-93 (10th Cir. 1993)(fact that child had urine
soaked diaper and rash did not justify police officer's
warrantless entry of residence and search of child's body for
evidence of criminal sexual abuse); *contra* <u>United States v.
Porter</u>, 594 F.3d at 1258-59 ([police responded to emergency call
that defendant pointed a gun at the female caller while she
visited his home, defendant uncooperative upon arrival of police,
police could not locate caller, police saw and heard others
present in the residence and officers knew defendant had a
criminal record and violent tendencies); <u>United States v.
McCullough</u>, 457 F.3d 1150, 1163 (10th Cir. 2006)(active burglary
alarm); <u>United States v. Najar</u>, 451 F.3d 710, 719 (10th Cir.
2006)(911 call from residence which was hung up, dispatcher's
return calls were answered and hung up without explanation,
person seen in residence and no one answered door was basis for
exigent circumstances).

In fact, this Court recognized that the exigency of
protecting or preserving life or avoiding serious injury which
justifies what otherwise is not justifiable without a warrant is
tied to the person not being dead. <u>U.S. v. Najar</u>, 451 F.3d at 714
(quoting <u>Mincey v. Arizona</u>, 437 U.S. at 393 (quoting <u>Wayne v.
United States</u>, 318 F.2d 205, 212 (D.C. Cir. 1963)(Burger,
J.)("Even the apparently dead often are saved by swift police

32

response.")).  Unfortunately, Ms. Pace was indisputably dead when Officer Wroten initially arrived.  No exigency continued to exist.

**Police Were Not Lawfully Present for Plain View to Apply**

Subsequent officers' warrantless intrusions into Petitioner's residence were not justified by any other narrowly defined warrantless exceptions because consent by Petitioner to search his residence did not exist, probable cause to believe a crime occurred did not exist, exigent circumstances did not exist, and the plain view exception did not justify the warrantless intrusions of Petitioner's residence because the officers were not lawfully present. *See* <u>United States v. Thomas</u>, 372 F.3d 1173, 1178 (10th Cir. 2004).  Officers could not search and seize evidence in Petitioner's residence under the plain view exception to the Fourth Amendment warrant requirement because the officers were not "lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe the article seized was evidence of a crime". <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993); <u>DiCesare v. Stuart</u>, 12 F.3d at 978 ("Even assuming the horses could somehow be seen from a public place, the officers did not have a 'lawful right of access' to them."); <u>United States v. Bonitz</u>, 826 F.2d 954, 958 (10th Cir. 1987).

## There is No Murder Scene Exception

There is not a "murder scene exception" to the warrant clause of the Fourth Amendment. <u>Flippo v. West Virginia</u>, 528 U.S. at 12-14.

## Fruit of the Poisoned Tree

All physical evidence seized from the residence and Petitioner's statements to police should have been suppressed as inadmissible at trial. <u>United States v. Welker</u>, 689 F.2d 167, 169 (10th Cir. 1982)

Officer Wroten did not seize any evidence before he left the residence.  No other officer had a lawful basis to enter the residence.  Detective Harris admitted that probable cause did not exist, and Agent Arthur testified that probable cause did not exist until approximately 3:00 a.m. the next day, after law officers had been searching the residence without a lawful basis for hours.  Substantial admissible evidence does not continue to sustain the reliability and validity of Petitioner's convictions. All physical evidence seized and analyzed within the residence was fruit of the poisoned tree. <u>Brown v. Illinois</u>, 422 U.S. 590, 603-04 (1975); <u>Wong Sun v. United States</u>, 371 U.S. 471, 486, 83 S.Ct. 407, 416 (1963); <u>United States v. Wald</u>, 216 F.3d 1222, 1229 (10th Cir. 2000); <u>United States v. Melendez-Garcia</u>, 28 F.3d 1049, 1054 (10th Cir. 1994); <u>United States v. Maez</u>, 872 F.2d 1444, 1456-57 (10th Cir.1989); <u>United States v. Recalde</u>, 761 F.2d 1448, 1457 (10th Cir. 1985).  Counsel admittedly was ignorant of the

prevailing and applicable law, based his strategic decisions on
this uninformed and ignorant basis of prevailing law, and thus
the strategy was unsound, unreasonable, and prejudicial by
conceding to the admission of otherwise inadmissible physical
evidence and statements by Petitioner.

Petitioner's answers to questions from police officers about
what the police were learning inside the residence, Petitioner's
arrest for tampering with evidence, and Petitioner's second
statement to police were all based on the law officers' searching
of the residence and evaluating evidence within the residence
without a lawful basis.  The record is clear that law officers
used the results of law officers' searching and evaluating of
evidence within the residence to ask questions of Petitioner at
the police station during both statements by Petitioner to
police.  Based on Petitioner's answers to law officers' questions
during the first questioning, law officers arrested Petitioner
for tampering with evidence.  Thereafter, the second period of
questioning continued to involve questioning by law officers
based on the results of law officers' searching and evaluating of
evidence within the residence.

The Affidavit for Search Warrant was fruit of the poisoned
tree of the unlawful warrantless intrusions.  Detective Harris,
the affiant, testified that probable cause did not exist when
Petitioner left the residence to be taken to the police station;

Agent Arthur testified that probable cause did not exist until approximately 3:00 a.m. the next day as a result of the warrantless searching and evaluation of evidence in the residence which occurred from 7:30 p.m. on December 3, 2001 to 3:00 a.m. on December 4, 2001.

## Conclusion

Trial defense counsel acted unreasonably by not filing and litigating a motion to suppress physical evidence seized from Petitioner's residence and fruits of unconstitutional warrantless searches and seizures in Petitioner's residence.  Trial defense counsel's unreasonable conduct was not the result of a reasonable, sound tactical decision.  Trial defense counsel's unreasonable conduct prejudiced Petitioner because a motion to suppress physical evidence and fruit of the poisoned tree would have been successful based on the three U.S. Supreme Court precedents.  Trial counsel's unreasonable conduct prejudiced Petitioner by denying Petitioner a fair trial by unfairly conceding to this admission of inadmissible evidence.  Thus, trial counsel's conduct was "unreasonable under prevailing norms."

For any and all of the foregoing reasons, Petitioner's trial counsel, by failing to file a motion to suppress evidence, rendered inadequate and ineffective assistance to Petitioner in violation of the Fourth and Sixth Amendments to the United States

36

Constitution.

17.  **Relief Requested:**

WHEREFORE, the Petitioner, GILBERT E. TORRES, JR., requests

this Court grant his petition for writ of habeas corpus, reverse

his convictions, vacate his sentence, order him released from the

custody of the New Mexico Department of Corrections, and such

other and further relief as this Court deems just and proper.

Respectfully submitted,

 /s/ Todd Hotchkiss
TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for GILBERT TORRES, JR.
P.O. Box 26807
Albuqueruqe, New Mexico  87125
Tele. (505) 247-8558
E-mail: tbhotchkiss@frechettelaw.com

**CERTIFICATE OF SERVICE**

I, Todd Hotchkiss, hereby certify that on December 16, 2010
I sent a true and accurate copy of the foregoing petition, and
all exhibits submitted therewith, in PDF files, via e-mail to
counsel who is opposing counsel of record, Ms. Margaret McLean at
mmclean@nmag.gov , the last known e-mail addresses.

 /s Todd Hotchkiss
TODD HOTCHKISS