ENDORSED

THIRTEENTH JUDICIAL DISTRICT COURT
STATE OF NEW MEXICO
COUNTY OF VALENCIA

09 OCT -6 PM 12: 51

BY_____DEPUTY

STATE OF NEW MEXICO and
ANTHONY ROMERO, Warden
Central New Mexico Correctional Facility,

     Plaintiff-Respondent,

v.                                        No. D-1314-CR-2001-483

GILBERT TORRES, JR.,

     Defendant-Petitioner.

## STIPULATED FACTS

THIS MATTER HAVING COME BEFORE the Court on the mutual submission of the parties herein, the State of New Mexico, represented by Special Assistant District Attorney Michael Marintez, Esq., and the Petitioner, Gilbert Torres, Jr., represented by Todd Hotchkiss of Frechette & Associates, P.C., who hereby stipulate and otherwise mutually agree that the following should be accepted as facts in this habeas corpus proceeding:

1.  On December 3, 2001, Petitioner called the Los Lunas Police Department to report that his ex-wife, Pamela Pace, committed suicide at his residence.

2.  Los Lunas Police Department (LLPD) Officer Dino Wroten testified he arrived at Petitioner's residence first at

1

approximately 7:00 p.m., Wroten entered the residence, saw debris, broken pottery and blood stains on the floor, Petitioner indicated the deceased woman had committed suicide, a deceased woman with a shotgun wound to her chest was found in the back bedroom, a shotgun leaned against the bed with the barrel "peeled back like a banana", and the woman had a gash to her left upper thigh.

3.  LLPD Sergeant Josh Perea arrived and spoke with Wroten.

4.  Petitioner spoke with Perea and Wroten, told them that the deceased woman was Ms. Pace, his ex-wife, and that Pace and he argued which lead to Pace breaking a vase, slipping on the vase cutting her thigh, and went into the bedroom and committed suicide.

5.  Because Wroten and Perea had suspicions whether Ms. Pace committed suicide, they called LLPD Detective James Harris.

6.  LLPD Sergeant Josh Perea arrived at Petitioner's residence at approximately 6:54 p.m. and observed the inside of the residence was in disarray as if a "pretty good fight had taken place".

7.  Perea went to the back bedroom, saw the deceased Ms. Pace on the bed, shotgun was beside the bed with the barrel peeled back, Ms. Pace had a large laceration on her left upper thigh, her right thumb was found under a bed stand, in the corner were apparent pieces of potato, and the shotgun had some grey

2

duct tape with some blue cloth fibers hanging on it.

8. Sgt. Perea did not initially consider the potato because he thought Ms. Pace and Petitioner may have been throwing food at one another.

9. Perea removed everyone from the residence and put up crime scene tape.

10. LLPD Officer Vince Torres arrived at Petitioner's residence at 6:57 p.m. and went inside. Torres took photographs of the scene.

11. LLPD Detective James Harris arrived at 7:15 p.m. with the scene secured, spoke with officers, and spoke with Petitioner who was outside.

12. Petitioner told Harris Ms. Pace committed suicide.

13. Harris went inside the residence, saw several pieces of pottery and blood stains, and believed a fight occurred.

14. Harris went to the back bedroom, saw Pace dead on the bed, observed the scene, and then approached Petitioner.

15. Detective Harris told Petitioner he was not under arrest but Harris wanted Petitioner to go to the police department and wait there for Harris.

16. Petitioner was driven by Vince Torres to LLPD, and Petitioner never returned to the scene.

17. Harris then decided he needed a closer look at the scene, and he went back into Petitioner's residence and carefully

evaluated the details of the scene.

18.  After Harris and other LLPD officers took some initial photographs, Harris and Perea decided, within 30 minutes of Harris' arrival, to call the New Mexico State Police Crime Scene Team and request their assistance.

19.  Thereafter, the only people that were in the residence were the NMSP Crime Scene Team and Harris.

20.  NMSP Crime Scene Team investigator Mike Applegate arrived at 9:22 p.m., was briefed by Harris, and Applegate went inside the residence to look around.

21.  NMSP Crime Scene Team Sergeant Ramon Casaus arrived at 11:00 p.m., and he videotaped the scene inside Petitioner's residence.

22.  NMSP Crime Scene Team agent Shane Arthur, afer Wroten's briefing, photographed the scene inside Petitioner's residence from 9:30 p.m. to 3:00 a.m. on December 4, and, after the searches stopped in the early morning hours of December 4, the Team resumed searching in the residence a few hours later.

23.  NMSP Crime Scene Team agent Art Ortiz arrived at Petitioner's residence last at 11:24 p.m.

24.  When Ortiz arrived, Casaus was videotaping inside the residence, Ortiz went inside the residence, evaluated the evidence, and believed Ms. Pace had not committed suicide.

25.  At approximately 12:35 a.m. on December 4, Harris went

4

to LLPD, began questioning Petitioner on videotape, and Petitioner told Harris about Ms. Pace having committed suicide.

26.   An officer present at the time of videotaping can be heard to have said that he has already processed the scene.  An officer also asserted that Ms. Pace did not cut her leg on the pot as determined by the investigation at the scene.

27.   Thereafter, an officer can be heard telling Petitioner the investigation showed Petitioner's involvement in Ms. Pace's death.

28.   Harris told Petitioner police investigation showed Petitioner put the blue rag on the shotgun butt.  This is one of many references in the videotape by officers of the continuing investigation in Petitioner's residence and the officer's consequent belief Petitioner was involved in Ms. Pace's death.

29.   Petitioner responded to Harris that he denied shooting Ms. Pace.

30.   Harris gave Petitioner a break from questioning while Harris called the other agents to ask them what they learned at the scene.  Harris told Petitioner, "Our investigation is showing you are involved in this."

31.   Harris spoke with Ortiz at the scene, and then told Petitioner, "its not adding up to the way your story is saying, Gilbert."  Harris also told Petitioner, "They're examining her wounds."  Harris told Petitioner, "It's clearing up that that rag

was taped on that shotgun." Harris told Petitioner that their investigation showed that Ms. Pace was not cut from the pottery.

32. Harris told Petitioner that his statements were inconsistent with the officers' investigation at the scene.

33. A police officer asserted on the videotape that Ms. Pace's wounds were not consistent with Petitioner's statements.

34. Agent Ortiz then arrived at LLPD and spoke with Petitioner for the first time, and told Petitioner the "evidence at the scene" showed Ms. Pace did not commit suicide, told Petitioner he staged the suicide, and the officers' theory of Ms. Pace's murder was based on their investigation at the scene.

35. Ortiz questioned Petitioner incorporating details and conclusions form the investigation inside Petitioner's residence.

36. Petitioner was told he was then arrested for tampering with evidence and suspicion of murder.

37. Approximately 30-45 minutes later, Petitioner approached Harris and asked if he could talk to Harris again because he wanted to tell the truth.

38. Harris told Petitioner that NMSP agents "out at the scene" advised of "additional evidence that they had located and that they wanted to come back and interview him further."

39. Petitioner then spoke with officers and told them that Ms. Pace and he argued and in the disagreement Ms. Pace was accidentally shot. During Petitioner's second statement,

officers asserted conclusions based on the physical evidence in Petitioner's residence.

40.   The only reference in the record of this case of Petitioner possibly having consented to the all-night warrantless searches and seizures in his residence before the acquisition at approximately 8:30 a.m. on December 4 was when Petitioner's trial counsel asked NMSP Agent Ortiz, "Gilbert had given consent to search his house, correct?", Ortiz responded, "That's correct", and Petitioner's trial counsel responded, "I didn't think there's anything really of interest there."

41.   The record does not show any conversations with Petitioner by any officer or agent of the State wherein Petitioner was requested to given consent and Petitioner gave consent.

JUDGE JOHN W. POPE, DIV. I

_____

THE HONORABLE JOHN W. POPE
THIRTEENTH JUDICIAL DISTRICT JUDGE

APPROVED:

_____
TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for Petitioner

Approved October 1, 2009
MICHAEL MARTINEZ, Esq.
Special Assistant District Attorney