IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

    Respondent,

v.     No.

GILBERT E. TORRES, JR.,

    Petitioner.

## RULE 12-501, N.M.R.A. 2010
## PETITION FOR WRIT OF CERTIORARI
## TO THE THIRTEEN JUDICIAL DISTRICT COURT
## OF THE STATE OF NEW MEXICO

DECIDED BY THE THIRTEENTH JUDICIAL DISTRICT COURT
OF VALENCIA COUNTY
HONORABLE John W. Pope, Presiding
No. D-1314-CR-2001-483

Respectfully submitted,

TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for Petitioner
P.O. Box 26807
Albuquerque, New Mexico  87125
Tele. (505) 247-8558

JUN 28 2010

## TABLE OF CONTENTS

|   | Page No. |
|---|---|
| **TABLE OF AUTHORITIES**.......................... | iii |
| **DESCRIPTION OF DISTRICT COURT PROCEEDINGS**.... | 1 |
| **SUMMARY OF EVIDENCE AT EVIDENTIARY HEARINGS**.. | 1 |
| **DISTRICT COURT'S FINDINGS**..................... | 5 |
| **ARGUMENT**...................................... | 6 |
|     I. Trial Counsel Rendered Ineffective Assistance of Counsel by Not Filing A Motion to Suppress Evidence and Fruit of the Poisoned Tree Under the Fourth and Sixth Amendments and Article II, §§ 10 and 14 of the New Mexico Constitution............. | 6 |
|     A. The District Court Erred by Not Applying Binding Precedent from the United States Supreme Court that Calling Police was Not Consent, and Cited No Factual Basis or Legal Precedent for Petitioner's Reporting His Ex-Wife's Suicide was Consent For the State's Nighttime Warrantless Searching of His Home... | 7 |

B.   The District Court Erred by Finding the Community Caretaker Exception to the Warrant Requirement Allowed the State's Nighttime Warrantless Searching Of Petitioner's Residence When the Initially Arriving Officer Determined Petitioner's Ex-Wife was Deceased, Petitioner was Removed From the Residence, No Emergency Circumstances Continued to Exist, And Suicide was Not a Crime in The State of New Mexico............   8

**REQUEST FOR RELIEF**............................   10

# TABLE OF AUTHORITIES

**Cases**  *Page No.*

Flippo v. West Virginia, 528 U.S. 11 (1999).. 3,4,7,9

Michigan v. Tyler, 436 U.S. 499 (1978)....... 8

Mincey v. Arizona, 437 U.S. 385 (1978)....... 3,4,7,8,9

Minnesota v. Dickerson, 508 U.S. 366 (1993).. 10

Thompson v. Louisiana, 469 U.S. 17,
    reh'g denied, (1984).................... 3,4,7

Patterson v. LeMaster, 2001-NMSC-013,
    130 N.M. 179, 21 P.3d 1032.............. 6

State v. Anderson, 107 N.M. 165,
    754 P.2d 542 (Ct. App. 1988)............ 7

State v. Arellano, 91 N.M. 195, 572 P.2d 223
    (Ct. App. 1977)......................... 8

State v. Balenquah, 2009-NMCA-055,
    146 N.M. 267, 208 P.3d 912.............. 10

State v. Cooper, 1998-NMCA-180,
    126 N.M. 500, 972 P.2d 1................ 6

State v. Jackson, 2009-NMCA-068, 146 N.M. 563,
    212 P.3d 1118, cert. granted, (2009) ... 8

State v. Moran, 2008-NMCA-160,
    145 N.M. 297, 197 P.3d 1079............. 10

State v. Pierce, 2003-NMCA-117, 134 N.M. 388,
    77 P.3d 292............................. 7

State v. Ryon, 2005-NMSC-005,
    137 N.M. 174, 108 P.3d 1032............. 5,6,7,8,9

State v. Torres, 2005-NMCA-070,
    137 N.M. 607, 113 P.3d 877.............. 1,3

State v. Torres, 2005-NMCERT-005,
    137 N.M. 522, 113 P.3d 345..............   1

State v. Valdez, 111 N.M. 438,
    806 P.2d 578 (Ct. App. 1990)............  10

State v. Warsaw, 1998-NMCA-044,
    125 N.M. 8, 956 P.2d 139................  10

### New Mexico Statutes and Court Rules

N.M.S.A. 1978, § 24-11-5......................   7

Rule 5-802, N.M.R.A. 2006.....................   1

Rule 12-501 N.M.R.A. 2010....................  10

### United States Constitution

Fourth Amend..................................   6

Sixth Amend...................................   6

### New Mexico Constitution

Art.II, §10...................................   6

Art.II, §14...................................   6

**DESCRIPTION OF DISTRICT COURT PROCEEDINGS**

A Valencia County jury found Petitioner guilty of second degree murder and tampering with evidence. The New Mexico Court of Appeals affirmed in State v. Torres, 2005-NMCA-070, 137 N.M. 607, 113 P.3d 877. This Court denied the petition for a writ of certiorari in State v. Torres, 2005-NMCERT-005, 137 N.M. 522, 113 P.3d 345.

Petitioner filed a Rule 5-802 petition for a writ of habeas corpus. Respondent responded. Evidentiary hearings were held on October 6 and December 7, 2009. The district court filed the May 27, 2010 Order Denying Petition for Writ of Habeas Corpus ("Order").

**SUMMARY OF EVIDENCE AT EVIDENTIARY HEARINGS**

On December 3, 2001, Petitioner telephoned the Los Lunas Police Department (LLPD) "alleging the suicide of his ex-wife." (Order at 1) LLPD Officer Wroten arrived at Petitioner's residence, went to the back bedroom, found the woman deceased, did not seize any evidence, and knew Petitioner was the only other person there.

LLPD Officer Perea arrived after Wroten exited the residence, walked to the back bedroom, did not seize any

1

evidence, secured the scene, and requested LLPD Detective James Harris go to the scene. Harris arrived, Perea took Harris to see the dead body, exited, and spoke with Wroten. The LLPD officers then removed Petitioner, without arrest, from the scene to LLPD by 7:30 p.m.

Wroten, Perea, and Harris knew of no consent from Petitioner to search his residence, and did not seek a search warrant because probable cause did not exist.

LLPD requested the assistance of the New Mexico State Police (NMSP) Crime Scene Team.

All witnesses agreed suicide is not a crime.

NMSP Crime Scene Team agent Shane Arthur arrived at 9:01 p.m., Mike Applegate at 9:22 p.m., Ramon Casaus at 11:00 p.m., and Art Ortiz at 11:30 p.m.

Applegate testified all NMSP agents collected and evaluated evidence in the residence for hours. The suicide investigation in Petitioner's residence by midnight turned into a homicide investigation. Harris, the affiant, testified, after Petitioner left his residence, LLPD and NMSP were "developing probable cause" because the State lacked probable cause.


evidence, secured the scene, and requested LLPD Detective James Harris go to the scene. Harris arrived, Perea took Harris to see the dead body, exited, and spoke with Wroten. The LLPD officers then removed Petitioner, without arrest, from the scene to LLPD by 7:30 p.m.

Wroten, Perea, and Harris knew of no consent from Petitioner to search his residence, and did not seek a search warrant because probable cause did not exist.

LLPD requested the assistance of the New Mexico State Police (NMSP) Crime Scene Team.

All witnesses agreed suicide is not a crime.

NMSP Crime Scene Team agent Shane Arthur arrived at 9:01 p.m., Mike Applegate at 9:22 p.m., Ramon Casaus at 11:00 p.m., and Art Ortiz at 11:30 p.m.

Applegate testified all NMSP agents collected and evaluated evidence in the residence for hours. The suicide investigation in Petitioner's residence by midnight turned into a homicide investigation. Harris, the affiant, testified, after Petitioner left his residence, LLPD and NMSP were "developing probable cause" because the State lacked probable cause.

The NMSP agents, despite acknowledged training, admittedly had no knowledge of the holdings of <u>Flippo v. West Virginia</u>, 528 U.S. 11, 13 (1999)(per curiam); <u>Thompson v. Louisiana</u>, 469 U.S. 17, *reh'g denied*, (1984); or <u>Mincey v. Arizona</u>, 437 U.S. 385, 390 (1978).

There was no evidence any NMSP agent requested or witnessed Petitioner consent to overnight searches of his house. Arthur believed LLPD Lt. Nuanes had acquired written consent from Petitioner. Nuanes did not.

Ortiz believed Petitioner consented by reporting his ex-wife's suicide. Ortiz also thought Applegate secured oral consent from Petitioner. Applegate did not. The consent about which Ortiz responded at trial was the mistaken consent. <u>State v. Torres</u>, 2005-NMCA-070, ¶12. Ortiz also mistakenly thought LLPD had received consent from Petitioner to search his residence.

NMSP agents first contacted Petitioner at LLPD after 12:30 a.m. on December 4 when Harris, Arthur, Ortiz and Casaus questioned him about what LLPD and NMSP reviewed and evaluated inside Petitioner's residence. Then Petitioner was arrested for tampering with evidence.

The warrantless searches of the residence stopped at 3:00 a.m. when officers developed probable cause.

During Petitioner's second statement after 3:30 p.m., Applegate presented him "with the facts" from the warrantless searches of his residence.

The Affidavit for Search Warrant, filed at 8:48 a.m. on December 4, 2001, failed to assert Petitioner consented to the searching of his residence. The Affidavit at 2 alleged, "Upon further investigation of the crime scene, by officers, they learned that a domestic dispute occurred between the victim and TORRES."

Petitioner's counsel Campbell never found any evidence Petitioner consented to search his residence.

Campbell considered filing a motion to suppress, but believed Petitioner consented by reporting the suicide. This was the consent about which he asked Ortiz at trial.

Campbell admitted he unreasonably did not file a motion to suppress when he had no knowledge of Mincey, Thompson and Flippo. Consequently, Campbell made the tactical decision to focus exclusively on preparing for trial and not contest the admission of all of the

physical evidence and Petitioner's two statements to LLPD and NMSP. Campbell admitted a successful motion to suppress physical evidence and fruits of the illegal evidence, would have caused the case not to go to trial.

## DISTRICT COURT'S FINDINGS

The officers entered Petitioner's residence in furtherance of their duties under the community caretaker exception to the warrant requirement and searched for evidence of the alleged suicide under State v. Ryon, 2005-NMSC-005, 137 N.M. 174, 108 P.3d 1032. (Order at 2) As such, "they did not have to completely abandon their investigative function." (Order at 2)

"The officers' presence on the Petitioner's premises ... was consensual. Any investigative functions undertaken while on the premises was incidental to the consent given when the Petitioner called to report a suicide." (Order at 2) The lack of a motion to suppress evidence "does not amount to ineffective assistance of counsel" and was "not prejudice" because of "a high probability that the motion would have failed." (Id. at 2)

5

**ARGUMENT**

### I. Trial Counsel Rendered Ineffective Assistance Of Counsel by Not Filing a Motion to Suppress Evidence and Fruit of Poisoned Tree Under The Fourth and Sixth Amendments and Article II, §§ 10 and 14 of the New Mexico Constitution.

"Warrantless searches and seizures inside a home are presumptively unreasonable, with "only a few specific, narrowly defined exceptions." Ryon, 2005-NMSC-005, ¶23.

For ineffective assistance of counsel, counsel must not exercise the skill of a reasonably competent attorney, which prejudiced Petitioner's case. State v. Cooper, 1998-NMCA-180, ¶11, 126 N.M. 500, 972 P.2d 1.

"There was no strategic reason for a reasonably competent attorney who was aware of the facts of this case and the governing case law not to try to suppress". Patterson v. LeMaster, 2001-NMSC-013, ¶27, 130 N.M. 179, 21 P.3d 1032. Petitioner was prejudiced when the motion "was crucial because it could have excluded key evidence", undermining confidence in the verdict. Id. ¶¶28-33.

6

A.  **The District Court Erred by Not Applying Binding Precedent from the United States Supreme Court that Calling Police was Not Consent, and Cited No Factual Basis or Legal Precedent for Petitioner's Reporting His Ex-Wife's Suicide was Consent for the State's Nighttime Warrantless Searching of His Home.**

Under Mincey, Thompson, and Flippo, and Ryon, Petitioner's report to police of his ex-wife's suicide in his residence and Wroten briefly being in the residence to check on the reported suicide, was not consent to all-night, warrantless searches and seizures in his home.

Petitioner's call to LLPD did not "evidence a diminished expectation of privacy" or constitute consent for police to search his residence. Thompson, 469 U.S. at 22-23; Mincey, 437 U.S. at 391-92.  He was obligated under N.M.S.A. 1978, § 24-11-5 to report the death.

His report of the suicide was "clear and positive testimony that consent was clear and unequivocal", conentt was "given without duress or coercion", and "in light of the presumption that disfavors the waiver of constitutional rights." State v. Pierce, 2003-NMCA-117, ¶20, 134 N.M. 388, 77 P.3d 292 (citing State v. Anderson, 107 N.M. 165, 167, 754 P.2d 542 (Ct. App. 1988)).

7

**B. The District Court Erred by Finding the Community Caretaker Exception to the Warrant Requirement Allowed the State's Nighttime Warrantless Searching of Petitioner's Residence When the Initially Arriving Officer Determined Petitioner's Ex-Wife was Deceased, Petitioner Was Removed From the Residence, No Emergency Circumstances Continued to Exist, and Suicide Was Not a Crime in the State of New Mexico.**

The report of suicide, not a crime, was not probable cause. State v. Arellano, 91 N.M. 195, 196, 572 P.2d 223 (Ct. App. 1977); State v. Jackson, 2009-NMCA-068, ¶9, 146 N.M. 563, 212 P.3d 1117, *cert. granted*, (2009).

The emergency aid doctrine "is limited to the functions of protecting or preserving life or avoiding serious injury". Id. at ¶26. "[O]nly a genuine emergency will justify entering and searching a home without a warrant and without consent or knowledge." Ryon, 2005-NMSC-005, ¶26. It applies when police "reasonably believe that a person within is in need of immediate aid" or at "the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises". Mincey, 437 U.S. at 392 (citing to Michigan v. Tyler, 436 U.S.

8

499, 509-510 (1978)). After Wroten found the body, no emergency existed. Ryon, 2005-NMSC-005, ¶¶23,24. There was no other victim, Petitioner was removed, and no basis for a long, not prompt, search.

Thereafter, LLPD and NMSP "develop[ed] probable cause" not promptly until approximately 3:00 a.m. hardly promptly as "crime-solvers", not "community caretakers". Ryon, 2005-NMSC-005, ¶27. The "emergency aid doctrine, established in Mincey", is for when "the intrusion upon privacy occurs while police ... are motivated by 'a desire to aid victims rather than investigate criminals.'" Id. at ¶¶25,26 n.4. Under Ryon, 2005-NMSC-005, ¶29, the State did not meet the three-pronged objective test.

There is not a "murder scene exception" to the warrant requirement. Flippo, 528 U.S. at 12-14.

The plain view exception to the warrant requirement did not apply as officers were not "lawfully positioned when the evidence was observed, and the incriminating nature of the evidence was immediately apparent, such that the officer had probable cause to believe the

9

article seized was evidence of a crime". <u>State v. Balenquah</u>, 2009-NMCA-055, ¶26, 146 N.M. 267, 208 P.3d 912; <u>Minnesota v. Dickerson</u>, 508 U.S. 366, 375 (1993).

No "prior justification" existed for the hours-long presence of the officers. <u>State v. Warsaw</u>, 1998-NMCA-044, ¶20-21, 125 N.M. 8, 956 P.2d 139; <u>State v. Valdez</u> 111 N.M. 438, 441, 806 P.2d 578, 581 (Ct. App. 1990).

The incriminating nature of the evidence was not immediately apparent when no LLPD officer seized any evidence during their presence before NMSP arrived, and they did not have probable cause. <u>State v. Moran</u>, 2008-NMCA-160, ¶12, 145 N.M. 297, 197 P.3d 1079.

**REQUEST FOR RELIEF**

Petitioner requests this Court grant this Rule 12-501, N.M.R.A. 2010, petition and reverse the Order.

Respectfully submitted,

*/s/ Todd Hotchkiss*

TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for Petitioner
P.O. Box 26807
Albuquerque, New Mexico  87125
Tele. (505) 247-8558