IN THE COURT OF APPEALS FOR THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

      Plaintiff-Appellee,

v.

GILBERT TORRES, JR.,

      Defendant-Appellant.

No. 24,103

COURT OF APPEALS OF NEW MEXICO
ALBUQUERQUE
FILED

MAY 1 7 2004

*Patricia R. Wallace*

## APPELLANT'S REPLY BRIEF

APPEAL FROM THIRTEENTH JUDICIAL DISTRICT COURT
FOR VALENCIA COUNTY, NEW MEXICO

HONORABLE JOHN W. POPE, District Judge

No. D-1314-CR 2001-483

TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorneys for GILBERT TORRES, JR.
P.O. Box 26807
Albuquerque, New Mexico  87125
Tele. (505) 247-8558


EXHIBIT
6

TABLE OF CONTENTS

*Page No.*

TABLE OF AUTHORITIES..................................   iv

GUIDE TO CITATIONS....................................   v

ARGUMENT OF BRIEF-IN-CHIEF............................   1

    I.   MR. TORRES' Counsel Failed To File a
            Motion to Suppress the Evidence,
            Under the Fourth Amendment to the U.S.
            Constitution and Article II, § 10 of
            The New Mexico Constitution when
            State Agents Searched  TORRES' Residence
            Without a Search Warrant...................   1

        A.   Plain Error Occurred...................   2

        B.   Trial Counsel Provided Ineffective
               Assistance of Counsel When No Plausible,
               Rational or Reasonable Strategy Existed
               For the Failure of Trial Counsel to Move
               For the Suppression of the Evidence....   3

   II.  Evidentiary Issues Created Error..........   5

        A.   The Trial Court Erred and Prejudiced
               TORRES When Overruling TORRES' Objection
               Regarding the Scope of Opinion Testimony
               By the State's Proffered Expert as
               Blood Stain Pattern Analysis and Accident
               Reconstruction, Specifically Agent Ortiz,
               Beyond His Qualified Opinion that Pace
               Did Not Commit Suicide and Detailing How
               He Believed the Entire Murder
               Circumstances Occurred..................   5

B.  The Trial Court Erred by Overruling
TORRES' Objection to the Hearsay
Testimony of Pace from October 14, 2001,
And Argued by the State as State of
Mind Evidence Under Rule 11-803(C),
N.M.R.A. 2003 or Relevant to TORRES'
Anticipated Self Defense Claim that
"The next time you guys see me you're
going to find me dead"................   8

III.  Prosecutor's Statements and Arguments
Created Error.............................  12

A.  Fundamental Error Occurred
When the Prosecutor Stated, "Just as
you have taken an oath and have raised
your hand to fairly and truthfully judge
this case, on behalf of the People of
the State of New Mexico, I promise you
that Ms. Garcia and myself will conduct
our case as fairly and as honestly and
as truthfully as possible"............  12

B.  The Trial Court Erred or
Fundamental Error Occurred When the
Trial Court Overruled TORRES' Objections
To the Prosecutor's Rebuttal Closing
Argument that TORRES "continues to disgrace
and deface her memory.  Shame on you,
Gilbert Torres.  And I hope you feel my
rage.  I hope that as a society ...."
And that  TORRES was Less Worthy of
Constitutional Protection Than the
Memory of Pace........................  13

IV.  Cumulative Error Occurred Based on the
Foregoing Errors.........................  14

CONCLUSION.........................................  15

CERTIFICATE OF SERVICE............................  15

# TABLE OF AUTHORITIES

*Page No.*

## Cases

Crawford v. Washington, ___ U.S. ___,
    124 S.Ct. 1354 (2004)........................   8,9

Duran v. Lovato, 99 N.M. 242, 656 P.2d 905
    (Ct. App. 1982)................................   7

Flippo v. West Virginia, 528 U.S. 11,
    120 S.Ct. 7 (1999)............................   2,4

Mincey v. Arizona, 437 U.S. 385,
    98 S.Ct. 2408 (1978).........................   2,3,4

Patterson v. LeMaster, 2001-NMSC-013,
    130 N.M. 179, 21 P.3d 1032...................   4,5

State v. Baca, 120 N.M. 383, 902 P.2d 65 (1995).....   11,12,15

State v. Cooper, 1998-NMCA-180, 126 N.M. 500,
    972 P.2d 1, *cert. denied*, (1998)..............   4

State v. Diaz, 100 N.M. 210, 668 P.2d 326
    (Ct. App. 1983)................................ 12,13,14,15

State v. Ferguson, 111 N.M. 191, 803 P.2d 676
    (Ct. App.), *cert. denied*, (1990)..............   13

State v. Landgraf, 1996-NMCA-024, 121 N.M. 445,
    913 P.2d 252, *cert. denied*, 121 N.M. 375,
    911 P.2d 883..................................   6

State v. Lucero, 116 N.M. 450, 863 P.2d 1071 (1993).   6,7

State v. Richardson, 114 N.M. 725,
    845 P.2d 819 (Ct. App.), *cert. denied*, (1992)..   5

State v. Vallejos, 98 N.M. 798, 653 P.2d 174
    (Ct. App.1982)................................   13,15

State v. Vigil, 103 N.M. 643, 711 P.2d 920 (1985)...   7

State v. Wrighter, 1996-NMCA-077, 122 N.M. 200,
    922 P.2d 582..................................   11

iii

<u>Thompson v. Louisiana</u>, 469 U.S. 17, 105 S.Ct. 409,
      *reh'g denied*, (1984)............................   2

<u>United States v. Brown</u>, 490 F.2d 758
      (D.C. Cir. 1973)...............................  11

## <u>New Mexico Constitution</u>

Article 10, § 10...................................   3

Article II, § 14..................................  3,8

## <u>United States Constitution</u>

IV Amend..........................................  2,3

VI Amend.........................................  3,8,9

## <u>Statutes and Court Rules</u>

Rule 5-802, N.M.R.A. 2004.........................   4

Rule 11-403, N.M.R.A. 2003........................  11

Rule 11-404, N.M.R.A. 2003........................  11

Rule 11-803(C), N.M.R.A. 2003.....................  10

ARGUMENT OF REPLY BRIEF

On May 12, 2004, this Court granted MR. TORRES' motion to extend time to May 17, 2004 to file this Reply Brief.

**I.   Mr. TORRES' Counsel Failed to File a Motion to Suppress The Evidence Under the Fourth Amendment to the U.S. Constitution and Article II, § 10 of the New Mexico Constitution when State Agents Searched TORRES' Residence Without a Search Warrant.**

No motion to suppress was filed by trial defense counsel. The record establishes that, prior to the acquisition of the search warrant at 8:00 a.m. on December 4, 2001, police officers conducted a multi-hour, detailed examination and evaluation of the physical evidence inside MR. TORRES' residence; questioned MR. TORRES at the police station based upon conclusions reached from their review of the physical evidence inside MR. TORRES' residence, arrested MR. TORRES for tampering with evidence and suspicion of murder, and Harris collected MR. TORRES' blood stained clothes and boots. (Brief-In-Chief[1] at 10, 12)

If this Court grants MR. TORRES' motion to supplement the record proper with the affidavit for search warrant and search warrant for MR. TORRES' residence, much of the affidavit for search warrant is based on the warrantless searches of MR. TORRES' residence prior to the acquisition of the search warrant.

---

[1]Hereinafter cited to as BIC.

1

## A.   Plain Error Occurred.

MR. TORRES is uncertain as to what the State is arguing when it asserts that the failure of trial counsel to file a motion to suppress evidence is "not an evidentiary matter that arose at trial". (Answer Brief[2] at 4) Much of the evidence admitted at trial was discovered, examined and evaluated as a result of the searches of the residence before the search warrant was acquired.

Contrary to the AB at 4, the failure of trial counsel to file a motion to suppress affected the substantial rights of MR. TORRES because his attorney did not attempt to exclude evidence which was obtained in violation of MR. TORRES' constitutional rights.

The State made no effort to argue that the line of cases from the United States Supreme Court in the last 25 years establishing and reaffirming that there is no "murder scene exception" to Warrant Clause of the Fourth Amendment. Flippo v. West Virginia, 528 U.S. 11, 120 S.Ct. 7 (1999); Thompson v. Louisiana, 469 U.S. 17, 105 S.Ct. 409, reh'g denied, (1984); Mincey v. Arizona, 437 U.S. 385, 98 S.Ct. 2408 (1978). (BIC at 23-24)

The call by TORRES to the police due to the apparent suicide by his ex-wife in his residence did not "evidence a diminished expectation of privacy" on his part or constitute consent for police to search TORRES' residence after TORRES was removed from the residence. Thompson v. Louisiana, 469 U.S. 17, 22-23, 105 S.Ct.

---

[2]Hereinafter cited to as AB.

409, 411-12, *reh'g denied*, (1984); <u>Mincey v. Arizona</u>, 437 U.S. at 391-92, 98 S.Ct. at 2412-13.

While the State baldly asserts that TORRES consented to the warrantless searches of his residence on December 3-4 before acquisition of the search warrant, there was no specific factual basis for any conclusion by a court that TORRES specifically, clearly and unequivocally consented. (AB at 6)

MR. TORRES' trial counsel's statement that there were no relevant matters concerning the consent is not the factual basis in support of unquestionable consent. Instead, trial defense counsel's comments about his lack of interest in any possible issue concerning the unconstitutional acquisition of the evidence only highlight how unreasonable he was to not file a motion to suppress.

If MR. TORRES' alleged consent had been determined by the trial court prior to trial, then the reasonable strategy at trial was to argue that the MR. TORRES' consent was voluntary. If the trial court determined prior trial that MR. TORRES did not consent, then evidence would have been determined to have been inadmissible.

Plain error occurred when trial counsel failed to protect MR. TORRES' constitutional rights under the Fourth and Sixth Amendments and Article II, §§ 10 and 14 of the New Mexico Constitution.

> **B.   Trial Counsel Provided Ineffective Assistance of Counsel When No Plausible, Rational or Reasonable Strategy Existed for the Failure of Trial Counsel to Move for the Suppression of the Evidence.**

The State argued that MR. TORRES' trial counsel "was aware of,

but chose not to pursue the issue" of the propriety of the warrantless searches of his residence on December 3-4, trial counsel's decision was "strategic" or within "the realm of competency", the record does not support a prima facie case of ineffective assistance of counsel, the case was not appropriate for remand for an evidentiary hearing in the trial court, and MR. TORRES has post-conviction proceedings he could engage in on that issue under Rule 5-802, N.M.R.A. 2004. (AB at 6-8)

Contrary to the State's AB at 7, a prima facie case of ineffective assistance of counsel exists as a plausible, rational strategy or tactic cannot explain the trial counsel's failure, and MR. TORRES was prejudiced. Patterson v. LeMaster, 2001-NMSC-013, ¶17, 130 N.M. 179, 21 P.3d 1032; State v. Cooper, 1998-NMCA-180, ¶11, 126 N.M. 500, 972 P.2d 1, cert. denied, (1998).

U.S. Supreme Court precedent from Mincey to Flippo mandated there is no "crime scene exception" to the warrant requirement. Contra State v. Cooper, 1998-NMCA-180, ¶¶21-22.

"There was no strategic reason for a reasonably competent attorney who was aware of the facts of this case and the governing case law not to try to suppress" the evidence gained as a result of the warrantless searches of TORRES' residence. Patterson v. LeMaster, 2001-NMSC-013, ¶27.   There is no plausible, strategic reason not to seek exclusion of the fruit of the unconstitutional, warrantless searches of MR. TORRES' residence.

4

TORRES was prejudiced because there was no apparent indication that TORRES was disposed to plea the case out, the strength of the proper and admissible evidence was not great (MR. TORRES was acquitted of first-degree murder), and the motion to suppress "was crucial because it could have excluded key evidence". <u>Patterson v. LeMaster</u>, 2001-NMSC-013, ¶¶28-33.  The confidence in  the jury's verdict is consequently undermined. <u>Id</u>.

Contrary to the State's AB at 7, this Court should find that TORRES has established a *prima facie* showing of ineffective assistance of counsel, reverse the convictions of TORRES, or remand the matter for an evidentiary hearing. *See* <u>State v. Richardson</u>, 114 N.M. 725, 845 P.2d 819 (Ct. App.), *cert. denied*, (1992).  Trial counsel's failure was an egregious error and could not conceivably have been the product of a reasonable strategic decision.

II.   **Evidentiary Issues Created Error.**

    A.   **The Trial Court Erred and Prejudiced TORRES When Overruling TORRES' Objection Regarding the Scope of Opinion Testimony by the State's Proffered Expert as Blood Stain Pattern Analysis and Accident Reconstruction, Specifically Agent Ortiz, Beyond His Qualified Opinion that Pace Did Not Commit Suicide and Detailing How He Believed the Entire Murder Circumstances Occurred.**

The State argued in its AB at 14-19, that Ortiz's statements that "physical evidence does not lie" and "all the physical evidence points to this was a deliberate killing" were based "upon physical facts and observations", that MR. TORRES' reliance on

5

State v. Lucero, 116 N.M. 450, 863 P.2d 1071 (1993) is "misplaced", that this "case is controlled by State v. Landgraf, 121 N.M. 445, 913 P.2d 252 (Ct. App. 1996)", and if any error occurred it was harmless error.

Contrary to the AB at 14, Ortiz was accepted as an expert at trial in blood stain pattern analysis and accident reconstruction, not a "crime reconstructionist expert".   Under this erroneous pretense, Ortiz gave the jury "a detailed synopsis" of how he "believed the crime occurred". (AB at 16)

The "physical evidence does not lie," testified Ortiz, "and all the physical evidence points to this was a deliberate killing." (BIC at 19)   Obviously, physical evidence cannot and does not speak; instead, Ortiz interpreted the meaning of the physical evidence for the jury instead of presenting the facts to the jury so it could derive its meaning.   Ortiz's testimony that the "physical evidence does not lie" consequently was an expert's improper validation of the State's case. State v. Lucero, 116 N.M. at 454, 863 P.2d at 1075.

The State argued that State v. Landgraf, 1996-NMCA-024, 121 N.M. 445, 913 P.2d 252, cert. denied, 121 N.M. 375, 911 P.2d 883 controls this case. (AB at 18-19)   Landgraf, 1996-NMCA-024, ¶20, did not involve any comments by the expert witnesses vouching for themselves or the State's theory that the "physical evidence does not lie".   Landgraf, 1996-NMCA-024, ¶20, is not controlling and

6

does not even address the fundamental statements made by the State's expert witness in this case vouching for his and the State's theory outside of the expert's accepted expertise.

Ortiz even speculated outside the scope of physical evidence by asserting TORRES went into the bedroom with the shotgun "maybe with the intent to kill her at that point in time." (BIC at 18)

Ortiz's testimony was the prosecutor's closing argument rather than providing a scientific foundation for the prosecutor's closing argument. *Contra* State v. Vigil, 103 N.M. 643, 711 P.2d 920 (1985); Duran v. Lovato, 99 N.M. 242, 656 P.2d 905 (Ct. App. 1982).

Ortiz also improperly commented directly on the credibility of TORRES. State v. Lucero, 116 N.M. 450, 454, 863 P.2d 1071, 1075 (1993). Ortiz's testimony could not be offered to establish that the State's witnesses were telling the truth by alleging TORRES murdered Pace. State v. Lucero, 116 N.M. at 454, 863 P.2d at 1075. Ortiz vouched for the credibility of the State's case against TORRES and encroached into the province of the jury to determine the truthfulness of the evidence and testimony. State v. Lucero, 116 N.M. at 454, 863 P.2d at 1075. Ortiz provided "no scientifically valid or reliable means by which to determine whether a particular event has in fact happened." State v. Lucero, 116 N.M. at 454, 863 P.2d at 1075.

Also contrary to the AB at 19, Dr. Nine did not make any statements vouching for his and the State's theory.

The error by Ortiz was not harmless.  The State's AB made the same inaccurate assumption as the prosecutor's closing argument: "It should be an easy verdict." (T.03-107, 64-67)  The reality is that the jury acquitted MR. TORRES of first-degree murder.

Consequently, TORRES' substantial rights to a fair trial and a jury trial under the Sixth Amendment to the U.S. Constitution and Article II, § 14 of the New Mexico Constitution were violated.

> B.    **The Trial Court Erred by Overruling TORRES' Objection to the Hearsay Testimony of Pace From October 14, 2001, and Argued by the State as State Of Mind Evidence Under Rule 11-803(C), N.M.R.A. 2003 Or Relevant to TORRES' Anticipated Self Defense Claim that "The next time you guys see me you're going to find me dead"?**

The statement at issue was made by Pace on October 14, 2001 to a police officer who responded to TORRES' domestic violence call for police assistance on that date.  Pace appeared "groggy", under the influence of something, and Pace had been drinking. (BIC at 4) That statement from October 14, 2001 was admitted concerning Ms. Pace's possible state of mind on December 3, 2001.  There was no evidence admitted concerning the time in between those dates.

The State began its closing argument with, "Pamela Pace's prophesy came true; 'The next time you see me you are going to find me dead.'  She told Officer Josh Perea of the Los Lunas Police Department.  And sure enough, the next time Josh Perea saw Pamela Pace, he saw her dead." (BIC at 21)

The State recognized that the new case of _Crawford v._

8

<u>Washington</u>, ___ U.S. ___, 124 S.Ct. 1354 (2004) is the new first hurdle that the State must clear. (AB at 9-10)  The State facially argued that Ms. Pace's hearsay testimony through Officer Perea was "clearly non-testimonial", without citation to any law as authority, and was "not the type of testimonial statement envisioned by the majority in <u>Crawford</u>.". (AB at 10)

The U.S. Supreme Court in <u>Crawford</u> reversed the defendant's murder conviction by holding that a woman's hearsay testimony at trial, admitted as a statement against penal interest, was inadmissible as a denial of the defendant's right Sixth Amendment rights to confront and cross examine the witness.  Contrary to the State's assertions, Ms. Pace's hearsay statement to Perea is very analogous to the inadmissible statement to police in <u>Crawford</u>.

Because Ms. Pace's statement to Perea, to which Perea testified, is categorically testimony and therefore testimonial in nature, <u>Crawford</u> controls this case.

The State also argued that Ms. Pace's statement meets the requirements for a state of mind hearsay exception. (AB at 10-14)

The importance of the evidence at issue is shown by its priority placement in the prosecutor's closing argument.  The State framed its closing argument by the evidence at issue.  Contrary to the State's AB at 14, there is a reasonable probability that the victim's statement contributed to the conviction.

The State asserted that Ms. Pace's October 14 statement

"showed the victim's state of mind shortly before her death". (AB at 12)  One page later in the AB at 13, the State recognized the statement was made "two months before her death".  The State argued that "the state of mind of the victim of a crime is a fact in consequence where there are issues of self-defense, suicide, or accident." (AB at 11)

However, the facts of October 14 do not support the State's claim.  MR. TORRES called the police on October 14 and Ms. Pace was being escorted away from MR. TORRES' residence.   There was no evidence that Ms. Pace was the victim of a crime on October 14, contrary to the State's AB at 11.  There was no evidence on October 14 to support any notion that Ms. Pace was fearful of MR. TORRES, contrary to the State's AB at 11 and 12.  Contrary to the States AB at 12, that hearsay testimony did not "tend[] to refute the assumption Ms. Pace was suicidal or that the Defendant acted in self-defense."

Contrary to the AB at 12, Ms. Pace's statement contained no express reference that MR. TORRES would kill her.  Instead, she simply stated she expected to die in the future and Perea would see her dead.  Because of the question of what Ms. Pace meant by her remark, the statement was improperly admitted under Rule 11-803(C).

The State also argued that the admission of Ms. Pace's October 14 statement was harmless error. (AB at 13-14)  Contrary to the State's AB at 13, there is no "wealth of inculpatory evidence" and

10

there is substantial conflicting evidence to discredit the State's testimony as the jury, despite the improperly admitted evidence, acquitted MR. TORRES of first-degree murder.

MR. TORRES continues to request that this Court rely on the New Mexico Supreme Court precedent of State v. Baca, 120 N.M. 383, 389-90, 902 P.2d 65, 71-72 (1995), relying on United States v. Brown, 490 F.2d 758, 763 n.10 (D.C. Cir. 1973), under Rule 11-803(C) either because the statement was irrelevant as an attempt to demonstrate a fact of consequence other than the declarant's state of mind on December 3, or because it was unfairly prejudicial.

Furthermore, Perea's hearsay testimony of Pace's October 14 statements was not highly probative to prove context, and the probative value, if any, was substantially outweighed by the danger of unfair prejudice under Rules 11-403 and 11-404, N.M.R.A. 2003. State v. Wrighter, 1996-NMCA-077, ¶11, 122 N.M. 200, 922 P.2d 582.

For any and all of the foregoing reasons, the trial court erred in overruling TORRES' objection to the admission of Pace's October 14, 2001 statement and denied TORRES a fair trial under the Sixth Amendment to the U.S. Constitution or Article II, § 14 of the New Mexico Constitution.

III.   Prosecutor's Statements and Arguments Created Error.

    A.   Fundamental Error Occurred When the
Prosecutor Stated, "Just as you have taken an oath
and Have raised your hand to fairly and truthfully
judge this case, on behalf of the People of the
State of New Mexico, I promise you that Ms. Garcia
and myself will conduct our case as fairly and as
honestly and as truthfully as possible".

The State argued that MR. TORRES' reliance on State v. Baca, 120 N.M. 383, 902 P.2d 65 (1995) and State v. Diaz, 100 N.M. 210, 668 P.2d 326 (Ct. App. 1983) was "misplaced" and "clearly distinguishable in its facts" without proffering to this Court any contrary authority in support of its position.

The State argued in its AB at 21 that the prosecutor's references in State v. Diaz, 100 N.M. 210, 213, 668 P.2d 326, 329 (Ct. App. 1983) "to his authority were much more clear, pervasive and egregious that in this case."  This Court in Diaz, 100 N.M. at 213-14 never held that Diaz was the bare minimum required for error.  This Court instead found the remarks of the Diaz prosecutor erroneous as references to the authority of the prosecutor and inferred that the prosecutor would not have brought the case unless he personally believed in the defendant's guilt. (AB at 21)  State v. Baca, 120 N.M. at 392, 902 P.2d at 74 and Diaz are not misplaced as precedent for reversal as bearing specifically on the issue.

The prosecutor's statements served to assert his personal opinion as to the justness of the cause, the guilt of MR. TORRES, and constituted an assertion by the prosecutor of his personal

12

vouching for the credibility of the State's case to the point of inferring that the truth was that MR. TORRES was guilty and, since the jury was sworn to seek the truth, it must find MR. TORRES guilty. MR. TORRES' reliance on Diaz is not misplaced. Contrary to the State's AB at 22, the prosecutor did in fact refer to his authority and imply that his authority created a justness of his cause. Contrary to the State's AB at 22, the "remark could [not] be read merely as an assurance that the State would not knowingly present false or perjured testimony.

  **B.**  **The Trial Court Erred or Fundamental Error Occurred When the Trial Court Overruled TORRES' Objection to the Prosecutor's Rebuttal Closing Argument that TORRES "continues to disgrace and deface her memory. Shame on you, Gilbert Torres. And I hope you feel my rage. I hope that as a society ...." and that TORRES was Less Worthy of Constitutional Protection Than the Memory of Pace.**

The State admitted in its AB at 23 that the prosecutor's remark that "he hopes Defendant 'feels his outrage' was improper as it implied the prosecutor's personal belief in Defendant's guilt". This is consistent with precedent of this Court. State v. Vallejos, 86 N.M. 39, 519 P.2d 135 (Ct. App. 1974); State v. Ferguson, 111 N.M. 191, 803 P.2d 676 (Ct. App.), cert. denied, (1990).

Nonetheless, the State argued that it was yet another isolated error, and "did not go so far" as the State's error in State v. Diaz, 100 N.M. at 214, 668 P.2d at 330. Contrary to the State's AB at 24, the prosecutor also inappropriately used abusive or

vituperative language against TORRES "which tends solely to prejudice him" and "had the effect of inflaming the jury." State v. Diaz, 100 N.M. at 214, 668 P.2d at 330.

The State in its AB at 24 asserted that it was merely responding to MR. TORRES disgracing and defacing Ms. Pace's memory as "a fair comment on the evidence." However, the State presented the evidence of MR. TORRES' statements, not the defense.

For any and all of the foregoing reasons, the closing argument by the prosecutor was sufficiently egregious to call the validity of the verdict into doubt, and error or fundamental error occurred.

**IV.  Cumulative Error Occurred Based on the Foregoing Errors.**

The State argued, "Defendant has not identified any error at his trial and his trial was fair" and, consequently, "may not therefore rely on the cumulative error doctrine." (AB at 25)

Defense counsel failed to seek to suppress the physical evidence removed from MR. TORRES' residence as fruit of unconstitutional searches of his residence. The State improperly relied on the testimony of a "crime scene reconstruction" *expert* to tell the jury how the evidence fits together. The State improperly introduced into evidence the October 14, 2001 statement by Ms. Pace of what the State believed was her alleged fear of MR. TORRES on December 3. The prosecutor improperly vouched for its case and made vituperative, personal appraisals of MR. TORRES' guilt before the jury. The asserted to the jury that, "It should be an easy

14

verdict." The jury acquitted MR. TORRES of first-degree murder.

The cumulative impact of errors, including trial counsel's failure to file a motion to suppress evidence, evidentiary matters, and statements by the prosecutor to the jury cumulatively prejudiced the defendant's right to a fair trial. State v. Baca, 120 N.M. at 392, 902 P.2d at 74; State v. Diaz, supra; State v. Vallejos, supra.

## CONCLUSION

WHEREFORE, the Appellant, GILBERT TORRES, JR., respectfully requests that this Court reverse the district court's convictions and sentence, and to remand this case for further proceedings. TORRES also requests such other and further relief as this Court deems just and proper.

Respectfully submitted,

_____
TODD HOTCHKISS
FRECHETTE & ASSOCIATES, P.C.
Attorney for GILBERT TORRES, JR.
P.O. Box 26807
Albuquerque, New Mexico  87125
Tele. (505) 247-8558

## CERTIFICATE OF SERVICE

I, Todd Hotchkiss, hereby certify that on May 17, 2004 I placed a copy of the foregoing Reply Brief in the U.S. Mail, first-class postage paid, for mailing to opposing counsel Ms. M. Anne Kelly, Assistant New Mexico Attorney General, 111 Lomas Boulevard N.W., Suite 300, Albuquerque, New Mexico  87102, the last known address.

_____
TODD HOTCHKISS

15

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

ORAL ARGUMENT CALENDAR

THURSDAY, JULY 8, 2004

3:00 p.m.

<u>NO. 24103</u>

STATE OF NEW MEXICO,                     Martha Anne Kelly
                                         John J. Bogren
        Plaintiff-Appellee,

vs.

GILBERT TORRES,                          Todd Hotchkiss
                                         Joseph M. Campbell
        Defendant-Appellant.


*PANEL:   CHIEF JUDGE WECHSLER, JUDGES PICKARD AND VIGIL

*Court of Appeals' panel members are listed in seniority order.

Panels may be changed without notice.

Oral Argument will be held in the Court of Appeals courtroom,
Room 119, 237 Don Gaspar, Santa Fe, NM.

June 10, 2004

EXHIBIT
H

1    IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

2    Opinion Number _____

3    Filing Date:  4/7/2005

4    Docket No. 24,103

5    STATE OF NEW MEXICO,

6                 Plaintiff-Appellee,

7    vs.

8    GILBERT TORRES, JR.,

9                 Defendant-Appellant.

10   APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY
11   John W. Pope, District Judge

12   Patricia A. Madrid
13   Attorney General
14   M. Anne Kelly
15   Assistant Attorney General
16   Albuquerque, NM

17            for Appellee

18   Todd Hotchkiss
19   Frechette & Associates, P.C.
20   Albuquerque, NM

21            for Appellant



# O P I N I O N

**WECHSLER, Judge.**

{1}   Defendant appeals his convictions for second degree murder and tampering with evidence. On appeal, Defendant argues that plain error occurred due to his trial counsel's failure to file a motion to suppress evidence because the police did not obtain a search warrant prior to collecting evidence from Defendant's home. In the alternative, Defendant argues that his counsel was ineffective in failing to file the motion. Additionally, Defendant argues that the trial court erred in allowing a witness to testify to a statement made by the victim over Defendant's hearsay objection, that it erroneously admitted testimony of two police officers, and that statements made by the prosecutor during opening statements and closing arguments constituted fundamental error. After the State filed its brief, Defendant filed a motion to supplement the record and to allow the State the opportunity to address the supplemental record in further briefing. We now deny the motion and affirm.

**Factual and Procedural History**

{2}   On December 3, 2001, police officers responded to a possible suicide call at Defendant's home. Officer Dino Roden, one of the responding officers, testified that he could see inside through a glass storm door as he approached the home. He noticed debris and broken pottery on the floor and blood on the carpet. As Officer Roden was about to open the door, Defendant approached and stated "well she finally did it."

1  Officer Roden informed Defendant that he had been dispatched to

2  investigate a suicide and asked where "she" was.   Defendant

3  informed the officer that the victim, Defendant's estranged

4  wife, was in the back bedroom.

5  {3}   Officer Roden and Officer Joshua Perea, who arrived

6  shortly after Officer Roden, located the victim in the back

7  bedroom on the bed.   She was dead with an apparent shotgun

8  wound to her chest.   She had a four-to-five-inch gash on her

9  upper left thigh from which blood flowed up rather than down.

10  Her hands were badly lacerated, and her right thumb, which was

11  missing, was later found beneath a night stand.   She had blood

12  stains on the bottom of one of her feet.   There were also marks

13  on her throat and around the back side of her neck, as well as

14  evidence of retinal hemorrhaging.   The officers saw a 12-gauge

15  shotgun leaning next to the victim.   It had a badly damaged

16  barrel that "was peeled back like a banana."   There was a

17  wooden backscratcher next to the shotgun.   They also saw pieces

18  of shrapnel from the shotgun barrel on the wall in the bedroom

19  and pieces of duct tape and fibers of blue cloth attached to

20  the shotgun.   There were shredded pieces of a potato on the

21  ceiling, the victim's body, and the shotgun.

22  {4}   After making these observations, the officers cleared the

23  house, called New Mexico state police crime scene

24  investigators, and set up crime scene tape.   Officer Perea

25  stated that Defendant did not appear upset at this point, and,

2

1  in fact, went outside and began drinking a beer.

2  {5}   The officers questioned Defendant's neighbors.  Witnesses

3  stated that they heard yelling coming from Defendant's

4  residence, followed by a loud noise, and that they observed a

5  man exit the residence and throw a bag over the fence into

6  another yard approximately ten minutes before the officers

7  arrived.  Upon searching the area described by the witnesses,

8  the officers recovered a blue towel "covered with duct tape."

9  The officers also located a piece of duct tape underneath the

10  bed where the victim was found and a roll of duct tape in one

11  of the other rooms.  The evidence indicated to the officers

12  that Defendant had strangled the victim, then used the duct

13  tape to attach the towel to the butt of the weapon and to

14  secure a potato to the end of the barrel, presumably as a

15  silencer.  The evidence also indicated to police that Defendant

16  had staged the suicide scene.

17  {6}   Dr. Jeff Nine, a forensic pathologist with the Office of

18  the Medical Investigator, found metal fragments, pieces of duct

19  tape, and potato fragments in the vicinity of the shotgun

20  wound.  He testified at trial that the wounds on the victim's

21  hands indicated that her hands were in front of the barrel of

22  the weapon, but not necessarily grabbing it, as it was fired.

23  He concluded that the victim died from a shotgun wound to her

24  chest.  However, he also stated that she had been beaten and

25  strangled prior to being shot, but he did not know if the

3

1  strangulation rendered her unconscious. When questioned

2  regarding the possibility of the victim having committed

3  suicide, Dr. Nine stated: "I don't believe there is any way

4  she could [have] done this [by] herself."

5  {7}   Shortly after the police responded to the incident,

6  Defendant was transported to police headquarters for

7  questioning; he was not yet under formal arrest. Photographs

8  of Defendant, taken at the police station, showed bloodstains

9  on his clothing and a cut on his right hand. There was also

10  blood on Defendant's boot. While awaiting questioning,

11  Defendant stated, "I can't believe she did that." Defendant

12  waived his rights under Miranda v. Arizona, 384 U.S. 436, 479

13  (1966), and consented to giving a videotaped statement to

14  police. He stated that the victim had a long history of drug

15  abuse. He also stated that she had threatened to commit

16  suicide previously and that she had pointed the shotgun at

17  Defendant's friend on a prior occasion. When initially

18  questioned by police, Defendant reiterated his account that the

19  victim had committed suicide following an argument with

20  Defendant. However, when confronted with physical evidence

21  that was inconsistent with suicide, Defendant varied his story,

22  stating that he and the victim had struggled over the gun in

23  the bedroom and that it had accidentally discharged.

24  {8}   At some point after the interview, the police obtained a

25  search warrant and "processed the scene." Defendant was

4

1  formally arrested, indicted, and charged with first degree
2  murder and tampering with evidence.  After a jury trial,
3  Defendant was convicted of second degree murder and tampering
4  with evidence.

5  **Plain Error**

6  {9}  Defendant argues that plain error occurred due to his
7  counsel's failure to file a motion to suppress evidence because
8  police officers searched his residence without a warrant.  We
9  may take notice of plain errors affecting substantial rights
10  even though a defendant did not object to the errors at trial.
11  State v. Gutierrez, 2003-NMCA-077, ¶ 19, 133 N.M. 797, 70 P.3d
12  787.  The plain error doctrine is not as strict as the doctrine
13  of fundamental error in its application.  State v. Paiz, 1999-
14  NMCA-104, ¶ 28, 127 N.M. 776, 987 P.2d 1163.  Therefore, "we
15  need not determine that there has been a miscarriage of justice
16  or a conviction in which the defendant's guilt is so doubtful
17  that it would shock the conscience of the court to allow it to
18  stand."  State v. Lucero, 116 N.M. 450, 453, 863 P.2d 1071,
19  1074 (1993).  Nevertheless, because the plain error rule is an
20  exception to the general rule that parties must raise timely
21  objection to improprieties at trial, plain error is to be used
22  sparingly.  Paiz, 1999-NMCA-104, ¶ 28.  The plain error rule
23  only applies to errors in evidentiary matters.  Gutierrez,
24  2003-NMCA-077, ¶ 19.  We apply the rule only if we have "grave
25  doubts about the validity of the verdict, due to an error that

1  infects the fairness or integrity of the judicial proceeding."

2  Id.

3  {10} Defendant relies on the United States Supreme Court's

4  holdings in Flippo v. West Virginia, 528 U.S. 11, 14 (1999)

5  (per curiam), and Mincey v. Arizona, 437 U.S. 385, 390 (1978),

6  in arguing that the officers' failure to secure a search

7  warrant until December 4, 2001 and his counsel's failure to

8  file a motion to suppress evidence affected his substantial

9  rights so as to cause plain error. As Defendant acknowledges,

10 Flippo dealt with the denial of the defendant's motion to

11 suppress based on a "murder scene exception" to the Fourth

12 Amendment. Flippo, 528 U.S. at 12-14. The Court reversed the

13 lower court, and relying on Mincey, found that there was no

14 murder scene exception and that there were no exigent

15 circumstances present. Id. The defendants in Flippo and

16 Mincey did not argue that plain error occurred or that their

17 counsel was ineffective for failing to file a motion to

18 suppress, because counsel in both cases filed pretrial motions

19 to suppress. See Flippo, 528 U.S. at 12; Mincey, 437 U.S. at

20 389. Therefore, the Supreme Court did not have to perform the

21 completely different analysis necessary to determine whether

22 plain error occurred when the evidence was admitted by the

23 trial court.

24 {11} Because plain error does not occur in a vacuum, we

25 interpret Defendant's argument to mean that the trial court

6

committed plain error in failing to suppress evidence <u>sua</u>
<u>sponte</u>.   No New Mexico case has directly addressed this issue.
However, in analogous circumstances, the Tenth Circuit in
<u>United States v. Meraz-Peru</u>, 24 F.3d 1197 (10th Cir. 1994),
used an approach we consider persuasive.   The defendant in
<u>Meraz-Peru</u> claimed that his conviction for possession of
marijuana should be reversed on appeal because he was stopped
without reasonable suspicion.   <u>Id.</u> at 1198.   He never filed a
motion to suppress the evidence at his trial, and the court
analyzed the issue for plain error.   <u>Id.</u>   In affirming the
defendant's conviction, it stated that "[a] reliable appellate
determination concerning the [merits of a motion to suppress]
is not possible in the absence of factual findings."   <u>Id.</u>   It
reasoned that when "the error defendant asserts on appeal
depends upon a factual finding the defendant neglected to ask
the district court to make, the error cannot be 'clear' or
'obvious' unless the desired factual finding is the only one
rationally supported by the record below."   <u>Id.</u> (internal
quotation marks and citation omitted).

{12}  Similarly, in this case, the factual finding that the
police unconstitutionally searched Defendant's home is not the
only one rationally supported by the record.   On the contrary,
the facts in the record indicate that Defendant called the
police reporting the alleged suicide and that he may have
consented to their presence in his home.   During his taped

7

statement to the police, Defendant stated "I called . . . first and said [the victim] shot herself. . . . I called the police and you were there." Agent Ortiz stated at trial that he was suspicious and that he knew they were "going to need a search warrant." During the cross-examination of Agent Ortiz, Defendant's counsel stated: "But prior to that search warrant [Defendant] had given consent to search his house, correct?" Agent Ortiz responded in the affirmative. The record does not otherwise give us an indication of the validity of the search warrant. Therefore, because a finding that the police illegally searched Defendant's home is not the only one rationally supported by the record, there was no plain error.

**Ineffective Assistance of Counsel**

{13} Defendant additionally argues that his trial counsel was ineffective because no reasonable strategy existed for his counsel's failure to file a motion to suppress evidence. To prevail on this argument, Defendant has the burden to establish a prima facie claim of ineffective assistance. State v. Roybal, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61. Defendant may only establish a prima facie claim by showing that his counsel's performance fell below the performance of a reasonably competent attorney and that his counsel's deficient performance prejudiced Defendant. Patterson v. LeMaster, 2001-NMSC-013, ¶ 17, 130 N.M. 179, 21 P.3d 1032. Within the context of a failure to file a motion to suppress evidence, a defendant

1  must establish that the facts support the motion and that a

2  reasonably competent attorney could not have decided that the

3  motion was unwarranted.  Id. ¶ 19.  To determine whether the

4  facts support the motion, we evaluate the facts present in the

5  record.  See Roybal, 2002-NMSC-027, ¶ 19 (stating that "[i]f

6  facts necessary to a full determination are not part of the

7  record, an ineffective assistance claim is more properly

8  brought through a habeas corpus petition"); see also State v.

9  Wilson, 117 N.M. 11, 18, 868 P.2d 656, 663 (Ct. App. 1993).

10 {14} Similar to our analysis of Defendant's plain error claim,

11 the record is devoid of facts from which we could determine the

12 effectiveness of Defendant's counsel with regard to whether

13 Defendant consented to a search or when a search warrant was

14 required.  Defendant argues that the State merely claimed

15 "perfunctorily at trial that [Defendant] consented to the

16 warrantless search of his residence."  Our review of the record

17 indicates that the issue regarding consent was simply never

18 raised.  We agree with Defendant that the State has the burden

19 to show that the search of Defendant's home fell under an

20 exception to the warrant requirement imposed by the Fourth

21 Amendment.  See State v. Mann, 103 N.M. 660, 663, 712 P.2d 6,

22 9 (Ct. App. 1985).  However, the State's burden does not arise

23 until Defendant puts facts into issue questioning the validity

24 of the search.  Id.

25 {15} Flippo does not require us to conclude that counsel's

9

1  failure to file a motion to suppress was per se unreasonable as

2  Defendant argues.   See Flippo, 528 U.S. at 13.   As we

3  previously stated, the defendant in Flippo filed a motion to

4  suppress evidence.   Id.   Defendant appears to be arguing the

5  merits of a motion to suppress evidence he never made.

6  Instead, Defendant must first point to facts in the record that

7  indicate his counsel's failure to file the motion makes this

8  one of those "rare" cases of prima facie ineffective assistance

9  of counsel.   Cf. State v. Baca, 1997-NMSC-059, ¶ 25, 124 N.M.

10  333, 950 P.2d 776.

11  {16}  This case is also distinguishable from Patterson, upon

12  which Defendant relies for the proposition that a reasonably

13  competent attorney would not have decided that the motion was

14  unwarranted.   In Patterson, the defendant argued that his

15  counsel was ineffective for failing to file a motion to

16  suppress evidence obtained during a "showup" identification.

17  Patterson, 2001-NMSC-013, ¶ 15.   Our Supreme Court, in

18  reversing the defendant's conviction, relied on facts contained

19  in the record which supported the motion to suppress.   Id. ¶ 26

20  ("It is likely that there was factual support for a motion to

21  suppress the identifications.").   The Court stated that the

22  record indicated that the showup identification was highly

23  suggestive and likely "lacked the indicia of reliability

24  necessary to outweigh the suggestiveness of that procedure."

25  Id.   The Court went on to state that there were not any facts

10

in the record "which might have led a reasonably competent attorney not to file a motion to suppress." Id. ¶ 27.

{17}  As we have discussed, the record in this case indicates that Defendant's trial counsel believed Defendant had consented to the entry of police into his home.  It also implies that Agent Ortiz was immediately suspicious and at some point realized that a search warrant would be needed.  However, except to the extent that Defendant apparently called the police to report the suicide and let them in when they arrived, we cannot determine from the record the extent of Defendant's consent or the time the police needed to obtain a warrant. See, e.g., State v. Duarte, 1996-NMCA-038, ¶ 25, 121 N.M. 553, 915 P.2d 309 (stating that a failure to file a non-meritorious motion is not ineffective assistance); State v. Baca, 115 N.M. 536, 544, 854 P.2d 363, 371 (Ct. App. 1993) (stating that trial counsel's strategy and tactics will not be second-guessed on appeal).

{18}  Moreover, even if Defendant could show that his counsel's performance fell below that of a reasonably competent attorney, he has also not shown that his counsel's failure to file the motion prejudiced his defense such that "there was a reasonable probability that the outcome of the trial would have been different." State v. Reyes, 2002-NMSC-024, ¶ 48, 132 N.M. 576, 52 P.3d 948.  Defendant argues that he was prejudiced because (1) he was not inclined to enter a plea, (2) the evidence was

11

1   not strong, and (3) "the motion to suppress 'was crucial

2   because it could have excluded key evidence.'"  A warrant was

3   obtained to search Defendant's home, and Defendant fails to

4   state with any specificity which evidence, if any, police

5   collected prior to obtaining the warrant.  Given this lack of

6   specificity, Defendant's allegation of prejudice amounts to a

7   mere assertion.  See In re Ernesto M., Jr., 1996-NMCA-039, ¶

8   10, 121 N.M. 562, 915 P.2d 318 (stating that "[a]n assertion of

9   prejudice is not a showing of prejudice").  We reject

10  Defendant's claim of ineffective assistance of counsel.

11  **Hearsay Issue**

12  {19}  Defendant additionally argues that the trial court erred

13  in allowing Officer Perea to testify to a statement made by the

14  victim.  Officer Perea testified that he was dispatched on a

15  domestic violence call to Defendant's residence on October 14,

16  2001, nearly two months prior to the incident at issue.

17  Because it was Defendant's home and Defendant indicated he

18  wanted the victim to leave, Officer Perea escorted the victim

19  off the premises.  As she was leaving, the victim stated, "next

20  time you guys see me you're going to find me dead."  The State

21  responded to Defendant's hearsay objection by arguing that the

22  statement addressed the victim's state of mind and was allowed

23  under Rule 11-803(C) NMRA.

24  {20}  Defendant argues for the first time in his reply brief

25  that we must address the applicability of the United States

12

1   Supreme Court's recent holding in <u>Crawford v. Washington</u>, 541
2   U.S. 36 (2004), with regard to this issue. Essentially,
3   Defendant argues that the victim's statement to Officer Perea
4   was "testimonial" under <u>Crawford</u> and therefore must be barred
5   because its admission violated Defendant's Sixth Amendment
6   right to "confront and cross examine the witness." However, at
7   trial, Defendant did not base his objection to the testimony on
8   constitutional grounds, but only objected to the testimony at
9   issue on hearsay grounds.  The question of whether a defendant
10  was denied the right to confrontation "may not be raised for
11  the first time on appeal." <u>State v. Lucero</u>, 104 N.M. 587, 590-
12  91, 725 P.2d 266, 269-70 (Ct. App. 1986) (refusing to reach
13  confrontation clause issue founded on general hearsay objection
14  and argument that the statement at issue did not fall within
15  any exception to the hearsay rule).  An objection raising the
16  question must be "sufficiently specific to alert the trial
17  court to the claimed constitutional errors." <u>Id.</u> at 591, 725
18  P.2d at 270.  Like <u>Lucero</u>, Defendant's hearsay objection was
19  too broad to raise a confrontation clause issue. <u>See id.</u> The
20  district court was only required to rule on the objection
21  Defendant made:  that the statement was not admissible under
22  the Rule 11-803(C) hearsay exception. <u>See Lucero</u>, 104 N.M. at
23  591, 725 P.2d at 270.
24  {21}  As to the issue of whether the district court correctly
25  ruled that the statement was admissible under Rule 11-803(C),

13

1   we review the admission of hearsay testimony under an exception

2   to the hearsay rule for abuse of discretion.  State v.

3   McClaugherty, 2003-NMSC-006, ¶ 17, 133 N.M. 459, 64 P.3d 486;

4   State v. Mora, 1997-NMSC-060, ¶ 51, 124 N.M. 346, 950 P.2d 789.

5   A trial court abuses its discretion when its "ruling is clearly

6   against the logic and effect of the facts and circumstances of

7   the case."  State v. Simonson, 100 N.M. 297, 301, 669 P.2d

8   1092, 1096 (1983).

9   {22}  The State offered the testimony as a hearsay exception

10  under Rule 11-803(C).  Rule 11-803(C) states:

11          **Then existing mental, emotional or physical**
12      **condition.**  A statement of the declarant's then
13      existing state of mind, emotion, sensation or
14      physical condition (such as intent, plan, motive,
15      design, mental feeling, pain and bodily health), but
16      not including a statement of memory or belief to
17      prove the fact remembered or believed unless it
18      relates to the execution, revocation, identification
19      or terms of declarant's will.

20  {23}  Rule 11-803(C) is applicable in situations in which a

21  defendant puts an alleged victim's state of mind at issue by

22  arguing self-defense or suicide.  State v. Baca, 120 N.M. 383,

23  389, 902 P.2d 65, 71 (1995); see also State v. Swavola, 114

24  N.M. 472, 478, 840 P.2d 1238, 1244 (Ct. App. 1992) (stating

25  that an utterance by the victim is relevant to the victim's

26  state of mind under Rule 11-803(C) when the defendant argues

27  self-defense and the statement tends to reduce the likelihood

28  that the victim was the initial aggressor).  Defendant took

29  such an approach in this case.  His statements to police raised

14

1  issues of suicide, accidental shooting, and self-defense.  He

2  requested and received jury instructions for self-defense and

3  second degree murder.  The statement "the next time you guys

4  see me you're going to find me dead" was offered to show that

5  the victim feared Defendant and was unlikely to attack him or

6  commit suicide.  Yet, due to its ambiguity, the statement

7  arguably helped Defendant as much as it did the State because

8  the jury could have just as easily interpreted the statement to

9  mean the victim intended to commit suicide.  Despite its

10  ambiguity, the statement was relevant to the issues of suicide

11  and self-defense, and the court did not abuse its discretion in

12  admitting it.

13  {24}  This case is not like <u>Baca</u>.  In that case, a young victim

14  had made the statement that she feared her father.  <u>Baca</u>, 120

15  N.M. at 389, 902 P.2d at 71.  Our Supreme Court held that the

16  statement was not admissible under Rule 11-803(C) because it

17  was not offered to show the victim's state of mind and was

18  therefore irrelevant and prejudicial.  <u>Baca</u>, 120 N.M. at 389,

19  902 P.2d at 71.  The Court expressed concern that the statement

20  created a substantial risk that the jury could consider the

21  victim's fear as "somehow reflecting on [the] <u>defendant's</u> state

22  of mind rather than the victim's."  <u>Id.</u> at 389-90, 902 P.2d at

23  71-72 (internal quotation marks and citation omitted).  The

24  defendant in <u>Baca</u> did not raise the issue of self-defense.

25  {25}  Defendant, in his reply brief, argues that there is a

15

1    reasonable probability that he was prejudiced by the statement

2    because the State used it to headline its closing argument.

3    However, we cannot say that the trial court abused its

4    discretion in allowing the statement given the admissibility of

5    the statement under Rule 11-803(C) and the wide latitude

6    afforded prosecutors and defense counsel during closing

7    argument. See State v. Venegas, 96 N.M. 61, 63, 628 P.2d 306,

8    308 (1981).

9    {26}  Based on State v. Woodward, 121 N.M. 1, 908 P.2d 231

10   (1995), the dissent would hold that the statement is best

11   construed as the victim's belief that Defendant was going to

12   kill her and is therefore inadmissible hearsay. In Woodward,

13   an appeal of a conviction of first degree murder and other

14   charges, a psychologist testified that the victim had told him

15   that the defendant "is going to kill me." Id. at 8-9, 908 P.2d

16   238-39. Our Supreme Court, relying on United States v. Joe, 8

17   F.3d 1488 (10th Cir. 1993), distinguished a statement that a

18   victim was afraid from a statement that the defendant would

19   kill the victim. Woodward, 121 N.M. at 9, 908 P.2d at 239. It

20   held that the former was admissible as a "statement of then-

21   existing mental, emotional, or physical condition," but that

22   the latter was inadmissible because it was a "statement of

23   memory or belief." Id. (internal quotation marks and citation

24   omitted). However, Defendant did not raise this distinction in

25   the trial court and does not argue it on appeal. We therefore

1  do not address it.   See State ex rel. Human Servs. Dep't v.

2  Staples, 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (stating

3  that appellate courts risk "overlooking important facts or

4  legal considerations when they take it upon themselves to

5  raise, argue, and decide legal questions overlooked by the

6  lawyers who tailor the case to fit within their legal theories"

7  in cautioning this Court against ignoring the arguments

8  presented and searching for alternative grounds for a decision)

9  (internal quotation marks and citation omitted); State v.

10  Ferguson, 111 N.M. 191, 196, 803 P.2d 676, 681 (Ct. App. 1990)

11  ("Courts should not take it upon themselves to raise, argue,

12  and decide legal issues overlooked by the lawyers.").   In

13  addition, we note that there was no issue in Woodward as to

14  self-defense or suicide.

15  **Agent Ortiz's Opinion Testimony**

16  {27}   At trial, Agent Ortiz was accepted as an expert in blood

17  stain pattern analysis and crime scene reconstruction without

18  objection.   At the beginning of his testimony, Agent Ortiz

19  stated that "Crime Scene Reconstruction is to evaluate the

20  evidence at the scene.   Gather physical evidence and you

21  evaluate it to determine to arrive at a conclusion as to what

22  occurred, what happened at the scene."   He also testified that

23  blood splatter analysis will "assist you in supporting or

24  refuting any statements by witnesses or defendants."   He stated

25  that the evidence did not support Defendant's assertion that

17

1  the victim walked down the hallway to the bedroom because there

2  were no carpet fibers on the bottom of her bare feet.  On the

3  contrary, Agent Ortiz stated that the evidence supported the

4  conclusion that the victim was carried into the bedroom.  He

5  also stated that there were pieces of duct tape and potato on

6  the victim, indicating that those substances were covering the

7  barrel of the shotgun.  Agent Ortiz was also able to track the

8  trajectory of the flight of the victim's thumb and opined that

9  she was propped up on the bed when she was shot.

10  {28}  Agent Ortiz concluded that the victim could not have

11  committed suicide because the lacerations on her hands

12  indicated that they were near the barrel when the shotgun was

13  fired, and therefore, she could not have pulled the trigger.

14  He opined that the covering of the weapon with duct tape and a

15  towel, in addition to the presence of the potato, were all

16  consistent with an effort to prevent gunshot residue from

17  depositing on the person who fired the weapon.  He stated that

18  Defendant's claim that the victim committed suicide was not

19  consistent with the physical evidence.  Defendant did not

20  object to these statements.  Agent Ortiz then gave a synopsis

21  as to the manner in which he believed the crime occurred based

22  on the evidence.  Defendant objected and the court asked the

23  prosecutor to "move along." Agent Ortiz opined that Defendant

24  fired the shotgun and used the potato as a silencer and then

25  called the police because of the loud explosion.  He stated

18

that "physical evidence does not lie" and that the evidence
indicated the victim was killed deliberately.

{29}  Defendant argues that the trial court erred in overruling
his objections to Agent Ortiz's testimony.  We review the trial
court's admission of Agent Ortiz's testimony for abuse of
discretion and we will not disturb its evidentiary ruling
absent a clear abuse of that discretion.  State v. Stanley,
2001-NMSC-037, ¶ 5, 131 N.M. 368, 37 P.3d 85.

{30}  Defendant relies on Lucero in support of his argument that
the trial court erred in admitting the testimony because Agent
Ortiz "improperly commented directly on the credibility of
[Defendant]."  Lucero is distinguishable from this case.  The
expert witness in Lucero was a psychologist who examined one of
the complaining witnesses.  Lucero, 116 N.M. at 451, 863 P.2d
at 1072.  The expert testified that the complaining witness
exhibited symptoms of post traumatic stress syndrome caused by
sexual abuse.  Id. at 451-52, 863 P.2d at 1072-73.  The expert
also commented directly on the credibility of the complaining
witness in stating that the complaining witness was consistent
both in identifying the defendant as the abuser and in
referring to the rooms in which the alleged abuse occurred.
Id. at 452, 863 P.2d at 1073.  The expert also inappropriately
commented on the demeanor of the complaining witness, which the
expert claimed changed when the complaining witness talked
about the alleged sexual abuse she had endured.  Id.  The

19

1  expert testified that "if the complainant were not telling the

2  truth, she probably would have reacted differently than she

3  did." Id.

4  {31} Our Supreme Court held that the trial court committed

5  plain error in admitting the testimony and stated that an

6  expert commenting on the credibility of the alleged victim of

7  sexual abuse was improper. Id. at 455, 863 P.2d at 1076. The

8  Court, relying on State v. Alberico, 116 N.M. 156, 861 P.2d 192

9  (1993), stated that the expert's testimony was improper because

10  it went outside the bounds of admissible testimony concerning

11  post traumatic stress disorder, which it stated was identical

12  to post traumatic stress syndrome. Lucero, 116 N.M. at 454,

13  863 P.2d at 1075. It reasoned that "[w]hile PTSD testimony may

14  be offered to show that the victim suffers from symptoms that

15  are consistent with sexual abuse, it may not be offered to

16  establish that the alleged victim is telling the truth; that is

17  for the jury to decide." Id. (internal quotation marks and

18  citation omitted).

19  {32} In this case, Agent Ortiz, as a qualified crime scene

20  reconstructionist, gave his opinion as to the credibility of

21  Defendant's version of events. He did not directly bolster the

22  testimony of any of the State's other witnesses. We agree with

23  the State that State v. Landgraf, 1996-NMCA-024, 121 N.M. 445,

24  913 P.2d 252, is directly on point. The defendant in Landgraf

25  had been charged with multiple crimes for causing an automobile

crash in which three people died. Id. ¶ 1. The prosecutor offered the testimony of police officers who stated that the defendant's "complex motor reactions demonstrated deliberation." Id. ¶ 20. We stated that the defendant had misconstrued Alberico and acknowledged that our Supreme Court had "recognized and acknowledged the continuing validity of its prior decisions that expert testimony is admissible even if it touches upon an ultimate issue to be decided by the trier of fact." Id. (internal quotation marks and citation omitted). We further stated that the jury is "free to disregard any or all such opinion testimony" and had been so instructed. Id.

{33} Agent Ortiz's testimony was similar to that of the police officer in Landgraf. His testimony touched upon the ultimate issue to be decided by the trier of fact, whether Defendant was being truthful in his assertions that the victim committed suicide or attacked him. The jury was instructed that it could entirely disregard the testimony of any or all expert witnesses. Therefore, we cannot characterize the trial court's admission of Officer Ortiz's testimony as "clearly untenable or not justified by reason." See Stanley, 2001-NMSC-037, ¶ 5 (internal quotation marks and citation omitted).

{34} Defendant additionally asserts that Officer Perea's testimony also inappropriately interpreted the evidence to implicate Defendant. We do not reach this issue because Defendant did not brief it. State v. Desnoyers, 2002-NMSC-031,

21

¶ 11, 132 N.M. 756, 55 P.3d 968 (stating that issues not argued and supported by authority deemed abandoned). Similarly, Defendant argues that his "constitutional rights to a fair trial and a jury trial under the Sixth Amendment to the U.S. Constitution and Article II, § 14 of the New Mexico Constitution were violated" because of the admission of Agent Ortiz's statements. However, Defendant cites to no authority and also fails to brief the manner in which either constitution was implicated. See Desnoyers, 2002-NMSC-031, ¶ 11. We find no error in the trial court's admission of the testimony.

**Prosecutor's Assertions During Opening Statement**

{35} Defendant additionally argues that assertions made by the prosecutor during opening statement constitute fundamental error. At the end of his opening statement, the prosecutor asserted:

> Just as you have taken an oath and have raised your hand to fairly and truly judge this case, on behalf of the people of the State of New Mexico, I promise you that Ms. Garcia and myself will conduct our case as fairly and as honestly and as truthfully as possible.

{36} Because Defendant did not object to this statement, we only review for fundamental error. State v. Gonzales, 113 N.M. 221, 229, 824 P.2d 1023, 1031 (1992); State v. Diaz, 100 N.M. 210, 212, 668 P.2d 326, 328 (Ct. App. 1983). The doctrine of "fundamental error applies only if there has been a miscarriage of justice, if the question of guilt is so doubtful that it would shock the conscience to permit the conviction to stand,

22

1  or if substantial justice has not been done." <u>State v. Dartez</u>,

2  1998-NMCA-009, ¶ 21, 124 N.M. 455, 952 P.2d 450 (internal

3  quotation marks and citation omitted).   In the context of

4  analyzing  a  prosecutor's  alleged  improper  statements,

5  "fundamental  error  arises  when  the  prosecutor  engages  in

6  misconduct that compromises the defendant's right to a fair

7  trial." <u>State v. Rojo</u>, 1999-NMSC-001, ¶ 55, 126 N.M. 438, 971

8  P.2d 829.

9  {37} Defendant's reliance on <u>Diaz</u> and <u>Baca</u> is also misplaced

10  with regard to this issue.  We agree with Defendant that it is

11  improper for a prosecutor to "precondemn a defendant on the

12  basis of the authority he represents." <u>Diaz</u>, 100 N.M. at 213,

13  668 P.2d at 329; <u>Baca</u>, 120 N.M. at 392, 902 P.2d at 75.

14  However, the prosecutor's conduct in this case did not rise to

15  the same odious level as the cases upon which Defendant relies.

16  {38} In <u>Diaz</u>, the prosecutor stated:

17       The taxpayers pay me, pay the judge, even pay
18  Mr. Lane, and they're gonna pay you for being here
19  two days.

20  Please  remember  ladies  and  gentlemen,  that  I
21  represent the State, and just like [the defendant]
22  is represented by Mr. Lane, I represent you and all
23  the other people in the Sixth Judicial District
24  which covers three counties.  You are my clients.
25  I'm here to protect your rights.  I'm here to
26  protect the security of your homes, your places of
27  business.  The people of New Mexico come in here and
28  presented this case to you * * *.
29
30  When you start putting judges on trial, Supreme
31  Court Justices, prosecutors who represent the people
32  * * *.

23

1         Just remember, the style of this case is State of
2         New Mexico versus [the defendant] * * *.  And the
3         people of this district ask you to find him guilty
4         of both counts.

5  Diaz, 100 N.M. at 213, 668 P.2d at 329.  In holding that error

6  occurred requiring reversal, we stated that the prosecutor's

7  improper statements were "substantial" and that he had made

8  "overextensive references to the authority he represents." Id.

9  at 213, 215, 668 P.2d at 329, 331.  In addition, we stated that

10 it was the combined effects of these comments in addition to

11 the prosecutor's other pronounced and persistent misconduct

12 which likely had "a probable cumulative effect upon the jury

13 which cannot be disregarded as inconsequential." Id. at 215,

14 668 P.2d at 331 (internal quotation marks and citation

15 omitted).

16 {39} In Baca, the prosecutor improperly told the jury that he

17 had a higher ethical duty than defense counsel because he, as

18 a prosecutor, was "bound by law to seek the truth," whereas the

19 defendant's counsel, as a criminal defense attorney, was not.

20 Baca 120 N.M. at 392, 902 P.2d at 74.  Our Supreme Court, in

21 reversing the defendant's convictions based on cumulative

22 error, admonished the state to avoid making the same improper

23 statements on remand. Id.  However, it did not factor these

24 comments into its cumulative error determination and expressly

25 stated that they did not amount to fundamental error. Id.

26 {40} In this case, the prosecutor did not engage in the

27 extensive and egregious misconduct admonished in Diaz and Baca.

24

1  He merely stated that he promised to present his case

2  "honestly" and as "truthfully" as possible.  While arguably

3  improper, the prosecutor's statements during opening statement

4  were not fundamental error.

5  **Prosecutor's Statements During Closing Argument**

6  {41} During the State's rebuttal closing argument, the

7  prosecutor personally admonished Defendant, stating that

8  Defendant "continues to disgrace and deface her memory.  Shame

9  on you, Gilbert Torres!  And I hope you feel my outrage.  I

10  hope that as a society . . . ."  Defense counsel objected, and

11  the trial court told the prosecutor to "tone it down."  The

12  prosecutor then stated:

13    And as a society we should feel outraged.  We are a
14    nation of law, not of men.  The true test of our
15    greatness is how well we treat the least of our
16    citizens.  The true test of our greatness is how we
17    uphold the principle that everybody's entitled to
18    life, liberty and the pursuit of happiness.

19  Defendant argues, relying on <u>Diaz</u>, 100 N.M. at 214, 668 P.2d at

20  330, <u>Ferguson</u>, 111 N.M. at 194, 803 P.2d at 679, and <u>State v.</u>

21  <u>Vallejos</u>, 86 N.M. 39, 42, 519 P.2d 135, 138 (Ct. App. 1974),

22  that the trial court erred in overruling Defendant's objection

23  to the prosecutor's statements.  We disagree.

24  {42} Because Defendant objected to the statements, we review

25  for abuse of discretion.  <u>State v. Clark</u>, 1999-NMSC-035, ¶ 52,

26  128 N.M. 119, 990 P.2d 793.  Our Supreme Court has stated:

27    The prosecution is allowed reasonable latitude in
28    closing argument.  The district court has wide
29    discretion to control closing argument, and there is

25

1       no error absent an abuse of discretion or prejudice
2       to defendant. . . . The question on appeal is
3       whether the argument served to deprive defendant of
4       a fair trial.

5  State v. Chamberlain, 112 N.M. 723, 729, 819 P.2d 673, 679

6  (1991) (citations omitted). The defendant in Ferguson objected

7  to the prosecutor's statement of "I think you should return

8  . . . a guilty verdict, for a crime here. Yes." Ferguson, 111

9  N.M. at 195, 803 P.2d at 680. The defendant immediately moved

10  for a mistrial arguing that the words "I think" in reference to

11  the verdict the jury was to give was an improper injection of

12  personal opinion into the case by the prosecutor. Id. In

13  upholding the trial court's grant of the motion for mistrial,

14  we stated that a key component of our reasoning was that the

15  standard of review was deferential to the trial court. Id.

16  (stating that deferring to the trial court in these situations

17  makes sense because "[t]he trial court judge was present, and

18  therefore she was in a better position to resolve this question

19  than we are"). We acknowledged that the trial court could have

20  reasonably decided either way on the issue and therefore

21  affirmed its ruling. Id. at 196, 803 P.2d at 681.

22  {43} In this case, Defendant objected to the prosecutor's

23  statement and the trial court expressed its concern. Defendant

24  did not move for a mistrial or request any curative instruction

25  to the jury. The trial court did not abuse its discretion by

26  not taking further action.

27  {44} This case is also distinguishable from Diaz and Vallejos.

1  In both of those cases, the prosecutors made multiple improper

2  comments, and we based our holdings on cumulative error. <u>Diaz</u>,

3  100 N.M. at 215, 668 P.2d at 331; <u>Vallejos</u>, 86 N.M. at 42, 519

4  P.2d at 138.   Moreover, in this case, the State presented

5  evidence that Defendant tried to cover up the incident,

6  repeatedly attempted to portray the victim in a negative light

7  by referring to her drug use, and changed his story at least

8  twice when questioned about the shooting by police.   It would

9  not have been an abuse of discretion for the trial court to

10 have ruled that the prosecutor's statements that Defendant

11 continued to disgrace the victim's memory were a fair comment

12 on the evidence.   See <u>State v. Lamure</u>, 115 N.M. 61, 67, 846

13 P.2d 1070, 1076 (Ct. App. 1992) ("Comments on the evidence are

14 not error or fundamental error.").   Given the facts of this

15 case and our deferential standard of review, the trial court

16 did not abuse its discretion in allowing counsel's statements

17 during closing argument.

18 **Cumulative Error**

19 {45}  Finally, Defendant's claim of cumulative error also fails

20 because the trial court did not commit the many errors

21 Defendant claims were cumulative.   <u>State v. Perea</u>, 2001-NMCA-

22 002, ¶ 26, 130 N.M. 46, 16 P.3d 1105.

23 **Conclusion**

24 {46} For the foregoing reasons, we affirm Defendant's

25 convictions for second degree murder and tampering with

27

1  evidence.

2  {47}  **IT IS SO ORDERED.**

3
4                                          JAMES J. WECHSLER, Judge
5  I CONCUR:

6
7  LYNN PICKARD, Judge

8  MICHAEL E. VIGIL, Judge (concurring in part and dissenting
9  in part).

28

**VIGIL, Judge (concurring in part and dissenting in part).**

{48}   I concur with the majority opinion in all respects except its conclusion that the victim's hear say statement that, "next time you guys see me you're going to find me dead" was admissible under Rule 11-803(C) as a state of mind exception to the hearsay rule.   I conclude that the statement was not admissible into evidence under Rule 11-803(C) and that its admission into evidence constituted reversible error.

{49}   Police Officer Joshua Perea was the second officer to arrive at Defendant's home on December 3, 2001.   He was also the State's second witness.   Before Officer Perea was asked about the events of December 3, 2001, he testified about an incident which occurred on October 14, 2001, nearly two months before.   Officer Perea testified he was back-up on a domestic violence call to Defendant's home involving Defendant and the victim.   "[W]e walked into the house and the house was kind of [in] disarray.   Looked like a fight had taken place."   Officer Perea related that Defendant and the victim had both been drinking and Defendant was stating that he wanted the victim out of the house, that he was tired of her, and did not want a relationship with her anymore.   The following then occurred:

>      [PROSECUTOR]:  Uh, did you get an opportunity to speak with [victim] that day in October?

>      OFFICER PEREA:  I don't recall speaking with her.   I was there listening as she was making comments on who did.   I know we did give her some uh, information about places that she could stay to

get out of there.   Anything from a hotel to a domestic shelter.

[PROSECUTOR]:  And is there anything that she directly said that evening.

[DEFENSE COUNSEL]:   Objection your Honor, hearsay.

[PROSECUTOR]:  Goes to victim's state of mind.

JUDGE:  Overruled, go ahead.

[PROSECUTOR]:  Okay and can you tell us what was said that evening?

OFFICER PEREA:  After they were done loading the car with the stuff, we were all getting ready to leave and she was getting off from the couch, just before she got up she made a statement uh, next time you guys see me you're going to find me dead.

[PROSECUTOR]:  And how did she appear to you that evening?

OFFICER PEREA:  She seemed kind of groggy, like she wasn't really upset, she wasn't hyperactive like I honestly she may have possibly be[en] under the influence of something, but I wasn't completely sure.

[PROSECUTOR]:  Do you know if she smelled like alcohol that evening or?

OFFICER PEREA:  Yes she had been drinking.

[PROSECUTOR]:  And did you ask anything of her son in response?

OFFICER PEREA:  Her son was going off I believe the whole time.  He made a comment, come on Gilbert tell them how you are threatening to get your hells angels friends to kill my mom or something like that.

[DEFENSE COUNSEL]:  Judge.

JUDGE:  Sustained.

30

1      [DEFENSE COUNSEL]:   I and I move that that be
2  stricken and that the jury disregard that statement.

3      JUDGE:   It will be stricken and the jury will
4  disregard it.

5      [PROSECUTOR]:   Any thing else you did in
6  response to the call in October of 2001?

7      OFFICER PEREA:   Just made sure that she left
8  the residence.

9      [PROSECUTOR]:   And did Gilbert Torres ask her
10 to leave that night?

11     OFFICER PEREA:   Yes.

12 It was in the foregoing context during the State's case in

13 chief before any statements of Defendant were admitted into

14 evidence that the victim's hearsay statement, "next time you

15 guys see me you're going to find me dead" was admitted as

16 substantive evidence.

17 {50}  The admission or exclusion of hearsay evidence lies

18 within the discretion of the trial court.  State v. Balderama,

19 2004-NMSC-008, ¶ 46, 135 N.M. 329, 88 P.3d 845 ("We review the

20 trial court's admission of hearsay statements for an abuse of

21 discretion.").  I conclude that admission of the evidence was

22 erroneous and therefore an abuse of discretion.  See State v.

23 Brown, 1998-NMSC-037, ¶ 39, 126 N.M. 338, 969 P.2d 313

24 (stating an abuse of discretion in admitting evidence may

25 occur when its admission is "obviously erroneous."  (internal

26 quotation marks and citation omitted)).

{51}   The evidence was admitted under Rule 11-803(C), which provides that certain evidence is not excluded by the hearsay rule which includes:

> C.   Then Existing Mental, Emotional or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will.

Id.

{52}   This rule allows a declarant's out of court statement of her then-existing state of mind or emotion to be admitted into evidence.   However, as the majority agrees, the victim's statement is ambiguous. At best, it is only a declaration ("next time you see me I'll be dead"). In context, the victim might have been asserting to Officer Perea that the next time he saw her she would be dead because Defendant's "hells angels friends" were going to kill her.   The statement is not an expression of a state of mind or emotion (such as "I am afraid").   The statement was therefore not admissible.   Rule 11-802 NMRA ("Hearsay is not admissible except as provided by these rules or by other rules adopted by the Supreme Court or by statute.").

{53}   The hearsay statement was inadmissible for the additional reason that it was irrelevant.   "For an extrajudicial statement of a declarant's state of mind to be admissible, the

32

state of mind must be relevant." <u>Baca</u>, 120 N.M. at 389, 902 P.2d at 71.   The state of mind evidence must prove or negate action or inaction of the declarant that is relevant to the case.   While the victim's state of mind may be relevant in issues of "(1) self defense (rebutted by extrajudicial declarations of the victim's passive state of mind), (2) suicide (rebutted by statements inconsistent with a suicidal bent), and (3) accident (rebutted by victim's fear of placing self in way of such harm)." <u>Id.</u>   The majority suggests that the victim's statement was relevant because it related to a claim of suicide and self defense.   I disagree.

{54}   The State alleged that Defendant killed the victim with a deliberate intent, and charged him with first degree murder. To prove its case of first degree murder the State introduced two recorded statements Defendant gave to the police. Initially, Defendant contended that he and the victim had argued, victim cut her leg on broken pottery, and she went into the bedroom.   Defendant first claimed he heard the shotgun blast come from the bedroom as he sat at his computer. He told the officers about her problems with drugs and the law and claimed she had threatened suicide before.   When Defendant was confronted with the physical evidence that was inconsistent with a suicide, and the officers told him they did not believe him, his story changed and he gave a second statement.   He now said that while they were arguing the

33

victim pulled the shotgun and she was shot accidentally when he tried to take it away from her.  He denied any knowledge of the duct tape, blue towel, or potato, but subsequently admitted he put the towel on the gun trigger, claiming he did so to keep the victim from firing the shotgun.  The State introduced these statements into evidence during its case in chief _after_ Officer Perea testified as part of its effort to prove first degree murder.  Defendant did not testify. However, Defendant introduced evidence of an incident in which the victim allegedly pulled the shotgun on another person to corroborate the self defense claim his attorney later made in closing argument.  Under the circumstances, the victim's statement "next time you see me I'll be dead" did not tend to prove or disprove whether she killed herself.  Furthermore, because of its inherent ambiguity, it did not tend to prove or disprove whether the victim attacked defendant two months later, or whether she was accidentally killed.  Cf. _Swavola_, 114 N.M. at 478, 840 P.2d at 1244 (stating that the victim's statement that he desired to reconcile with Defendant was relevant where self defense asserted because it reduced the likelihood he was the first aggressor).

{55}  The statement is most easily construed as a belief by the victim that Defendant was going to kill her.  "In general, where state of mind testimony is sought to be used in an attempt to demonstrate the truth of the underlying facts

34

rather than solely to show state of mind, the evidence must be excluded." Baca, 120 N.M. at 389, 902 at 72 (quoting United States v. Brown, 490 F.2d 758, 763 n.10 (D.C. Cir. 1973). The rule itself excludes the admission of "a statement of memory or belief to prove the fact remembered or believed." Rule 11-803(C). In Woodward, 121 N.M. at 1, 908 P.2d at 231 the defendant was convicted of killing his estranged wife. Over his objection the victim's statement to a psychologist "[he] is going to kill me" was admitted into evidence. Id. at 8-9; 908 P.2d at 238-39. The Supreme Court held this was a "statement of memory or belief" rather than a statement of then-existing mental, emotional, or physical condition, and inadmissible. Id. at 9, 908 P.2d at 239. Woodward explains that while Rule 11-803(C) allows the admission of a declarant's then existing mental or emotional condition, the reason why the declarant has the state of mind is not admissible. The example given by the Supreme Court is from Joe, 8 F.3d at 1492-93, in which the defendant was convicted of killing his estranged wife. Eight days before the murder, she saw a doctor who treated her for rape. During the treatment, she told the doctor she was afraid because the defendant had threatened to kill her. Id. at 1491. Our Supreme Court approved the Joe holding that the first part of the statement that she was afraid was admissible as statement of then-existing mental, emotional, or physical condition but

35

1 the statement that the defendant would kill her was a

2 prohibited "statement of memory or belief." Id. at 1493;

3 Woodward, 121 N.M. at 9, 908 P.2d at 239. See also Baca, 120

4 N.M. at 389, 902 P.2d at 71 (stating that while Rule 803(C)

5 "allows hearsay statements that show the declarant's then

6 existing mental condition, the rule does not permit evidence

7 explaining why the declarant held a particular state of mind."

8 (citing United States v. Liu, 960 F.2d 449, 452, (5th Cir.

9 1992) (a witness could properly testify that the declarant

10 (the defendant) "was scared" and that he had a fear of getting

11 killed, but not why)).

12 (56) I also conclude that the erroneous admission of the

13 victim's hearsay statement was not harmless error. See State

14 v. McClaugherty, 2003-NMSC-006, ¶ 32, 133 N.M. 459, 64 P.3d

15 486; State v. Morales, 2002-NMCA-052, ¶ 24, 132 N.M. 146, 45

16 P.3d 406. In Baca, the defendant's three-year-old daughter

17 was found with defendant's dead wife. The State presented

18 evidence that the defendant killed his wife then drove his

19 dead wife and daughter to a remote area, where he ran over

20 them. 120 N.M. at 386, 902 P.2d at 68. The daughter saw a

21 social worker who was allowed to testify that the daughter

22 made a nonverbal statement by nodding her head "yes" that she

23 was afraid of her father when he asked her if she was afraid

24 of him. Id. at 387, 902 P.2d at 69. Our Supreme Court held

25 that admission of the hearsay statement was not only improper,

36

but prejudicial, because of the danger that the jury would consider the statement as reflecting on the defendant's state of mind as a true indication of his intentions, actions, or culpability, rather than the victim's.  Id. at 389-90, 902 P.2d at 71-72.  Where there is a strong likelihood that the jury will make such an inference, "injurious prejudice" is "particularly evident." Id. (quoting Brown, 470 F.2d at 766). The prosecutor's opening words in closing argument were: "[Victim's] prophesy came true:  'The next time you see me you are going to find me dead.'  She told Officer Josh Perea of the Los Lunas Police Department.  And sure enough, the next time Josh Perea saw [Victim], he saw her dead."  The prosecutor then highlighted the physical evidence which it argued demonstrated a first degree murder and Defendant's inconsistent statements about what occurred, while referring to the hearsay statement again.  The inadmissible evidence was therefore used to demonstrate that Defendant killed the victim and to show his state of mind, not the victim's.  This was not harmless error.  Baca, 120 N.M. at 390, 902 P.2d at 72 (holding that the use of a hearsay statement was an attempt to demonstrate something other than the victim's state of mind and that it was unfairly prejudicial).  In light of the foregoing conclusions, I need not address whether, or to what extent, Crawford applies.

37

{57}   I would reverse Defendant's conviction and remand for a new trial excluding the victim's hearsay statement.  Since the majority disagrees, I dissent.


_____
MICHAEL E. VIGIL, Judge