IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF NEW MEXICO

GILBERT E. TORRES, JR.,

    Petitioner,

v.                            Civil No. 10-1199 JB/LAM

ANTHONY ROMERO, Warden,

    Respondent.

### PETITIONER'S REPLY TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

Petitioner, GILBERT E. TORRES, JR., by and through his attorney, Todd Hotchkiss of Frechette & Associates, P.C., hereby replies to the Respondent's Answer (Doc.7) to Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Doc.1).

Petitioner respectfully requests this Court to deny Respondent's request to deny and dismiss the Petition.

**ARGUMENT**

**I. Under the Federal Habeas Corpus Standard of Review, the Petition Should Not Be Denied or Dismissed, and Instead Should be Granted.**

Contrary to the Answer (Doc.7 at 6), Petitioner alleged or established the state court proceedings resulted in a decision contrary to, or involving the unreasonable application of, federal law as determined by the United States Supreme Court (USSC).

The Petition (Doc.1 at 9, 14, 23-26) alleged and established

1

that the precedents of the USSC in <u>Flippo v. West Virginia</u>, 528 U.S. 11 (1999), <u>Thompson v. Louisiana</u>, 469 U.S. 17 (1984) and <u>Mincey v. Arizona</u>, 437 U.S. 385 (1978) merited trial counsel to file a motion to suppress evidence and the state court's decision was contrary to those precedents and unreasonable.  Petitioner did not consent to the warrantless searching of his residence. (Doc.1 at 25-27)  Also, due to the undisputed testimony at the state habeas hearing that probable cause to believe a crime occurred did not exist for hours, until 3:00 a.m. the next day, while police officers conducted warrantless searching of the house, in light of the USSC precedent of <u>Beck v. Ohio</u>, 379 U.S. 89 (1964), the state court's decision was contrary to this precedent and unreasonable. (Doc.1 at 27-28)  Also, under the USSC precedents of <u>Payton v. New York</u>, 445 U.S. 573 (1980), <u>Mincey v. Arizona</u>, and <u>Michigan v. Tyler</u>, 436 U.S. 499 (1978), and the precedents of the United States Court of Appeals for the Tenth Circuit of <u>United States v. Reeves</u>, 524 F.3d 1161 (10th Cir. 2008), <u>United States v. Porter</u>, 594 F.3d 1251 (10th Cir. 2010), <u>United States v. Maddox</u>, 388 F.3d 1356 (10th Cir. 2004), <u>United States v. Bute</u>, 43 F.3d 531 (10th Cir. 1994), <u>United States v. Lugo</u>, 978 F.2d 631 (10th Cir. 1992), <u>Lundstrom v. Romero</u>, 616 F.3d 1108 (10th Cir. 2010), <u>DiCesare v. Stuart</u>, 12 F.3d 973 (10th Cir. 1993), <u>Winters v. Board of County Comm'rs</u>, 4 F.3d 848 (10th Cir. 1993), and <u>Franz v. Lytle</u>, 997 F.2d 784 (10th Cir. 1993), exigent circumstances did not exist and the state court's decision was contrary to these precedents and unreasonable. (Doc.1 at 28-33)

Also, under the USSC precedent of Minnesota v. Dickerson, 508 U.S. 366 (1993) and the precedents of the Tenth Circuit of United States v. Thomas, 372 F.3d 1173 (10th Cir. 2004), DiCesare v. Stuart, and United States v. Bonitz, 826 F.2d 954 (10th Cir. 1987), the plain view exception did not apply and the state court's decision was contrary to these precedents and unreasonable. (Doc.1 at 33) Also, under the USSC precedent of Flippo v. West Virginia, there is no "murder scene exception" to the warrant requirement and the state court's decision was contrary to this precedent and unreasonable. (Doc.1 at 34) Finally, under the USSC precedents of Brown v. Illinois, 422 U.S. 590 (1975) and Wong Sun v. United States, 371 U.S. 471 (1963), and the precedents of the Tenth Circuit of United States v. Welker, 689 F.2d 167 (10th Cir. 1982), United States v. Wald, 216 F.3d 1222 (10th Cir. 2000), United States v. Melendez-Garcia, 28 F.3d 1049 (10th Cir. 1994), United States v. Maez, 872 F.2d 1444 (10th Cir. 1989) and United States v. Recalde, 761 F.2d 1448 (10th Cir. 1985), the physical evidence seized from the residence and Petitioner's answers to questions from police officers during questioning at the police station based on the illegally discovered evidence was fruit of the poisoned tree, and the state court's decision was contrary to these precedents and unreasonable. (Doc.1 at 34-36)

    Contrary to the Answer (Doc.7 at 6), Petitioner alleged or established the state court proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in state court proceedings.

The state court ruled that Petitioner consented to the police officers' warrantless entries to and searching of his residence, despite the undisputed fact there was no evidence he clearly consented to the warrantless entries and searching when Petitioner called to report the suicide of his ex-wife.  There was no evidence Petitioner consented either orally or in writing to the warrantless entries and searching.  New Mexico State Police (NMSP) Agent Arthur believed Los Lunas Police Department (LLPD) Lieutenant Nuanes had acquired written consent from Petitioner to search his residence. Nuanes testified he never did.  NMSP Agent Ortiz testified he understood NMSP Agent Applegate had secured oral consent from Petitioner to search his residence.  Applegate did not speak with Petitioner until at LLPD at approximately 3:30 a.m. on December 4, 2001.  Ortiz testified the consent about which Ortiz testified at trial in response to Attorney Campbell's question was the alleged consent Applegate did not give Ortiz.  Ortiz also testified that he thought LLPD had received consent from Petitioner to search his residence.  There was no evidence that anyone from LLPD secured Petitioner's consent. (Doc.1 at 9-10)  The decision by the state court that Petitioner consented to the warrantless searches of the residence was based on an unreasonable determination of the facts in light of the evidence presented in state court proceedings.

The state court also ruled that the warrantless entries to and searching of the residence by police officers was in furtherance of

4

their duties under the community caretaker exception or exigent circumstances exceptions to the warrant requirement.

LLPD Officer Wroten responded to the LLPD dispatch about the reported suicide and arrived first, contacted Petitioner inside the residence, Petitioner took Wroten to the back bedroom, Wroten observed Ms. Pace's dead body, determined the woman was dead, made other observations, did not seize any evidence at that time, and knew Petitioner was the only other person at the residence.  There was no further emergency, no imminent danger to anyone, no aid to render, and no further life to save.

LLPD Officer Perea arrived after Wroten had exited, and, without allowance by Petitioner, walked through the residence to the back bedroom where the dead body laid, made other observations, did not seize any evidence during his warrantless entry, secured the scene, and called LLPD Detective Harris.

LLPD Detective Harris responded and arrived, Perea let Harris into the residence, and Harris walked through the residence to the back bedroom where he observed the dead body, made other observations, exited, and spoke with Perea and Wroten.

The LLPD officers convinced Petitioner to leave the scene and go to LLPD.  Harris then called the NMSP Crime Scene Team to assist.  During the approximately 1½ to 4 hours after Petitioner left the residence, NMSP Crime Scene Team agent Shane Arthur arrived at 9:01 p.m., Mike Applegate at 9:22 p.m., Ramon Casaus at 11:00 p.m., and Art Ortiz at 11:30 p.m.

Also, the investigation at and in Petitioner's residence by LLPD officers and NMSP agents was a suicide investigation until after midnight when it turned into a homicide investigation, according to the NMSP Crime Scene Team agents.

Contrary to the Answer (Doc.7 at 6), Petitioner offered clear and convincing evidence to rebut the presumption of correctness of the state court's factual findings. Petitioner herein has shown how the evidence at the state habeas hearing showed that the state court's factual findings regarding consent and community caretaker or exigent circumstances were erroneous; it also rebuts the presumption of correctness of the findings.

Contrary to the Answer (Doc.7 at 6), any error in the state court criminal proceeding was not harmless.

The error of counsel not filing a motion to suppress evidence was not harmless. The motion to suppress was meritorious and there was a reasonably probability the verdict would have been different absent the excludable evidence. There were no other witnesses to the alleged murder. The warrantless searching of Petitioner's residence after Officer Wroten discovered the body of Ms. Pace and exited the residence was without consent or exigent circumstances or any other exception to the warrant requirement. Detective Harris admitted he did not apply for a search warrant then because probable cause did not exist. Relying on what officers and agents learned during the warrantless searching, they questioned Petitioner at LLPD for the first time about what they learned in his residence. As a

result of that questioning, Petitioner was arrested for tampering with evidence. As a result of the hours of warrantless searching, NMSP Agent Arthur testified that a consensus was reached at 3:00 a.m. the next day that police finally had probable cause. Petitioner was then questioned a second time after 3:30 a.m., again with officers and agents relying on what they learned during the hours of warrantless searching of Petitioner's residence. The search warrant was applied for and approved at 8:00 a.m., more than 12 hours after the warrantless entries and searching began.

Therefore, the warrantless searching of the residence was without any exception to the warrant requirement, the State failed to meet its burden to show the warrantless searching was reasonable, the State failed to show the consent was clear and unequivocal by clear and positive testimony, the questioning and arrest of Petitioner was based on the unconstitutional searching of the residence, the development of probable cause was based on the unconstitutional searching of the residence, and the fruit of the poisonous tree would deprive the search warrant of the probable cause that Detective Harris admitted he lacked before the warrantless searching commenced. Therefore, the error in not filing a motion to suppress by trial counsel was not harmless.

Contrary to the Answer (Doc.7 at 7), the deferential standard of review is not "especially applicable" because the same state district court judge who entered the judgment and sentence also reviewed and ruled on the state court habeas corpus petition when

credibility of witnesses is not the issue. Petitioner has explained the various errors in the factual findings and the application of law to the facts which the state district court judge made.

Contrary to the Answer (Doc.7 at 7), the ineffective assistance of counsel (IAC) claim that counsel failed to file a meritorious motion to suppress evidence was not "reviewed and decided in the direct appeal proceedings". Because no motion to suppress was filed by trial counsel at trial, on direct appeal the failure to file such a motion to suppress was raised as plain error and IAC and the New Mexico Court of Appeals (COA) rejected those claims because the record was not sufficient.

As stated in the Answer (Doc.7 at 7), the IAC claim that trial counsel failed to file a meritorious motion to suppress evidence was reviewed and decided "in the state habeas corpus review". Petitioner exhausted his state court remedies.

Contrary to the Answer (Doc.7 at 8, ¶17), the three USSC cases cited therein do not preclude the granting of Petitioner's Petition. Harrington v. Richter, 131 S.Ct. 770 (2011) concerned an allegation that counsel was ineffective for not consulting blood evidence experts. Wong v. Belmontes, 130 S.Ct. 383 (2010) and Bobby v. Van Hook, 130 S.Ct. 13 (2010) concerned allegations that counsel were ineffective for not investigating penalty-phase mitigation evidence during capital cases. These cases are not analogous to this case.

Contrary to the Answer (Doc.7 at 8, ¶18), the decision of the COA and the New Mexico Supreme Court (NMSC) denying a petition for

writ of certiorari on direct review does not support Respondent's argument that the Petitioner's Petition should be denied and dismissed with prejudice.  Because no motion to suppress was filed by trial counsel at trial, on direct appeal the failure to file such a motion to suppress was raised as plain error and IAC and the COA rejected those claims because the record was not sufficient.  Also, Petitioner has relied upon "clearly established federal law", as defined by Yarborough v. Alvarado, 541 U.S. 652 (2004). *See* pages 2-3, *supra*; Doc.1 at 22-36.

As pointed out in the Answer (Doc.7 at 8-9), the state court's determination under the standard of Strickland v. Washington, 466 U.S. 668 (1984) was not merely incorrect but unreasonable.

## II.   **Stone v. Powell Does Not Preclude Review and Relief for The Fourth Amendment Claim Incorporated in the Ineffective Assistance of Counsel Complaint.**

Contrary to the Answer (Doc.7 at 9), the Fourth Amendment issue within the IAC claim was not "reviewed on direct appeal and denied" by the NMSC and Stone v. Powell, 428 U.S. 465 (1976) is not a bar.

No motion to suppress evidence was filed or litigated by trial counsel during the trial phase in the trial court, and the COA and NMSC did not directly review any Fourth Amendment issues on direct appeal.  The claim or issue raised by Petitioner in his 2254 petition is that his trial counsel rendered IAC contrary to the Sixth Amendment for failing to file and litigate a motion to suppress evidence under the Fourth Amendment.

The United States Supreme Court in Stone v. Powell, 428 U.S. at 494 n.37 qualified its holding: "In sum, we hold only that a federal court need not apply the exclusionary rule on habeas review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review." *See* Redford v. Smith, 543 F.2d 726, 731 (10th Cir. 1976); Chavez v. Rodriquez, 540 F.2d 500, 501-502 (10th Cir. 1976); Webster v. Attorney General of State of Oklahoma, 213 Fed. Appx. 664, 667 (10th Cir. 2007)(unpublished).

The record shows counsel denied Petitioner the opportunity for a full and fair litigation of any motion to suppress at trial. Furthermore, the COA denied Petitioner's argument that plain error occurred because trial counsel failed to file a motion to suppress evidence. (Doc.7-3 at 27-30; Doc.7-4 at 17-20)  The COA refused to entertain the plain error argument:

> Similarly, in this case, the factual finding that the police unconstitutionally searched Defendant's home is not the only one rationally supported by the record. On the contrary, the facts in the record indicate that Defendant called the police reporting the alleged suicide and that he may have consented to their presence in his home.  During his taped statement to police, Defendant stated, "I called ... first and said [the victim] shot herself ....  I called the police and you were there."  Agent Ortiz stated at trial that he was suspicious and that he knew they were "going to need a search warrant."  During the cross-examination of Agent Ortiz, Defendant's counsel stated:  "But prior to that search warrant [Defendant] had given consent to search his house, correct?"  Agent Ortiz responded in the affirmative.  The record does not otherwise give us an indication of the validity of the search warrant.  Therefore, because a finding that the

> police illegally searched Defendant's home is not the
> only one rationally supported by the record, there was
> no plain error."

(Doc.7-3 at 30; Doc.7-4 at 20)

Similarly, the COA refused to address the IAC claim. (Doc.7-3 at 30-34; Doc.7-4 at 20-24) "However, except to the extent that Defendant apparently called the police to report the suicide and let them in when they arrived, we cannot determine from the record the extent of Defendant's consent or the time police needed to obtain warrant." (Doc.7-3 at 33; Doc.7-4 at 23)

Therefore, the Fourth Amendment issue within the IAC claim was <u>not</u> "reviewed on direct appeal and denied by the New Mexico Supreme Court" and Petitioner's claim is a cognizable federal habeas corpus claim under <u>Stone v. Powell</u>.

Also, Petitioner was denied an opportunity for a full and fair litigation of his Fourth Amendment claims where the state courts failed to consider his arguments in reliance on USSC cases on point, such as <u>Flippo</u>, <u>Thompson</u>, <u>Mincey</u>, <u>Payton</u>, <u>Tyler</u>, <u>Dickerson</u>, <u>Brown v. Illinois</u>, and <u>Wong Sun v. United States</u>. *See* <u>Gamble v. Oklahoma</u>, 583 F.2d 1161 (10th Cir. 1978).

Contrary to the Answer (Doc.7 at 10), Petitioner did not have an opportunity for the Fourth Amendment claim to be fully and fairly litigated during trial or on direct appeal. Contrary to the Answer (Doc.7 at 10, the state court record shows that the Fourth Amendment claim was not litigated during trial or on direct appeal.

11

## CONCLUSION

WHEREFORE, Petitioner GILBERT E. TORRES, JR., respectfully requests this Court to deny Respondent's request to deny and dismiss the Petition and instead to grant the Petition.

> Respectfully submitted,
>
> /s/ Todd Hotchkiss
> TODD HOTCHKISS
> FRECHETTE & ASSOCIATES, P.C.
> Attorney for GILBERT E. TORRES, JR.
> P.O. Box 26807
> Albuquerque, New Mexico  87125
> Tele. (505) 247-8558
> E-mail: tbhotchkiss@frechettelaw.com

## CERTIFICATE OF SERVICE

I, Todd Hotchkiss, hereby certify that on February 17, 2011 I electronically filed the foregoing Reply through the CM/ECF system and that through that system opposing counsel Margaret McLean, Assistant Attorney General, will be served with a true and accurate copy of this Reply.

> /s/ Todd Hotchkiss
> TODD HOTCHKISS