IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GILBERT E. TORRES, JR.,**

      **Petitioner,**

      **v.**                                             **CV 10-1199 JB/LAM**

**ANTHONY ROMERO,**

      **Respondent.**

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Petitioner Gilbert E. Torres, Jr.'s 28 U.S.C. § 2254 petition [*Doc. 1*], filed December 16, 2010. Respondent filed his answer to the petition on February 3, 2011. [*Doc. 7*]. Petitioner filed a reply to Respondent's answer on February 17, 2011. [*Doc. 8*]. United States District Judge James O. Browning referred the claims raised in the petition to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 4*]. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned recommends, for the reasons set forth below, that the claims raised in Mr. Torres' *Petition For Writ of Habeas Corpus Under 28 U.S.C. § 2254 (Doc. 1)* be **DENIED** because they are without merit, and that this case be **DISMISSED with prejudice**.

Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary. *See Anderson v. Attorney General of Kansas*,

---

[1] Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

425 F.3d 853, 858-59 (10th Cir. 2005) (evidentiary hearing unnecessary if § 2254 habeas claim can be resolved on the record).

In his Petition, Mr. Torres claims that his trial counsel was ineffective for failing to file a motion to suppress evidence seized from Mr. Torres' residence, and the fruits from the warrantless searches of his residence, because law enforcement officers did not obtain a warrant to search the residence and there was no exception to the warrant requirement of the Fourth Amendment. [*Doc. 1* at 20-37]. Mr. Torres asks the Court to reverse his convictions, vacate his sentence, and order him released from custody. *Id.* at 37.

### *I. Procedural Background*

On December 13, 2001, Mr. Torres was charged with an open alternative count of the murder of Pamela Pace in the first degree or second degree and with tampering with evidence, to which he entered a plea of not guilty. [*Doc. 7-1*, Exhibit C at 1-2]. On February 14, 2003, a jury found Mr. Torres guilty of murder in the second degree and tampering with evidence, in violation of N.M.S.A. 1978 § 30-2-1(B) and 30-22-5, second and fourth degree felonies, respectively. [*Doc. 7-1*, Exhibit A at 1]. On May 19, 2003, Mr. Torres was sentenced to fifteen years on Count 1 and eighteen months on Count 2, with the counts to run consecutively for a total of sixteen and one-half years in prison. *Id.* at 1-2. Upon completion of imprisonment, Mr. Torres is subject to release under parole for a period of two years. *Id.* at 2.

Mr. Torres appealed his conviction to the New Mexico Court of Appeals ([*Doc. 7-1*, Exhibits B (*Notice of Appeal*) and C (*Docketing Statement*)]), and on April 7, 2005, the New Mexico Court of Appeals issued an Opinion affirming Mr. Torres' conviction (*State v. Torres*, 2005-NMCA-070, 137 N.M. 607, 113 P.3d 877 ([*Doc. 7-3*, Exhibit I]). On April 27, 2005, Mr. Torres filed a petition for writ of certiorari with the New Mexico Supreme Court regarding the

Court of Appeals' opinion. [*Doc. 7-4*, Exhibit J]. The New Mexico Supreme Court denied his petition for writ of certiorari on May 20, 2005. [*Doc. 7-4*, Exhibit L]. On April 17, 2006, Mr. Torres filed a petition for a writ of habeas corpus in the state district court. [*Doc. 7-5*, Exhibit N]. The state district court held two hearings on the petition and entered an order denying the petition on May 27, 2010. [*Doc. 7-6*, Exhibit Q]. On July 13, 2010, Mr. Torres filed a petition for writ of certiorari with the New Mexico Supreme Court regarding the denial of his habeas corpus petition. [*Doc. 7-7*, Exhibit R]. On August 19, 2010, the New Mexico Supreme Court summarily denied Mr. Torres' petition for writ of certiorari. [*Doc. 7-9*, Exhibit T]. On December 16, 2010, Mr. Torres filed his petition for federal habeas relief in this Court, initiating this proceeding. [*Doc. 1*]. Mr. Torres is represented by counsel in this proceeding.

## *II. Mr. Torres' Section 2254 Claim*

As previously stated, Mr. Torres claims that his trial counsel was ineffective for failing to file a motion to suppress prior to trial. In his response, Respondent submits that Mr. Torres has exhausted his claim and that no additional state court remedy is available or necessary. [*Doc. 7* at 5]. Respondent contends that the petition should be dismissed because Mr. Torres fails to show that the state court proceedings either resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Id.* at 6. Respondent further asserts that Mr. Torres has not offered clear and convincing evidence to overcome the presumption of correctness applied to the state court's factual determinations pursuant to 28 U.S.C. § 2254(e)(1). *Id.* Additionally, Respondent contends that Mr. Torres' ineffective assistance of counsel claim does not satisfy the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), and because the claim raises a Fourth Amendment issue that was

fully and fairly litigated in the state courts, it is not cognizable as a federal habeas corpus claim pursuant to *Stone v. Powell*, 428 U.S. 465 (1976). *Id.* at 7-10. Respondents ask the Court to dismiss the petition with prejudice. *Id.* at 10.

In his reply, Mr. Torres reiterates that his counsel was ineffective for failing to file a motion to suppress evidence because his residence was searched without a warrant and no exception to the warrant requirement applies. [*Doc. 8* at 1-3]. Mr. Torres also states that the state court's order finding that Mr. Torres consented to the search of his residence and that certain exceptions apply to the warrant requirement is based on an unreasonable determination of the facts in light of the evidence presented. *Id.* at 3-7. Mr. Torres further contends that he is not precluded from raising the Fourth Amendment issue within his claim for ineffective assistance of counsel because the state court of appeals did not consider the claim on direct appeal. *Id.* at 9-11.

### III. Exhaustion of State Court Remedies

A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted). The Tenth Circuit has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court. *Barnett v. LeMaster*, 167 F.3d 1321, 1323 (10th Cir. 1999). Respondent states that Mr. Torres has exhausted the claim raised in his petition because it was raised on his direct appeal and state habeas corpus proceedings and Mr. Torres filed petitions for certiorari review by the New Mexico Supreme Court in both of those proceedings. [*Doc. 7* at 5]. The Court agrees that

Mr. Torres' claim has been exhausted because it was raised on direct appeal and in his state petition for habeas corpus, and that Mr. Torres sought and was denied review of his direct appeal and his habeas petition by the New Mexico Supreme Court. [*See Doc. 7-4*, Exhibit L and *Doc. 7-9*, Exhibit T]. The Court will, therefore, proceed to consider the claim on the merits.

### *IV.* **Stone v. Powell** *Analysis*

The Court will first consider Respondent's argument that because Mr. Torres' claim raises a Fourth Amendment issue concerning the filing of a motion to suppress evidence, and because that claim was reviewed on direct appeal and denied by the New Mexico Supreme Court, Mr. Torres is not entitled to habeas relief on the ground that evidence obtained in the allegedly unconstitutional search of his residence was introduced at trial. [*Doc. 7* at 9-10] (citing *Stone v. Powell*, 428 U.S. 464, 494 (1976)). In his reply, Mr. Torres states that *Stone v. Powell* does not preclude federal habeas review of the Fourth Amendment issue incorporated in his ineffective assistance of counsel claim because the Fourth Amendment issue was not reviewed on direct appeal. [*Doc. 8* at 9-10].

The *Stone v. Powell* doctrine bars federal habeas review of a Fourth Amendment claim where the State has provided an opportunity for full and fair litigation of the claim. *Stone*, 428 U.S. at 494-95. However, this doctrine does not extend to a claim that counsel was ineffective for failing to pursue a motion to suppress evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 378-380 (1985). For this type of claim, in addition to meeting the two prongs of the *Strickland* test, a habeas petitioner must establish that his "Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Id.* at 375. Even though the parties dispute whether Mr. Torres received an opportunity for full and fair litigation of the Fourth Amendment issue, the

Court need not decide this issue because Mr. Torres is not raising a straightforward Fourth Amendment claim based on the introduction of evidence at his trial that he contends should have been suppressed. Instead, Mr. Torres' sole claim is that his counsel was ineffective for failing to file a motion to suppress evidence, and such a claim is not precluded from federal habeas review. *See* [*Doc. 8* at 9] ("The claim or issue raised by Petitioner in his [§] 2254 petition is that his trial counsel rendered [ineffective assistance of counsel] contrary to the Sixth Amendment for failing to file and litigate a motion to suppress evidence under the Fourth Amendment."). The Court, therefore, will consider Mr. Torres' ineffective assistance of counsel claim.

## V. Ineffective Assistance of Counsel Claim

### A. Facts

On December 3, 2001, Mr. Torres called the Los Lunas Police Department ("LLPD") and reported that his ex-wife, Pamela Pace, had committed suicide at his residence. [*Doc. 1* at 7]. The officer who first arrived at the residence testified that he arrived at approximately 7:00 p.m. [*Doc. 7-1*, Exhibit C at 8]. The officer who first arrived at the residence testified that when he arrived he could see through a glass storm door and "noticed debris and broken pottery on the floor and blood on the carpet." *State of New Mexico v. Torres*, 2005-NMCA-070, ¶ 2, 137 N.M. 607, 113 P.3d 877. The officers who were at the scene testified that, in the bedroom where Ms. Pace's body was found, they saw that Ms. Pace had an apparent shotgun wound to her chest, a four-to-five-inch gash on her upper left thigh with blood flowing up rather than down, badly lacerated hands, a missing thumb, blood stains on the bottom of one of her feet, marks on her throat and back of her neck, and evidence of retinal hemorrhaging. *Id.* at ¶ 3. In addition, the officers who were at the scene testified that they saw a 12-gauge shotgun leaning next to her with a badly damaged barrel that "was peeled back like a banana," a wooden backscratcher next to the shotgun,

pieces of shrapnel on the wall, pieces of duct tape and fibers of blue cloth attached to the shotgun, and shredded pieces of a potato on the ceiling. *Id.* The officers then "cleared the house, called New Mexico State Police crime scene investigators and set up crime scene tape." *Id.* at ¶ 4. They further testified that Mr. Torres "did not appear upset at this point, and, in fact, went outside and began drinking a beer." *Id.*

The officers questioned Mr. Torres' neighbors who "stated that they heard yelling coming from [Mr. Torres'] residence, followed by a loud noise, and that they observed a man exit the residence and throw a bag over the fence into another yard approximately ten minutes before the officers arrived." *Id.* at ¶ 5. The officers searched the area where the neighbors stated something was thrown and found a blue towel covered with duct tape. *Id.* Mr. Torres was transported to police headquarters and waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). *Id.* at ¶ 7. Mr. Torres initially maintained that Ms. Pace had committed suicide but, "when confronted with physical evidence that was inconsistent with suicide," he stated that he and Ms. Pace "had struggled over the gun in the bedroom and that it had accidentally discharged." *Id.* After the interview with Mr. Torres, officers obtained a search warrant and "processed the scene." *Id.* at ¶ 8.

Mr. Torres states that there is no evidence that he requested that the LLPD enter his residence to search after he called to report that his ex-wife had committed suicide at his residence. [*Doc. 1* at 7]. Mr. Torres also states that there was no evidence that he had murdered Ms. Pace. *Id.* Mr. Torres states that a search warrant was not obtained until approximately 8:30 a.m. the next day, and that the search warrant was issued pursuant to an affidavit that was "based on information learned by police during the unreasonable, warrantless night-long search of Petitioner's residence." *Id.* at 21. Mr. Torres contends that his report to the police of his ex-wife's suicide in his residence "was not consent to an all-night, ongoing search and seizure." *Id.* at 25 (citing *Mincey v. Arizona*,

437 U.S. 385 (1978), *Thompson v. Louisiana*, 469 U.S. 17 (1984), and *Flippo v. West Virginia*, 528 U.S. 11 (1999)). Mr. Torres further contends that: (1) there was no probable cause to believe Mr. Torres committed a crime until hours after Mr. Torres called the police (*id.* at 27*)*; (2) no exigent circumstances existed creating an exception to the warrant requirement because there was no threat of a continuing emergency, and destruction of evidence was not a concern because Mr. Torres was removed from the scene (*id.* at 28-33); (3) the plain view exception does not apply because the officers were not lawfully present when they observed the evidence (*id.* at 33); and (4) there is no "murder scene exception" to the warrant requirement (*id.* at 34). Mr. Torres contends that because of the unlawful searches of his residence, Mr. Torres' counsel was unreasonable in failing to move to suppress all of the physical evidence that was seized and Mr. Torres' statements to the police under the "fruit of the poisoned tree" doctrine. *Id.* at 34-36. Finally, Mr. Torres states that his trial counsel thought that Mr. Torres' call to report a suicide was a request or invitation for LLPD to search his residence (*id.* at 12), and that his trial counsel "admitted if he sought suppression of the physical evidence and the fruits of the illegally obtained evidence, the case would not have gone to trial," and that "it was not reasonable for him not to file a motion to suppress when he had not reviewed [the] *Mincey*, *Thompson* and *Flippo* [cases], making his decision 'uninformed'" (*id.* at 13-14).[2]

### B. Standard of Review

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case. The Court

---

[2]The Court notes that Mr. Torres fails to provide any citation for these statements allegedly made by his counsel, and fails to state when, and in what context, his counsel made these statements. The Court was unable to find any support in the record that Mr. Torres' counsel made these statements.

cannot grant Mr. Thomas habeas relief pursuant to 28 U.S.C. § 2254(d) unless the decision in his state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA. *See, e.g., Wright v. Van Patten*, 552 U.S. 120 (2008); *Fry v. Pliler*, 551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions. [A] state court need not even be aware of [Supreme Court] precedents,

-9-

'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court proceedings. *See* 28 U.S.C. § 2254(d). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision." *See Cook v. McKune*, 323 F.3d 825, 830–31 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision). Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). If a state court decides a claim on the merits in summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."

*Williams v. Taylor*, 529 U.S. 362, 413 (2000). However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75–76 (2003) (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76. A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no Supreme Court decision provides a clear answer to a question presented in the state court. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

### *C. Analysis*

Mr. Torres' ineffective assistance of counsel claim was considered on the merits by both the New Mexico Court of Appeals on Mr. Torres' direct appeal (*State v. Torres*, 2005-NMCA-070, 137 N.M. 607, 113 P.3d 877) and by the state district court on Mr. Torres' state habeas petition (*Doc. 7-6*, Exhibit Q) and, as such, the Court applies the deferential AEDPA standard of review and may reverse only if the state courts' holdings were "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1), *see also* Section V.B. *supra*. On Mr. Torres' direct appeal, the New Mexico Court of Appeals held that Mr. Torres' counsel was not ineffective for failing to file a motion to suppress evidence based on warrantless searches of Mr. Torres' residence because the record of the case indicates that his counsel believed that Mr. Torres had consented to the entry of police into his home. *State v. Torres*,

-11-

2005-NMCA-070, ¶ 17.  Furthermore, the appellate court found that, because Mr. Torres failed to state with any specificity what evidence was collected prior to obtaining the search warrant, he failed to show prejudice as a result of his attorney's failure to file the suppression motion such that there was a reasonable probability that the outcome of the trial would have been different.  *Id.* at ¶ 18.  On Mr. Torres' state habeas petition, the state district court held that, pursuant to *State of New Mexico v. Ryon*, 2005-NMSC-005, 137 N.M. 174, 108 P.3d 1032, "the officers had a right to enter the premises and to search the premises in furtherance of their duties as community caretakers looking for evidence of suicide."  [*Doc. 7-7*, Exhibit Q at 40].  In *Ryon*, the New Mexico Supreme Court explained that officers may enter a residence without a warrant when they are acting as community caretakers, which would include reports of a suicide, and that after entering the residence, "officers may expand the scope of the intrusion, if probable cause or reasonable suspicion arises," and that they "may also seize evidence of a crime that is in plain view," but "may not conduct a general exploratory search, unless otherwise warranted."  *Ryon*, 2005-NMSC-005 at ¶ 38.  The Court finds that these holdings are not contrary to federal law.

In evaluating an ineffective assistance of counsel claim, an attorney's performance is measured by the two-prong standard established by the Supreme Court in *Strickland v. Washington*.  466 U.S. 668 (1984).  To prevail on an ineffective assistance claim under the *Strickland* standard, Mr. Torres must show that (a) his attorney's performance fell below an objective standard of reasonableness, and (b) he was prejudiced by the attorney's deficient performance.  *Id.* at 687-88.  Both showings must be made to satisfy the *Strickland* standard.  *Id.* at 687.  To demonstrate unreasonable performance, Mr. Torres must show that his attorney made errors so serious that his performance could not be considered "reasonable[] under prevailing professional norms."  *Id.* at 688.  To demonstrate prejudice, Mr. Torres must show a reasonable probability, sufficient to undermine

confidence in the outcome, that the result of the proceeding would have been different but for his attorney's alleged unprofessional errors. *Id.* at 694. The Court begins with the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation and internal quotation marks omitted). The Court does not have to address both prongs of the *Strickland* standard if Mr. Torres makes an insufficient showing on one of the prongs. *Id.* at 697. Å

The Court finds that the state courts' holdings are not contrary to clearly established Federal law and they do not involve an unreasonable determination of the facts before them. First, the record supports the New Mexico Court of Appeals' finding that Mr. Torres' counsel believed that Mr. Torres had consented to the entry of police into his home, so Mr. Torres' counsel was not unreasonable for failing to file a motion to suppress when he was not aware there was an issue regarding consent. Mr. Torres does not state that he ever told his counsel that he had not consented to the search of his residence, only that his counsel "never found any written consent by [Mr. Torres] to search his residence." [*Doc. 1* at 12]. Mr. Torres further states that he and his counsel never discussed the issue. *Id.* (Mr. Torres states that his counsel "did not discuss with [him] whether [he] consented to search the residence."). Mr. Torres makes no showing that his counsel had any reason to think that Mr. Torres may not have consented to a search of his residence, especially in light of Mr. Torres letting the officers into his residence to see Ms. Pace's body and his waiver of his *Miranda* rights. It appears that the officers who searched Mr. Torres' residence believed that Mr. Torres had consented to the search as well. [*Doc. 1* at 9-10] (stating that Agents Arthur and Ortiz believed Mr. Torres consented to the search). It further appears that Mr. Torres' counsel

believed that Mr. Torres had consented to the search based on his cross-examination of one of the officers during Mr. Torres' trial:

| | |
|---|---|
| [Officer]: | It was suspicious.  We knew at that point we were going to need a search warrant so we contacted the District Attorney's Office. |
| [Mr. Torres' Counsel]: | But prior to that search warrant [Mr. Torres] had given consent to search his house, correct? |
| [Officer]: | That's correct. |

[*Doc. 7-2*, Exhibit F at 53].  Because Mr. Torres fails to show that his counsel was aware that there may have been an issue regarding whether or not Mr. Torres had consented to the search of his residence, Mr. Torres fails to carry his burden to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" or "the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.

Second, the Court finds that even if Mr. Torres' counsel had been aware that there was an issue of whether or not Mr. Torres consented to a search of his residence, his counsel was not ineffective for failing to file a motion to suppress because Mr. Torres has not shown what evidence would have been suppressed and how that evidence affected his trial.  While Mr. Torres states that the crime scene team was "collecting and evaluating evidence" before the warrant was obtained (*Doc. 1* at 9), Mr. Torres does not state what evidence was collected that should have been suppressed.  Such conclusory allegations fail to provide a basis for relief for Mr. Torres' claim.  *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.").  Because Mr. Torres has not made a showing that the alleged searches made of his residence prior to obtaining a warrant were anything

other than observations of the deceased and her surroundings, nor has he described any evidence that was "collected" and used against him at trial, Mr. Torres fails to show any prejudice from his counsel's allegedly deficient performance.

Finally, the Court rejects Mr. Torres' contention that the holdings in *Mincey, Thompson* and *Flippo* support his argument that his counsel should have filed a motion to suppress the evidence obtained from his residence. In *Mincey*, the United States Supreme Court held that a four-day warrantless search of an apartment where a murder had taken place was constitutionally impermissible. 437 U.S. at 388-396. The officers in *Mincey* searched the entire apartment by opening and inspecting drawers, closets, cupboards and clothing pockets, digging bullet fragments from walls and floors, and pulling up and removing sections of the carpet. *Id.* at 389. The Supreme Court explained that "the Fourth Amendment does not bar officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid," or to search for victims or other killers, and that "police may seize evidence that is in plain view during the course of their legitimate emergency activities." *Id.* at 392-93. However, the Supreme Court found that the search in that case was too broad and lengthy to fall under the emergency exception to the warrant requirement. *Id.* at 393. In *Thompson*, the United States Supreme Court held that a two-hour warrantless search of a residence where a possible murder-suicide had taken place was unconstitutional because it was a "general exploratory search for evidence of a crime." 469 U.S. at 18. The Court explained that the officers were justified in seizing evidence that was in plain view while they were in the petitioner's house to offer her assistance and search for victims or suspects, but the Court found, as it had in *Mincey*, that the pistol found inside a chest of drawers, a note found in a wastepaper basket in an adjoining bathroom, and a letter inside an envelope, all of which were found in the pre-warrant search, were not in plain view and should have been suppressed. *Id.*

at 19, 22.  Finally, in *Flippo*, the United States Supreme Court reversed the denial of a motion to suppress evidence gathered from the warrantless search of a closed briefcase found at the scene of a homicide because the state court had relied on a "murder scene exception" to the warrant requirement, which conflicts with the holding in *Mincey*.  528 U.S. at 12-14 ("This position squarely conflicts with *Mincey v. Arizona*, *supra*, where we rejected the contention that there is a 'murder scene exception' to the . . . Fourth Amendment . . . .  [P]olice may make warrantless entries onto premises if they reasonably believe a person is in need of immediate aid and may make prompt warrantless searches of a homicide scene for possible other victims or a killer on the premises, . . . but we rejected any general 'murder scene exception' as 'inconsistent with the Fourth and Fourteenth Amendments - . . . the warrantless search of Mincey's apartment was not constitutionally permissible simply because a homicide had recently occurred there.") (citations omitted).

These cases are distinguishable from Mr. Torres' case because Mr. Torres fails to show that any pre-warrant search of his residence was for anything outside of the plain view of officers who entered the residence in response to his call stating that Ms. Pace had committed suicide.  Mr. Torres states that the search of his residence consisted of officers going to the back bedroom where Ms. Pace's body was located, making observations, and talking with other officers and Mr. Torres. [*Doc. 1* at 7-8].  This is in contrast with the extensive four-day search in *Mincey*, especially when a search warrant for Mr. Torres' residence was applied for and obtained within approximately 14 hours of the officers responding to Mr. Torres' call.  *See* [*Doc. 7-1, Plaintiff's Docketing Statement*, Exhibit C at 8] (stating that the officer who first arrived at the residence testified that he arrived at approximately 7:00 p.m.), and [*Doc. 1, Petition,* at 14-15] (stating that an affidavit for a search warrant was filed in the Valencia County Magistrate Court at 8:48 a.m. on December 4, 2001, and that "[t]he District Court thereafter issued a Search Warrant for the search of [Mr. Torres']

residence"). It is also in contrast with the fact that the evidence that was found to have been illegally obtained in *Mincey*, *Thompson* and *Flippo* was evidence from inside a drawer, closets, cupboards, clothing pockets, wastepaper basket, envelope, and briefcase, whereas Mr. Torres makes no allegation that the police opened any drawers or containers prior to the search warrant. Because Mr. Torres has not made a showing that the alleged searches made of his residence prior to obtaining a warrant were anything other than observations of the deceased and her surroundings, nor has he described any evidence that was "collected" and used against him at trial, it is unlikely that a motion to suppress all of the evidence from Mr. Torres' residence, as well as his statements made to the police, would have been granted. *See U.S. v. Dixon*, 1 F.3d 1080, 1084 n.5 (10th Cir. 1993) (holding that an attorney does not provide ineffective assistance of counsel by failing to raise a meritless claim), abrogated on other grounds by *Florida v. White*, 526 U.S. 559 (1999); *U.S. v. Young*, 862 F.2d 815, 820 (10th Cir. 1989) (counsel not ineffective for failing to file motion to suppress that probably would not have been granted); *United States v. Smith*, No. 03-20036-JWL, 04-3304-JWL, 05-3013-JWL, 2005 WL 839157 at *4 (D. Kan. April 11, 2005) (unpublished) (rejecting ineffective assistance of counsel claim based on counsel's failure to file a motion to suppress evidence gathered in allegedly unlawful search of home because officers were initially allowed into home by family members and given permission to search by the defendant; however, officers subsequently obtained a search warrant). For the foregoing reasons, the Court concludes that the state court decisions rejecting Mr. Torres' ineffective assistance of counsel for failing to file a motion to suppress evidence claim are not contrary to federal law, and Mr. Torres' claim should be denied.

### *VI. Conclusion*

For the foregoing reasons, the Court finds that Mr. Torres has failed to establish that the adjudication of his claim on the merits in the state court proceedings resulted in a decision that was

contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §§ 2254(d)(1)-(2). Therefore, the Court recommends that this case be dismissed with prejudice and that Mr. Torres' *Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be denied.

## RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that the claims in Mr. Torres' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

_Lourdes a. Martínez_
**LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**