IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT E. TORRES, JR.,

    Petitioner,

vs.                      No. CV 10-1199 JB/LAM

ANTHONY ROMERO, Warden,

    Respondent.

**OBJECTIONS TO MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION (DOC.9)**

    Petitioner GILBERT E. TORRES, JR., by and through his appointed counsel, Todd Hotchkiss of Frechette & Associates, hereby submits these objections to the Magistrate Judge's May 26, 2011 proposed findings and recommended disposition (Doc.9) pursuant to 28 U.S.C. Sec. 636(b)(1), based on the contents of his submitted petition (Doc.1) and reply brief (Doc.8), the record before the court, and for the additional reasons outlined herein.

**OBJECTIONS**

    1.    The Magistrate's proposed findings overlook and misunderstand the crucial early events on December 3, 2001. Petitioner called the Los Lunas Police Department (LLPD) to report that his ex-wife, Ms. Pace, had committed suicide in his residence. LLPD Officer Wroten arrived first at approximately 7:00 p.m.,

1

Petitioner took him into his residence to the back bedroom where the victim laid, Wroten saw the victim deceased, Wroten knew there was no one else there other than Petitioner, and Wroten and Petitioner departed the residence.  (Doc.1 at 7-8; Doc.7-6 at 32-33; Doc.8 at 5)  At that point there was no emergency or exigency involved. (Doc.1 at 28-33)  Petitioner did not consent by calling LLPD regarding the suicide of to an all-night warrantless searching of his house by police, particularly under the United States Supreme Court's holdings in Thompson v. Louisiana, 469 U.S. 17, 22-23 (1984) and Mincey v. Arizona, 437 U.S. 385, 391-392 (1978). (Doc.1 at 25)

The Magistrate Court failed to consider that the subsequently arriving officers had no lawful authority to enter the residence. No consent was operating. (Doc1 at 25-27)  There was no evidence that Petitioner consented to their presence in his residence. There was no emergency or exigency in the residence. (Doc.1 at 28-33)

Also, despite mentioning that LLPD officers called the New Mexico State Police (NMSP) Crime Scene Team, the Magistrate failed to mention that the all-night searching of Petitioner's residence was largely done by the NMSP officers.  Significantly, the NMSP officers arrived at the residence 1½ to 4 hours after Petitioner left the scene. (Doc.1 at 9)

Consequently, the officers' observations inside the residence relied upon by the Magistrate were without lawful presence inside

the residence. (Doc.1 at 33; Doc.9 at 6-7)

The Magistrate failed to consider that the officers did not develop probable cause to believe that criminal activity had occurred until approximately 3:00 a.m. the next morning, after law officers searched Petitioner's residence for approximately 6-8 hours by that time. (Doc.8 at 7)

The Magistrate jumbled up the sequence of events.  The officers did not questions Petitioner's neighbors before Petitioner was transported to the police station.  The evidence is clear Petitioner was removed from the scene and transported to the police station within 30 minutes of the initial arrival of police and a couple of hours before the New Mexico State Police Crime Scene Team arrived at the scene. (Doc.1 at 7-8)

2. The Magistrate proposed to find that the New Mexico Court of Appeals, on direct appeal from Petitioner's original conviction, "considered on the merits" Petitioner's ineffective assistance of counsel claim. (Doc.9 at 11)  That is just not true. (Doc.8 at 8,11).

In fact, the Court of Appeals actually held, "the record is devoid of facts from which we could determine the effectiveness of defendant's counsel with regard to whether Defendant consented to a search or when a search warrant was required." State v. Torres, 2005-NMCA-070, ¶14, 137 N.M. 607, 113 P.3d 877.

3. The Magistrate proposed to find that the New Mexico Court

of Appeals, on direct appeal from Petitioner's original conviction, "held that Mr. Torres' counsel was not ineffective for failing to file a motion to suppress evidence based on the warrantless searches of Mr. Torres' residence because the record of the case indicates that his counsel believed that Mr. Torres had consented to the entry of police into his home." (Doc.9 at 11)  It is not true that the New Mexico Court of Appeals made that holding. (Doc.8 at 11)  Also, his counsel's belief was, as his counsel agreed, based on his counsel not considering relevant case law from the United States Supreme Court. (Doc.1 at 14)

    4.   Petitioner objects to the Magistrate's proposed finding that the state district court in the state habeas case properly held that the LLPD and NMSP officers had the right to enter Petitioner's residence under the community caretaker doctrine and <u>State v. Ryon</u>, 2005-NMCA-005, 137 N.M. 174, 108 P.3d 1032, and "these holdings are not contrary to federal law." (Doc.9 at 12)  No emergency or exigency continued to exist after Ms. Pace was found dead. (Doc.1 at 28-33; Doc.8 at 2)

    Petitioner also objects to the Magistrate's proposed finding (Doc.9 at 12) that the New Mexico Supreme Court in <u>Ryon</u> address "reports of a suicide".

    5.   Petitioner objects to the Magistrate's proposed finding "that the state courts' holdings are not contrary to clearly established Federal law and they do not involve an unreasonable determination of the facts before them." (Doc.9 at 13)  The

4

Magistrate's proposed finding that "the New Mexico Court of Appeals' finding that Mr. Torres' counsel believed that Mr. Torres had consented to the entry of police into his home, so Mr. Torres' counsel was not unreasonable for failing to file a motion to suppress when he was not aware there was an issue regarding consent" is a clearly incorrect statement of the New Mexico Court of Appeals decision.  The Court of Appeals made no "finding" of Mr. Torres' counsel's belief.  The Court of Appeals did not find that Mr. Torres' counsel was not unreasonable for failing to file a motion to suppress.  The Court of Appeals made no statement that Mr. Torres' counsel "was not aware there was an issue regarding consent".  Instead, the Court of Appeals found "the record is devoid of facts from which we could determine the effectiveness of counsel." Torres, 2005-NMCA-070, ¶14.  Petitioner objects.

    6.  Petitioner objects to the following portion of Doc.9 at 13: "Mr. Torres makes no showing that his counsel had any reason to think that Mr. Torres may not have consented to a search of his residence, especially in light of Mr. Torres letting the officers into his residence to see Ms. Pace's body and his waiver of his *Miranda* rights."  When Mr. Torres' counsel admitted at the state court habeas hearing (Doc.1 at 12-14) that he was not informed about relevant precedent from the United States Supreme Court which had existed for years when he thought there were no suppression issues. (Doc.1 at 14)  Petitioner objects.  Also, the Magistrate

incorrectly states facts.  Mr. Torres did not "let[] the officers into his residence to see Ms. Pace's body", he let one officer in, Officer Wroten. (Doc.1 at 7-8)  Petitioner did not consent to the subsequently arriving LLPD officers who entered the house after Ms. Pace's dead body was found (Doc.8 at 5) and Wroten knew that Mr. Torres was the only other person present so no continuing exigency existed, no one needed care. (Doc.1 at 8)  By the time NMSP officers arrived, Petitioner had already been removed from the scene. (Doc.1 at 8)  Petitioner objects.

7.  While "It appears that the officers who searched Mr. Torres' residence believed that Mr. Torres had consented to the search as well", (Doc.9 at 13), the record of the hearing in the state habeas proceeding clearly shows that the officers lacked any evidence of actual consent. (Doc.1 at 8-10)  The record clearly shows that no one asked for or received consent from Petitioner; officers believed other officers had but when all officers were questioned, no officer requested and no officer received consent from Petitioner. (Doc.8 at 4)  Petitioner objects.

8.  Petitioner objects to the Magistrate's proposed finding, "Because Mr. Torres fails to show that his counsel was aware that there may have been an issue regarding whether or not Mr. Torres had consented to the search of the residence, Mr. Torres fails to carry his burden to overcome the 'strong presumption'" of his counsel's reasonableness under Strickland v. Washington, 466 U.S. 668 (1984). (Doc.9 at 14)  Petitioner objects because the

warrantless presence and searching in Petitioner's residence is presumably unreasonable under the Fourth Amendment. (Doc.1 at 24) It was his counsel's *lack* of awareness at the time "that there may have been an issue regarding whether or not Mr. Torres had consented" which is the problem, and which makes counsel's tactics'/strategy unreasonable.  Petitioner objects.  It is his counsel's *lack* of awareness at that time of the suppression issues, as clearly evidenced by his counsel's testimony at the state court habeas hearing, that overcomes the Strickland presumption.

   9.  Petitioner objects to the Magistrate's proposed finding that "Mr. Torres has not shown what evidence would have been suppressed and how that evidence affected his trial."  Petitioner objects to the Magistrate's proposed finding that "Because Mr. Torres has not made a showing that the alleged searches made of his residence prior to obtaining a warrant were anything other than observations of the deceased and her surroundings, nor has he described any evidence that was 'collected' and used against him at trial, Mr. Torres fails to show any prejudice from his counsel's allegedly deficient performance." (Doc.9 at 14-15)

   The case agent, LLPD Det. Harris, testified clearly at the state court habeas hearing that at the time he called the NMSP Crime Scene Team for assistance at approximately 7:30 p.m. there was no probable cause to believe a crime had occurred, the officers were in the residence for the purpose of attempting to develop

probable cause, and a consensus was reached at approximately 3:00 a.m. the next morning that probable cause finally existed. (Doc.1 at 8-9,11,12)  Harris subsequently went and drafted up the affidavit for search warrant which was presented to a judge at approximately 8:30 a.m. the next morning.  Harris was the affiant for the application for search warrant. (Doc.7-5 at 34)  In other words, if the law officers' presence in the residence was unlawful, the all of their observations, conclusions, photographs, videotape developed while unlawfully in the residence (Doc.7-6 at 36-37), and all other physical evidence seized because none was seized or collected until after the execution of the search warrant, then all of the physical evidence from inside the residence must be suppressed.  The only officer's observations which were admissible were the first arriving officer, Officer Wroten.  The questioning of Petitioner for the first time after midnight was largely based on what the officers found and evaluations made inside Petitioner's residence (Doc.1 at 11); after that questioning Petitioner was arrested for tampering with evidence (Doc.1 at 11); after his arrest, Petitioner requested to speak with officers again and made another statement.  All of Petitioner's statements were based on fruit of the poisoned tree.

    The record is replete with evidence that the officers, both LLPD and NMSP officers, more than observed the deceased and her surroundings.  Each NMSP officer testified when they did for hours inside Petitioner's residence. (Doc.7-6 at 35-36)   NMSP Agent

Applegate admitted that he and all of the other officers for hours were in the residence collecting and evaluating evidence trying to figure out what happened. (Doc.1 at 9)  When the LLPD and NMSP officers went to LLPD to question Petitioner for the first time after midnight, their questions of him showed how much evidence they had evaluated inside Petitioner's residence. (Doc.1 at 11; Doc.7-6 at 36-37)

Petitioner objects; he has shown prejudice.

10.  Petitioner objects to the Magistrate's proposed findings (Doc9 at 15-17) that the United States Supreme Court precedents of Flippo v. West Virginia, 528 U.S. 11 (1999), Thompson v. Louisiana, 469 U.S. 17 (1984) and Mincey v. Arizona, 437 U.S. 385 (1978) are inapplicable, distinguishable and not controlling federal legal precedent. (Doc.1 at 23-33)

Petitioner believes that Mincey is applicable and controlling precedent because, after Officer Wroten determined that Ms. Pace was dead, no officer could "reasonably believe that a person within is in need of immediate aid", there were no other victims or possible suspects, no officer before then had seized any evidence, and the multiple hours-long searching of Petitioner's residence by multiple police officers was too broad and lengthy to fall under the emergency exception to the warrant requirement. (Doc.9 at 15)

Petitioner believes that Thompson is applicable and controlling precedent because the Magistrate did not distinguish the otherwise very factually similar case because the search in

9

Thompson involved items that were not in plain view. (Doc.9 at 15) The nature of the search is not the fundamental point; the fundamental point is whether the officers were lawfully present to conduct the searching and the answer under Thompson is they were not. The "two-hour warrantless search of a residence where a possible murder-suicide had taken place was unconstitutional because it was a 'general exploratory search for evidence of a crime'" in Thompson, according to the Magistrate, is extremely similar to the present case.

Petitioner believes that Flippo is applicable and controlling precedent because the Magistrate did not distinguish the otherwise very factually similar case because the search in Flippo involved items that were not in plain view. (Doc.9 at 16)  Again, the U.S. Supreme Court in Flippo rejected a "murder scene exception" for police to be inside the defendant's residence and to search "simply because a homicide had recently occurred there". The nature of the search is not the fundamental point; the fundamental point is whether the officers were lawfully present to conduct the searching and the answer under Flippo is they were not.

The Magistrate's proposed findings did not include the analysis that the call by Petitioner to the police to report Ms. Pace's suicide in his residence did not "evidence a diminished expectation of privacy" on his part or constitute consent for police to search his residence after he was removed from the premises under holdings by the U.S. Supreme Court. Thompson v.

Louisiana, 469 U.S. at 22-23; Mincey v. Arizona, 437 U.S. at 391-92 ("On one hand, the State urges that by shooting Officer Hendricks, Mincey forfeited any reasonable expectation of privacy in his apartment. We have recently rejected a similar waiver argument in Michigan v. Tyler, 436 U.S. [at] 505-506, 98 S.Ct. [at] 1948"). (*See* Doc.1 at 25) Petitioner objects that the Magistrate's proposed findings did not address this applicable and controlling U.S. Supreme Court precedent while the Magistrate makes multiple references to the police responding to Petitioner's call as if Petitioner granted police blanket consent to enter and search his residence. (Doc.9 at 16)  Petitioner objects.

Petitioner objects to the Magistrate's proposed finding that, after Officer Wroten departed the residence, that any other officers thereafter were lawfully present in Petitioner's residence to have the plain view exception to the Fourth Amendment apply. (*See* Doc.1 at 33; Doc.8 at 3; Doc.9 at 16)

Petitioner objects to the Magistrate's proposed finding that "Because Mr. Torres has not made a showing that the alleged searches made of his residence prior to obtaining a warrant were anything other than observations of the deceased and her surroundings, or has he described any evidence that was 'collected' and used against him at trial, it is unlikely that a motion to suppress all of the evidence from Mr. Torres' residence, as well as his statements made to the police, would have been granted." (Doc.9

11

at 17) It is interesting that, while the Magistrate proposes to find that Petitioner has not identified the evidence which would be suppressed if a motion to suppress had been filed (Doc.9 at 14), the Magistrate refers to "all of the evidence from Mr. Torres' residence, as well as his statements made to the police". (Doc.9 at 17) Petitioner objects that he has not identified the evidence which would have been suppressed. (Doc.8 at 3)

The record shows that the LLPD and NMSP officers did more for the hours and hours they were in Petitioner's residence than "observations of the deceased and her surroundings". In fact, while officers were questioning Petitioner for the first time just after midnight, LLPD Det. Harris, the case agent and later search warrant affiant, told Petitioner: "Our investigation is showing you were involved in this."; "its not adding up the way your story is saying, Gilbert"; and "They're examining her wounds". (Doc.7-6 at 36-37) In fact, officers had already "processed the scene" by that time, and NMSP Agent Ortiz told Petitioner the "evidence at the scene" showed Ms. Pace did not commit suicide and that Petitioner had staged the murder. (Doc.7-6 at 36-37) Again, NMSP Agent Applegate testified at the state habeas hearing that he remained in the residence for hours collecting and evaluating evidence along with all of the other NMSP agents trying to figure out what happened. (Doc.1 at 9)

11. Because there was a reasonable chance for success at trial absent counsels's errors, the test of <u>Strickland v.</u>

Washington, 466 U.S. 687-688 was met in this case. Mr. Torres reiterates all his prior legal arguments raised previously.

12.  Petitioner objects to the Magistrate's proposed finding that the state court decision is not contrary to clearly established Federal law, as determined by the Supreme Court of the United States. (Doc.1 at 25-36; Doc.8 at 2-3)

13.  Petitioner objects to the Magistrate's proposed finding that the state court's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Hearings were held in the state court on October 6, 2009 and December 7, 2009.

14.  Petitioner objects to the Magistrate's proposed finding that he has not offered clear and convincing evidence to overcome the presumption of correctness applied to the state court's factual determinations.

15.  Petitioner objects to the Magistrate's proposed finding that he has not satisfied the two-prong standard in Strickland v. Washington.

16.  Petitioner objects to the recommended disposition of denying his petition (Doc.1) and dismissing the case with prejudice. Petitioner requests the District Judge not adopt the Magistrate's proposed findings and recommended disposition.

## CONCLUSION

WHEREFORE, the Petitioner, GILBERT TORRES, JR., respectfully

objects to the Magistrate Judge's proposed findings and recommended disposition and requests that this Court to not adopt the Magistrate Judge's proposed findings and recommended disposition. Petitioner requests this Court grant his petition for writ of habeas corpus or conducts further proceedings.

>Respectfully submitted,
>
> /s/ Todd Hotchkiss
>TODD HOTCHKISS
>FRECHETTE & ASSOCIATES, P.C.
>Attorney for GILBERT E. TORRES, JR.
>P.O. Box 26807
>Albuquerque, New Mexico  87125
>Tele. (505) 247-8558
>E-mail: tbhotchkiss@frechettelaw.com

**CERTIFICATE OF SERVICE**

I, Todd Hotchkiss, hereby certify that on June 9, 2011 I electronically filed the foregoing Objections through the CM/ECF system and that through that system opposing counsel Margaret McLean, Assistant Attorney General, will be served with a true and accurate copy of this Reply.

> /s/ Todd Hotchkiss
>TODD HOTCHKISS

14